## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

|  |  |  |
|---|---|---|
| JEFFREY BROWN, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) Case No.: 1:16-cv-00337-WCL-SLC |  |
| DEPUTY KYLE HARTMAN, | ) |  |
| DET. SHAUN DUNAFIN, | ) |  |
| WANDA TRUELOVE, SHERIFF OF | ) |  |
| NOBLE COUNTY DOUGLAS A. HARP, | ) |  |
| STATE OF INDIANA / INDIANA | ) |  |
| DEPARTMENT OF CORRECTION | ) |  |
| (seeking perspective injunctive relief only), | ) |  |
| VICKI HALSELL and APRIL WILBURN, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

### Defendants Deputy Kyle Hartman, Detective Shaun Dunafin, Wanda Truelove, and the Sheriff of Noble County Douglas A. Harp's Brief in Support of Motion for Summary Judgment

Defendants, Deputy Kyle Hartman ("Deputy Hartman"), Detective Shaun Dunafin ("Detective Dunafin"), Wanda Truelove ("Truelove"), and the Sheriff of Noble County Douglas A. Harp ("Sheriff Harp") (collectively referred to as "these Defendants"), by counsel, submit their Brief in Support of Motion for Summary Judgment and ask the Court to enter judgment in their favor and against Plaintiff Jeffrey Brown.

## I.      Introduction

Plaintiff Jeffrey Brown committed sexual battery before such a crime required the perpetrator to register as sex offender. The Indiana General Assembly then passed laws requiring people such as Brown to register as sex offenders, but the Indiana judiciary later found such statutes unconstitutional as applied to certain offenders. The Indiana Attorney General's Office offered advice to the Indiana Department of Corrections

interpreting the Indiana Supreme Court's decision and that led to a determination that Brown was required to register as a sex offender. Brown was subsequently charged and convicted on two occasions for failing to comply with registration requirements. Pursuant to advice of his defense attorneys, and subject to approval of prosecutors and state court judges, Brown pled guilty and served prison time for these offenses. It was later determined that Brown was not required to register and a sex offender. As a result, Brown has brought this lawsuit, in which he makes multiple claims, which can be summarized as to these Defendants as claims against Deputy Hardman, Detective Dunafin, and Truelove for false arrest and imprisonment and a claim against Sheriff Harp under 42 U.S.C. § 1983 for unconstitutional policies, customs, procedures, or practices related to an alleged failure to train. Brown also makes a claim against all Defendants for malicious prosecution under the Fourth and Fourteenth Amendments.

While Brown may have a right to be upset about his convictions and imprisonment, his displeasure is misplaced against these Defendants, who are protected by qualified immunity for the roles they played in Brown's incarceration. Given the clearly expressed belief by multiple attorneys, judges, and other professionals that Brown was required to register as a sex offender and failed to properly to do, it cannot be said that any of these Defendants knowingly violated Brown's rights or did not have a reasonable belief that they were acting in accordance with the Constitution. The moving Defendants, therefore, ask the Court to enter judgment in their favor.

## II.     Background on Indiana's Sex Offender Statutes

"Beginning with 'Zachary's Law' in 1994, Indiana has enacted statutes collectively referred to as the Indiana Sex Offender Registration Act that require individuals convicted of sex and certain other offenses to register with local law enforcement

agencies." *Greer v. Buss*, 918 N.E.2d 607, 610 (Ind. Ct. App. 2009). Indiana criminalizes the failure to register as follows:

> (a) A sex or violent offender who knowingly or intentionally:
>
> > (1) fails to register when required to register under this chapter;
> >
> > (2) fails to register in every location where the sex or violent offender is required to register under this chapter;
> >
> > (3) makes a material misstatement or omission while registering as a sex or violent offender under this chapter;
> >
> > (4) fails to register in person as required under this chapter; or
> >
> > (5) does not reside at the sex or violent offender's registered address or location;
>
> commits a Level 6 felony.
>
> (b) The offense described in subsection (a) is a Level 5 felony if the sex or violent offender has a prior unrelated conviction for an offense:
>
> > (1) under this section;
> >
> > (2) based on the person's failure to comply with any requirement imposed on a sex or violent offender under this chapter or under IC 5-2-12 before its repeal; or
> >
> > (3) that:
> >
> > > (A) is a crime under the laws of another jurisdiction, including a military court; and
> > >
> > > (B) is:
> > >
> > > > (i) the same or substantially similar to an offense under this section; or

(ii) based on the person's failure to comply with a requirement imposed on the person that is the same or substantially similar to a requirement imposed on a sex or violent offender under this chapter or under IC 5-2-12 before its repeal.

(c) It is not a defense to a prosecution under this section that the sex or violent offender was unable to pay the sex or violent offender registration fee or the sex or violent offender address change fee described under IC 36-2-13-5.6.

Ind. Code § 11-8-8-17.

In 2009, the Indiana Supreme Court handed down two decisions, one of which found the registration requirement unconstitutional under the Indiana Constitution as applied to the defendant, *Wallace v. State*, 905 N.E.2d 371 (Ind. 2009), and another that found the statute constitutional as applied, *Jensen v. State*, 905 N.E.2d 384, 388 (Ind. 2009). In Jensen, the Court found that amendments to the statute requiring certain sex offenders to register for life, as opposed to ten years, was permissible and did not violate the ex post facto clause of either the United States Constitution or the Indiana Constitutions. *See Jensen*, 905 N.E.2d at 394-95. In *Wallace*, the Court addressed an ex post facto challenge brought by a defendant who was convicted of the underlying offense prior to the enactment of the registration statutes. The Court noted that the United States Supreme Court had found a similar statute permissible under the United States Constitution,[1] but reached a different result under the Indiana Constitution. Specifically, the Court held:

Richard Wallace was charged, convicted, and served the sentence for his crime before the statutes collectively

---

[1] *See Smith v. Doe*, 538 U.S. 84, 105-06 (2003) ("Our examination of the Act's effects leads to the determination that respondents cannot show, much less by the clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme. The Act is nonpunitive, and its retroactive application does not violate the *Ex Post Facto* Clause.").

> referred to as the Indiana Sex Offender Registration Act were
> enacted. We conclude that as applied to Wallace, the Act
> violates the prohibition on ex post facto laws contained in
> the Indiana Constitution because it imposes burdens that
> have the effect of adding punishment beyond that which
> could have been imposed when his crime was committed.

*Wallace*, 905 N.E.2d at 384.

## III.  <u>Facts</u>

Brown was convicted of criminal confinement and sexual battery on October 25,

1996. (Exhibit A: Deposition of Plaintiff Jeffrey Brown ("Brown Dep.") p. 12:8-22;

Brown Dep. Ex. B p. 2.)[2] Brown was released from prison in February, 2009. (Brown

Dep. p. 13:15-22.) Prior to his release, Brown was told by someone with the prison in

which he was incarcerated that he would have to register as a sex offender for life.

(Brown Dep. p. 14:7-18; Brown Dep. Ex. A.)

The Indiana Department of Corrections Registration and Victim Services is the

entity that has the final say in determining who is designated as someone who needs to

register as a sex offender. (Exhibit B: Rule 30(B)(6) Deposition of Brent Myers ("Myers

Dep.") p. 7:15-18, 9:13-17.) As the Director of the Depart of Correction's Registration and

Victim Services explained:

> We make registration decisions for individuals that are
> required to register, or that we believe may have an
> obligation to register. We work with local sheriff's
> departments. We work with other justice professionals, and
> that could be helping them with their understanding of
> registration. It could be making registration decisions for
> them. Ultimately, it's just communicating about sex and
> violent offender registrations here in Indiana.

(Myers Dep. p. 9:3-12.)

---

[2] These Defendants have redacted Brown's Social Security number from the deposition exhibits.

After being released from prison, Brown completed a sex offender registration with the assistance of Truelove, and employee of Noble County. (Brown Dep. p. 18:11-19:14; Brown Dep. Ex. B.) Brown had no discussions with Truelove as to whether he was actually subject to the registration requirements. (Brown Dep. p. 21:19-22.)

In 2009, while Brown was incarcerated for disorderly conduct, he was charged with failing to register as a sex offender. (Brown Dep. p. 22:3-8.) Brown was represented by counsel with respect to this charge and entered a plea of guilty for failure to comply with the sex offender registration requirements. (Brown Dep. p. 22:12-22.) The agreement filed with the Court was signed by Brown, his counsel, and the prosecuting attorney. (Exhibit C: October 2011 Plea Agreement.) The Noble Circuit Court Judge accepted the settlement agreement, entered judgment against Brown, and entered an order sentencing Brown to imprisonment for six months, with eighty-two days credit applied. (Exhibit D: October 2011 Sentencing Order.) Brown was sentenced to six months for this offense, and the conviction also constituted a parole violation. (Brown Dep. p. 23:17-25.) The issue of whether Brown was actually required to register as a sex offender did not come up with either Brown's attorney or the presiding Judge. (Brown Dep. p. 24:16-19.)

In May, 2012, while Brown was incarcerated, Brown wrote a letter to the Noble County Judge and Sheriff expressing that he should be required to register as a sex offender for only ten years, as opposed to life. (Brown Dep. p. 25:7-22; Brown Dep. Ex. D.) The Judge responded to Brown and agreed that Brown should have to register for only ten years. (Brown Dep. p. 25:22-25.) This letter from the Judge did not inform Brown that he did not need to register at all. (Brown Dep. p. 26:3-7.)

Brown was released from prison in September, 2012. (Brown Dep. p. 26:10-13.) Prior to his release, Brown received and completed a document regarding his sex offender registration responsibilities. (Myers Dep. Ex. E, p. 7; Brown Dep. p. 26:20-18-24; Brown Dep. Ex. E.) This document indicated that Brown was required to register. (Myers Dep. Ex. E, p. 7; Brown Dep. Ex. E.) An appointed member of the Indiana Parole Board also signed documentation indicating that Brown was required to register as a sex offender. (Myers Dep. p. 33:15-35:5; Myers Dep. Ex. E p. 10.) The Department of Correction faxed documentation indicating that Brown had to register as a sex offender to the local sheriff's department. (Myers Dep. p. 38:1-5.) The Department of Correction did not expect local sheriff's departments to conduct an independent investigation into an individual's obligation to register, although some departments did so on their own. (Myers Dep. p. 38:19-39:18.)

As to the reason for this determination that Brown was required to register, Myers explained that, at the time, his department was under legal advice from the Attorney General's office indicating that people in Brown's position were required to register as sex offenders. (Myers Dep. p. 25:17-26:2.) Myers explained that the Attorney General's Office had offered "specific advice as for the implementation of Wallace v. State," which Myers explained "was a case that came down I believe April 30th, 2009, that questioned whether or not sex and violent offender registration could be enacted retroactively." (Myers Dep. p. 26:7-13.) The Department of Correction's understanding "was it was an 'as applied decision' to Richard Wallace, and the court indicated because of his situation of committing, being convicted of, and completing his sentence, that he was no longer obligated to register, he didn't have notice of that obligation." (Myers Dep. p. 26:15-21.) The Attorney General's advice was that the decision "applied only to

Richard Wallace, and that if any other inmate believed he or she was not subject to registration requirements, that individual had to seek a court determination." (Myers Dep. p. 26:22-27:8.) In other words, in September, 2012, it was the Department of Correction's policy that Indiana's sex registration requirements applied to Brown. (Myers Dep. p. 32:23-33:2.) This policy later changed, and the Department of Correction now looks at when an individual's crime was committed to determine whether the registration requirement exists. (Myers Dep. p. 47:16-48:1.) However, at the time Brown was released from prison in 2009 and 2012, the Department of Correction's policies indicated that Brown was required to register as a sex offender. (Myers Dep. p. 51:14-21.) It was not until March, 2016, that the Department of Corrections informed the Noble County Sheriff's Department that the registration requirements did not apply to Brown. (Myers Dep. p. 52:8-12.)

Upon his release from custody in 2012, Brown returned to Noble County and met with Truelove to complete a sex offender registration form. (Brown Dep. p. 29:6-30:1; Brown Dep. Ex. F.) Once again, there was no discussion at this point about whether Brown was required to register, but there was discussion about whether Brown had to register for life or for ten years. (Brown Dep. p. 31:22-32:22.)

On September 1, 2015, Deputy Hartman filed four Informations in the Noble Circuit Court based on Brown's failure to register as a sex offender, along with an Affidavit for Probable Cause. (Exhibit E: Informations filed in Cause 57C01-1509-F5-67; Exhibit F: Affidavit for Probable Cause filed in Cause 57C01-1509-F5-67.) The Deputy Prosecuting Attorney approved and signed the Informations. (Exhibit E: Informations filed in Cause 57C01-1509-F5-67.) These Informations and Affidavit indicated that Brown had failed to report his change in address, as required by Indiana Code 11-8-8-

11(a)(1), failed to report his use of social media as required by Indiana Code § 11-8-8-17, and omitted information from his Facebook account as required by Indiana Code § 11-8-8-17(a)(3). (Exhibit E: Informations filed in Cause 57C01-1509-F5-67.) The Affidavit also outlined Brown's prior conviction for sexual battery on February 19, 1996, and his conviction for failing to register as a sex offender from 2009. (Exhibit F: Affidavit for Probable Cause.) The Noble Circuit Court Judge issued an Order Regarding Probable Cause, also on September 1, 2015, finding probable cause for Brown's arrest and directing the Clerk to issue an arrest warrant. (Exhibit G: Order Regarding Probable Cause.) On September 1, 2016, the Noble Circuit Court issued a bench warrant for Brown's arrest. (Exhibit H: Bench Warrant.)

Brown was subsequently arrested for failing to register as a sex offender pursuant to the arrest warrant issued by the Noble Circuit Court. (Brown Dep. p. 33:18-22, 35:2-7.) Brown hired an attorney to represent him with respect to those charges, and again pled guilty to the offense of failing to register as a sex offender. (Brown Dep. p. 35:15-25; Exhibit I: Guilty Plea Agreement.) The Agreement was signed by Brown, his defense attorney, and the Chief Deputy Prosecuting Attorney for Noble County. (Exhibit I: Guilty Plea Agreement.) The Court entered judgement against Brown and sentenced him to a term of two years and six months. (Exhibit J: Abstract of Judgment.)

While in prison, Brown conducted his own legal research and determined that he was not required to register as a sex offender. (Brown Dep. 36:16-21, 37:17-22.) Prior to doing this research, no one, including officials with the State of Indiana, Brown's defense lawyers, the prosecuting attorneys, and the judges who presided over Browns' cases had told Brown he was not subject to the registration requirements. (Brown Dep. p. 37:23-38:8.)

Brown then wrote Detective Dunafin to inform him that Brown was not required to register. (Brown Dep. Ex. H.) After receiving this letter, Detective Dunafin met with Brown and agreed that Brown was not required to register. (Brown Dep. p. 38:9-19.) Shortly after this meeting, on March 7, 2016, Brown sent Detective Dunafin a formal protest regarding his incarceration. (Brown Dep. Exhibits H and I.)

As a result of his investigation, Detective Dunafin prepared a Supplemental Case Report. (Exhibit K: Detective Dunafin Supplemental Case Report.) In this report, Dunafin outlines the chronology of events that led to Brown's sex offender registration charges. (*Id.* p. 1-3.) This report notes the Attorney General's position regarding the *Wallace* decision and also notes that, in February, 2010, a letter was sent to offenders that the Noble County Sheriff's Department fell into similar circumstances as the plaintiff in the Wallace case, advising those offenders that they were being removed from the Noble County Sheriff Department's registry. (*Id.* p. 2.)

Detective Dunafin's report indicates that on March 8, 2016, the day after his meeting with Brown, Detective Dunafin sent an email to the Registration Coordinator for the Department of Correction advising her of Detective Dunafin's belief that Brown was not required to register as a sex offender. (*Id.* p. 4.) Also on, March 8, 2016, Brown's appointed counsel with the Noble County Public Defendant's Agency filed a Motion to Vacate Conviction and for Dismissal, to which the Noble County Chief Deputy Prosecuting Attorney indicated it would not oppose. (Exhibit L: Motion to Vacate Conviction and for Dismissal.) That same day, the Noble Circuit Court issued its order finding that there was no factual or legal basis for the charges or Brown's guilty plea and vacating the conviction. (Exhibit M: March 8, 2016 Order.)

## IV.  Summary Judgment Standard of Review

Summary judgment shall be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. If the moving party meets this burden, summary judgment is mandatory. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When opposing a summary judgment motion, the non-movant "must set forth specific facts that demonstrate a genuine issue of triable fact and must produce more than a scintilla of evidence to support his position." *Pugh v. City Of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). "A genuine issue of triable fact exists only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

## V.  Argument

### A. Qualified Immunity Protects these Defendants from the false arrest, false imprisonment, and malicious prosecution claims.

1. Brown's claims for false arrest, false imprisonment, and malicious prosecution are all analyzed under the Fourth Amendment.

"There is no such thing as a constitutional right not to be prosecuted without probable cause." *Day v. Harris*, No. 2:18-CV-316-TLS, 2019 U.S. Dist. LEXIS 108261, at *11 (N.D. Ind. June 27, 2019) (quoting *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018)); *see also Lewis v. City of Chicago*, 914 F.3d 472, 475 (7th Cir. 2019) ("[T]he Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention."). However, a claim described as malicious prosecution that alleges unlawful pretrial detention states a claim under the Fourth Amendment. *See id.* at *11 (citing *Manuel v. City of Joliet*, 137 S.Ct. 911, 918-19 (2017)). Therefore, the Defendants will address Brown's claims of malicious prosecution along with his claims for false arrest

and false imprisonment, which also fall under the Fourth Amendment. *See generally Norris v. Serrato*, 761 F. App'x 612, 615-16 (7th Cir. 2019) (finding no Fourth Amendment violation for an arrest, and then noting "that claims for wrongful pretrial detention are analyzed under the Fourth Amendment," and that "[b]ecause there is no malicious-prosecution claim under § 1983, our conclusion that the arrest was supported by probable cause wraps up the substantive portion of this appeal").

2. <u>The Defendants reasonably believed that it was lawful for Brown to be arrested and detained based on his failing to register as a sex offender.</u>[3]

Police officers "performing discretionary functions enjoy qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *In re Escobedo v. Bender,* 600 F.3d 770, 778 (7th Cir.2010) (quoting *Sallenger v. Oakes,* 473 F.3d 731, 739 (7th Cir. 2007)). "In other words, qualified immunity 'shields from liability police officers 'who act in ways they reasonably believe to be lawful.'" *Ewell v. Toney*, 853 F.3d 911, 919-20 (7th Cir. 2017) (quoting *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008)). When addressing a claim of qualified immunity, the court determines whether the facts show that the officer's conduct violated a constitutional right and whether the right was clearly established at the time of the claimed violation. *See Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1026 (N.D. Ind. 2014). "A right is 'clearly established' when there is either a closely analogous case that

---

[3] Because Brown was already incarcerated when he was charged with failing to register in 2009, he has no cognizable claim for false arrest related to that charge. *See, e.g., Bristol v. Queens Cty.*, No. CV 09-5544 (JFB) (AKT), 2018 U.S. Dist. LEXIS 56996, at *36 (E.D.N.Y. Mar. 30, 2018) ("It is well-settled that a plaintiff does not have a claim for false arrest under § 1983 if the plaintiff was already in custody on other charges at the time of his or her arrest because the plaintiff has not suffered the requisite "deprivation of liberty."); *Senalan v. Curran*, 78 F. Supp. 3d 905, 910 (N.D. Ill. 2015). Therefore, this discussion will focus on the arrest of Brown that occurred in 2015.

establishes that the conduct is unconstitutional or when the violation is so obvious that a reasonable state actor would know that his actions violated the Constitution." *Id.* (citing *Siebert v. Severino,* 256 F.3d 648, 654 (7th Cir. 2001)). "[T]he doctrine of qualified immunity leaves 'ample room for mistaken judgments' by police officers." *Montgomery v. Vill. of Lake Station*, No. 2:02-CV-209, 2006 U.S. Dist. LEXIS 62855, at *18 (N.D. Ind. Aug. 22, 2006) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341; *see also Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

"Once qualified immunity is raised, the plaintiff has the burden of establishing that his or her rights were violated and that the law concerning the proffered right 'was clearly established at the time the challenged conduct occurred.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (quoting *Mustafa v. City of Chicago*, 442 F.3d 547, 548 (7th Cir. 2006)).

Qualified immunity protects an officer accused of false arrest "if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). "The Court's consideration of probable cause and qualified immunity are closely related." *Montgomery*, at *18.

> Whether police officers had probable cause to arrest a suspect and whether they are entitled to qualified immunity for the arrest are closely related questions, although qualified immunity provides the officers with an 'additional layer of protection against civil liability' if a reviewing court finds that they did not have probable cause.

*Id.*, at *18-19 (quoting *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001). The ultimate question is "whether a reasonable officer would have been justified in *believing*

that he had probable cause" and whether it would "have been plain to a reasonable officer that arresting and detaining [a plaintiff] under [the] circumstances would have been unlawful under the Fourth Amendment." *Ewell v. Toney*, 853 F.3d 911, 919-20 (7th Cir. 2017). In other words, "as long as [a defendant] reasonably, albeit possibly mistakenly, believed that probable cause existed to arrest [a plaintiff], then [the defendant] is entitled to qualified immunity." *Burritt v. Ditlefsen*, 807 F.3d 239, 249-51 (7th Cir. 2015) (quoting *Fleming v. Livingston Co., Ill.*, 674 F.3d 874, 880 (7th Cir. 2012)).

Here, the arrest and detention of Brown was supported by a judicial finding of probable cause and an arrest warrant. "An officer is not expected to question a judicial determination." *Archer v. Chisholm*, 191 F. Supp. 3d 932, 944 (E.D. Wis. 2016) (citing *United States v. Leon*, 468 U.S. 897, 920-21 (1984)). "The existence of an outstanding warrant shows that a judge has found probable cause, and an arrest is proper when a warrant is based on probable cause." *Norris v. Serrato*, 761 F. App'x 612, 615 (7th Cir. 2019). "When an arrest is judicially authorized, as it was in this case, 'we presume the validity of [the] warrant and the information offered to support it.'" *Camm v. Faith*, 937 F.3d 1096, 1105-06 (7th Cir. 2019) (quoting *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)). This presumption of validity "may give way on a showing that the officer who sought the warrant knowingly or intentionally or with a reckless disregard for the truth[] made false statements to the judicial officer and that the false statements were necessary to the judicial officer's determination." *Id.* (quoting *Whitlock*, 596 F.3d at 410); *see also Archer*, 191 F.Supp. 3d at 944 ("Only where it is objectively unreasonable for an officer to rely on a judicially-approved warrant will qualified immunity be withheld."). Deputy Hartman submitted no false statements to the Court in his probable

cause affidavit, so Deputy Hartman had no objectively unreasonable reason to question the arrest warrant or judicial finding of probable cause. Indeed, the issue in this case relates not to a discrepancy in reports of what factually occurred (Brown was convicted of a sex crime and failed to comply with the registration statute), but to the legal import of those actions and inactions. Under these circumstances, officers such as Deputy Hartman should not be required to second-guess judges.

It is also worth noting that the information filed by Deputy Hartman was approved by the County's Deputy Prosecuting Attorney. The prosecutor's involvement in obtaining the warrant provides significant evidence that Brown's arrest was reasonable. *See Burritt v. Ditlefsen*, 807 F.3d 239, 249-51 (7th Cir. 2015) (recognizing that "the fact that the officer had consulted with the District Attorney prior to arresting the plaintiff-arrestee 'goes a long way toward solidifying his qualified immunity defense'" (citing *Fleming*, 674 F.3d at 881)); *see also Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004) ("Consulting a prosecutor may not give an officer absolute immunity from being sued for false arrest, but it goes far to establish qualified immunity. Otherwise the incentive for officers to consult prosecutors—a valuable screen against false arrest—would be greatly diminished." (citation omitted)); *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255 (3d Cir. 2010) ("In our view, encouraging police to seek legal advice serves such a salutary purpose as to constitute a 'thumb on the scale' in favor of qualified immunity."). Further, the prosecuting attorney and defense counsel for Brown also joined in the misinterpretation or application of the sex offender registration laws, as evidenced by their signatures on the plea agreement entered into by Brown.

There is no doubt that Brown should not have been arrested in 2015 or charged with failing to register in either 2009 or 2015. But the mistakes that led to Brown's

arrest and detentions did not stem from false statements or omitted information by these Defendants. Indeed, the initial determination that Brown was required to register was made before Brown was released from prison and went to Noble County to actually complete the registration. Therefore, this case is unlike cases in which a court has rejected a qualified immunity defense in the context of an arrest or detention supported by a warrant. *Cf. Autrey v. Stair*, 512 F. App'x 572, 578-79 (6th Cir. 2013) ("To the extent that a plaintiff in a § 1983 cause of action can point to instances where the consideration of falsehoods or the omission of material exculpatory evidence could have colored a state-court judge's probable-cause determination, there is no requirement that the initial finding be given preclusive effect in the federal-court action."). The mistake was one of law and was made not only by these Defendants, but everyone involved in Brown's arrest, convictions, and detention, including the Attorney General's office, the Department of Corrections, prosecuting attorneys, defense lawyers, and judges.

These defendants recognize that, in some instances, a court opinion holding a statute unconstitutional will deprive a defendant of a qualified immunity defense. But there is no per se rule to that effect. *See Amore v. Novarro*, 624 F.3d 522, 534 (2d Cir. 2010). As the Third Circuit has noted, "there are circumstances wherein a police officer's violation of a law may be within the bounds of reason, even though the law in question can be said, from the comfort of an armchair, to be 'clearly established.'" *Kelly v. Borough of Carlisle*, 544 F. App'x 129, 134 (3d Cir. 2013). As the Second Circuit has explained, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in a defendant's position should know about the constitutionality of the conduct." *Id.* at 533-34 (quoting *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)); *see also Scarbrough v. Myles*, 245 F.3d 1299, 1303 n.8

(11th Cir. 2001) ("Police officers are not expected to be lawyers or prosecutors."); *Blue v. Batth*, No. GJH-15-1024, 2017 U.S. Dist. LEXIS 152604, at *14-16 (D. Md. Sep. 18, 2017) ("[W]hile the Court finds that officers must know the law, it cannot ask that officers also engage in the type of interpretation required of lawyers. "). This line of thinking is even more applicable in this case, in which two lawyers and a Judge (not to mention the Parole Board and the Attorney General's Office) all believed that the applicable statute was effective and applied to Brown, and made such a determination before Brown was arrested in Noble County. *Cf. Thomas v. Hurley*, 51 F. App'x 694, 694-95 (9th Cir. 2002) ("Hurley and Spanski could reasonably have understood § 134-7 and the Hawaii Attorney General's opinion as meaning that *regardless of the settlement agreements,* Thomas' 1973 conviction made him ineligible in the first instance for a license to sell guns and thus precluded him from acquiring or maintaining any *lawful* property or liberty interest in the license. In light of this reasonable interpretation of the statute and the Attorney General's opinion, Hurley's and Spanski's conduct did not violate clearly established rights of which a reasonable official would have known. Therefore, Hurley and Spanski are entitled to qualified immunity. (emphasis in original); *Cahaly v. LaRosa*, 25 F. Supp. 3d 817, 830 (D.S.C. 2014) ("Defendants' arrest of Plaintiff was arguably consistent with the state attorney general's interpretation of the statute (which did not address any constitutional question) because Plaintiff did not comply with the disclosure requirements of the statute."), *aff'd in part vacated in part*, 796 F.3d 399 (4th Cir. 2015).[4] Indeed, to hold Deputy Hartman liable in this case would equate to a

---

[4] These Defendants recognize that there is no evidence that they relied directly on the Attorney General's opinion. However, the fact that the Attorney General's opinion and interpretation of the Indiana Supreme Court's *Wallace* decision led to the conclusion that Brown was subject to statutory registration requirements until a specific defendant obtained relief from Court is evidence that the *Wallace* decision

determination that he should have known that arresting Brown was unconstitutional despite judicial approval. "It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable." *Malley*, 475 U.S. at 346 n.9 (internal citation and quotation omitted).

At the end of the day, the general purpose of qualified immunity is "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (internal quotation marks omitted). Here, the Defendants not only had no notice of the unlawfulness of their conduct, but also had affirmative confirmation from the prosecutor's office and a judge, and later Brown's defense counsel, of the lawfulness of their conduct related to assisting Brown with his registration, providing information to prosecutors that led to charges being filed against Brown, and arresting Brown pursuant to a warrant. Thus, any "incorrect understanding of the law [was] not devoid of merit." *Kelly*, 544 F. App'x at 135. Based on the confirmation from the prosecutor and Judge, "even though the law was, in a sense, 'clearly established,' it was not so clearly established that one could say a reasonable officer 'would have known' of the illegality of the arrest." *Id.* at 136 (citing *Harlow*, 457 U.S. at 818). Indeed, it is impossible to find these Defendants' conduct unreasonable when numerous lawyers were interpreting the existing case law (although perhaps incorrectly) in a manner that indicated Brown was required to register and had broken

---

did not create "clearly established" law of which any of these Defendants should have been aware with respect to Brown's situation.

the law by not doing so. Qualified immunity therefore applies and protects all these Defendants from liability.

**B. Brown has no facts to support a *Monell* claim.**

It is well-established that defendants in section 1983 claims cannot be held liable under a theory of vicarious liability. *See Monell vs. Dep't of Social Servs. Of City of New York*, 436 U.S. 658, 691 (1978); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015); *Wiseman v. City of Michigan City*, 966 F. Supp. 2d 790, 797 (N.D. Ind. 2013). Those who employ police officers can be held liable pursuant to section 1983 only if there is:

> (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused a constitutional injury.

*Id.* The causation element is mandatory. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell*, 436 U.S. at 691)).

"[I]n **limited circumstances** a municipality may be held liable under § 1983 for constitutional violations resulting from a failure to properly train police officers." *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) (emphasis added) (quoting *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504, (7th Cir. 2010)). "Failure to train officers may support a *Monell* claim, but 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). As the Supreme Court has explained, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*,

563 U.S. 51, 61 (2011). The failure to train must be amount to "deliberate indifference," which "'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* (quoting *Bd. of the Cnty. Comm'rs v. Brown,* 520 U.S. 397, 410 (1997)). The policy of inaction must equate to a decision by the municipal actor to violate the Constitution. *Id.* "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities . . . .'" *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 392 (1989)).

Here, the undisputed evidence shows that multiple entities, including the Attorney General's Office, Department of Corrections, prosecutors, defense attorneys, and even Judges, believed that Brown was required to register as a sex offender. The Department of Corrections in fact, based on advice from the Attorney General's office, provided documentation to the DeKalb County Sheriff's Department indicating that Brown had an obligation to register. These circumstances clearly do not amount to the deliberate indifference standard required to sustain a *Monell* claim. *Cf. Prince v. Curry*, 423 F. App'x 447, 451-52 (5th Cir. 2011) (finding that the plaintiff's allegations did not fall within the "extremely narrow category of claims where 'the unconstitutional consequences of failing to train could be so patently obvious that a city [or other local government] could be liable under § 1983 without proof of a pre-existing pattern of violations.'" (quoting *Connick*, 563 U.S. at 60)); *Littlejohn v. Garrett*, No. 4:17-cv-238-KPJ, 2018 U.S. Dist. LEXIS 63243, at *10-11 (E.D. Tex. Apr. 13, 2018) (finding that the plaintiff's conclusory allegations that the City did not adequately train employees regarding sex offender registration did not show deliberate indifference).

Further, as indicated by Detective Dunafin's case report, the Sheriff's Department was not deliberately indifferent to the requirement for certain individuals to register in light of the *Wallace* decision. And once it was brought to the Sheriff Department's attention that Brown might not have an obligation to register, a prompt investigation occurred. Detective Dunafin met with Brown, agreed that Brown did not have to register, and communicated with the Department of Correction. These circumstances show that the Sheriff's Department was not deliberately indifferent to Brown's plight, but was in fact concerned and attentive to the situation. Brown simply cannot make the high showing required to sustain a *Monell* claim based on a failure to train.

## VI.   <u>Conclusion</u>

Brown certainly has a valid reason to complain that he spent time in prison under a statute that the Indiana Supreme Court held could not constitutionally apply people in his situation. But his real beef is not (or at least should not be) with Deputy Hartman, Detective Dunafin, Truelove, or Sheriff Harp. The true reason Brown spent time in prison for failing to register stemmed from the Attorney General's interpretation of case law and apparent confusion over that case law by the prosecutors, defense attorneys, and judges who all played a role in allowing Brown to be arrested for, charged with, and convicted of these offenses. Deputy Hartman, Detective Dunafin, Truelove, and Sheriff Harp are not lawyers, and should not be faulted for failing to second guess and somehow overrule these attorneys and judges.

For these and the foregoing reasons, Deputy Hartman, Detective Dunafin, Truelove, and Sheriff Harp respectfully ask this Court to enter summary judgment in their favor on all claims raised against them by Brown.

Respectfully submitted,

BARRETT McNAGNY LLP

By  */s/William A. Ramsey*
    Robert T. Keen, Jr., #5475-02
    William A. Ramsey, #26547-53
    215 East Berry Street
    Fort Wayne, IN  46802
    Telephone:  (260) 423-9551
    Fax:  (260) 423-8920
    Email:  rtk@barrettlaw.com
        war@barrettlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of January, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification to all counsel of record.

    *s/William A. Ramsey*
    William A. Ramsey