1         IN THE UNITED STATES DISCTRICT COURT
          NORTHERN DISTRICT OF INDIANA
2             FORT WAYNE DIVISION

3

JEFFREY BROWN,           )
                    )
4        Plaintiff,      )
                    )
5                     )
     -vs-           )   Case No. 1:16-cv-00337-WCL-SLC
6                     )
DEPUTY KYLE HARTMAN,    )
7 DET. SHAUN DUNAFIN,     )
WANDA TRUELOVE,        )
8 SHERIFF DOUGLAS A. HARP,   )
                    )
9        Defendants.     )
— — — — — — — — — )

10

11     The Deposition of JEFFREY SCOTT BROWN
12     Date:     Monday, February 20, 2017
13     Time:     2:15 p.m.
14     Place:    Noble County Jail
              210 South 7th Street
15           Albion, Indiana 46701
16

    Called as a witness by the Defendants in accordance
17 with the United States District Court, Northern District
of Indiana, Fort Wayne Division, Rules of Civil Procedure,
18 pursuant to Notice.
19
20 Before Kristin J. Nichols, CSR, RPR
Notary Public, Porter County, Indiana
21
22
23
24
25    Job No. CS2533499

EXHIBIT
A

1 APPEARANCES:
2
3  MR. CHRISTOPHER C. MYERS
   Christopher C. Myers & Associates
4  809 South Calhoun Street, Suite 400
   Fort Wayne, Indiana 46802
5  (260) 424-0600
   cmyers@myers-law.com
6
7  On behalf of the Plaintiff;
8
9  MR. ROBERT T. KEEN, JR.
   Barrett McNagny, LLP
10 215 East Berry Street
   P.O. Box 2263
11 Fort Wayne, Indiana 46802
   (260)423-9551
12 rtk@barrettlaw.com
13
   On behalf of the Defendants.
14
15
16
17          * * *
18
19
20
21
22
23
24
25

1            I N D E X
2        THE DEPOSITION OF
3        JEFFREY SCOTT BROWN
4
5        DIRECT EXAMINATION
                          PAGE
6  BY MR. KEEN.................................... 4
7
         CROSS-EXAMINATION
8                         PAGE
   BY MR. MYERS.................................57
9
10       REDIRECT-EXAMINATION
                          PAGE
11 BY MR. KEEN...................................62
12
13
             * * *
14
15
16       E X H I B I T S
17       DEFENDANTS' EXHIBIT
                          PAGE
18 Deposition Exhibit A...........................15
   (Notification of Sex and Violent Offender Registration)
19 Deposition Exhibit B...........................18
   (Noble County Sheriff's Department Sex and Violent
20 Offender Registration)
21 Deposition Exhibit C...........................21
   (Notification of Requirement to Register as a Sex or
22 Violent Offender)
23 Deposition Exhibit D...........................25
   (May 3, 2012 letter)
24
25

1         E X H I B I T S
2        DEFENDANTS' EXHIBIT
                          PAGE
3  Deposition Exhibit E...........................26
   (Notification of Sex and Violent Offender Registration)
4
   Deposition Exhibit F...........................29
5  (Change Form)
6  Deposition Exhibit G...........................33
   (Change Form)
7
   Deposition Exhibit H...........................37
8  (March 2, 2016 letter to Detective Dunafin)
9  Deposition Exhibit I...........................39
   (March 7, 2016 letter to Detective Dunafin)
10
   Deposition Exhibit J...........................39
11 (March 7, 2016 letter to Sheriff Harp)
12 Deposition Exhibit K...........................40
   (March 8, 2016 letter to Detective Dunafin)
13
   Deposition Exhibit L...........................42
14 (Investigative Notes Report for Jeffrey Scott Brown)
15
16          * * *
17
18
19
20
21
22
23
24
25

1         JEFFREY SCOTT BROWN
2      Called as a witness by the Defendants, having
3      been first duly sworn, was examined and
4      testified as follows:
5          DIRECT EXAMINATION
6  BY MR. KEEN:
7  Q  Please state your full name.
8  A  Jeffrey Scott Brown.
9  Q  Mr. Brown, what's your date of birth?
10 A  4/10/64.
11 Q  Have you been through the process of a deposition before?
12 A  No, I haven't.
13 Q  So I'm going to ask you a series of questions that relate
14   to the lawsuit that you filed against the Noble County
15   Defendants who I represent.  Kristin is our court reporter.
16   And I know you have probably seen court reporters before.
17   Their job is to take down everything we say and make a
18   record that your attorney and I can use in connection with
19   your case.
20      It's important you keep answering all my questions
21   with verbal responses, because Kristin can only take down
22   what you say.  Sometimes people forget.  I will just remind
23   you that you need to answer out loud.
24 A  Thank you.
25 Q  It's also important we don't talk at the same time, because

Veritext Legal Solutions

800-567-8658                                                    973-410-4040

1 if we start talking over each other she might miss
2 something. So let me finish my question before you start
3 your answer.
4 A Yes, sir.
5 Q If I ask a question you don't understand, you have to tell
6 me, because otherwise I will assume you did. If you don't
7 understand, tell me. And I will try and ask a better
8 question. All right?
9 A Yes, sir.
10 Q Now, we are here at the Noble County Jail today to take
11 your deposition. And this is where you are currently
12 incarcerated, right?
13 A Yes, sir.
14 Q Can you tell me the reason for your incarceration at
15 present? What criminal charges are pending?
16 A Is this the precursors? Precursors. Probation violation,
17 actually.
18 Q Probation violation. All right. These are charges pending
19 in Noble County?
20 A Yes.
21 Q Are there any other charges currently pending against you?
22 A LaGrange.
23 Q What's that for?
24 A Possession. And they say resisting, I guess, fleeing or
25 something, but I wasn't.

1 Q Are there criminal charges pending against you anywhere
2 else?
3 A No.
4 Q I know there was an incident in Oklahoma that happened last
5 year. Are there any criminal charges pending as a result
6 of that?
7 A No.
8 Q Do you have a trial date set in either of your cases?
9 A Not a trial date, no, sir.
10 Q Who is representing you?
11 A Seth Tipton.
12 Q Tipton? T-i-p-t-o-n?
13 A Yes.
14 Q Is he representing you in both cases?
15 A Yes, he is.
16 Q How long have you been here at the jail?
17 A Since December 4th, I believe it was.
18 Q Of last year?
19 A Yes, sir. I'm sorry. 2016.
20 Q Because there's probation violation and you have no bond?
21 A I have been sentenced to seven and-a-half months.
22 Q On the probation violation?
23 A Yes, sir.
24 Q Was that in Noble County?
25 A Yes.

1 Q Who was the judge?
2 A Judge Kirsch. Robert Kirsch.
3 Q Are you single or married?
4 A Married.
5 Q What's your wife's name?
6 A Michelle.
7 Q How long have you and Michelle been married?
8 A Since July 20th of 2015. Or 28th, I believe, I'm sorry.
9 Q July of 2015?
10 A Yes. Yes.
11 Q Where does she live?
12 A She's living in Kendallville right now.
13 Q Garden Street?
14 A No, we no longer live there. She is staying with some
15 friends on Drake Road.
16 Q Have you been married to anyone else?
17 A Tammy Kinerk, was her maiden name.
18 Q How do you spell her last name?
19 A K-i-n-e-r-k.
20 Q When were you and she married?
21 A In 1983. April 9th.
22 Q That marriage ended in divorce?
23 A Yes.
24 Q When was that?
25 A 1997.

1 Q Have you been married to anyone else?
2 A No, I have not.
3 Q Do you have any children?
4 A Four.
5 Q What are their names?
6 A Candice, with an I.
7 Q How old is she?
8 A Born in '83. So she'll turn 34 this year in October.
9 Q Okay.
10 A Trevor. He'll turn 32 in December.
11 Q Okay. The other two?
12 A Trent was born in 1989. April 20th.
13 Q 26?
14 A Yes. Thank you.
15 A Same year as my son. That's how I know.
16 Q Okay. That was pretty quick.
17 Q The other one, youngest child?
18 A Kayla.
19 Q With a K?
20 A Yeah, K-a-y-l-a.
21 Q What's her age?
22 A August 20th, 1991.
23 Q So she is 25 then?
24 A Yes.
25 Q All those children with your first wife?

1 A  Yes.

2 Q  Do any of them live around here?

3 A  They all live in North Webster, in the area.  Syracuse.

4  Kosciusko County.

5 Q  Do you have grandchildren then also?

6 A  Two.

7 Q  Do you have ongoing relationships with your children?

8 A  Yes, I do.

9 Q  And your grandchildren also?

10 A  Yes, I do.

11 Q  What's the extent of your formal education?

12 A  Bachelor's degree in business management.

13 Q  Where from?

14 A  Grace Seminary College in Warsaw, Winona Lake.

15 Q  When did you receive that?

16 A  I received it when I was in prison.

17 Q  What year was that?

18 A  2008, I believe.

19 Q  Did you graduate from high school before that?

20 A  East Noble here in Kendallville.

21 Q  Any other training or education?

22 A  Truck driving school in 1989.

23 Q  Did you get a CDL or chauffeur's license if that's what it

24  was then?

25 A  Yes.  Yes, I did.

1 Q  When you were released from prison did you renew that?

2 A  No, I did not.

3 Q  What other type of work have you done?  Let's say since

4  2009 when you were released from prison at that point in

5  time.

6 A  I tried my own shingling business.

7 Q  Roofing business then?

8 A  Yes.

9 Q  Self-employed?

10 A  Yes.

11 Q  Any other work?

12 A  Construction type.  Like as a subcontractor.  I did some

13  work for a gentleman.

14 Q  After 2009 when you were released from prison did you work

15  for anyone else as an employee in any employment?

16 A  I would say no, because I was a subcontractor.

17 Q  Go ahead.

18 A  I don't want to -- I want to get that clear.  I worked for

19  you, but you hired me as a subcontractor.  But you

20  understand I'm not trying to be --

21 Q  Not considered to be an employee of the general contractor?

22 A  Right.  Like I signed a W2 form to work for them in that

23  manner.  That did not happen.

24 Q  I understand.  So this lawsuit that has been filed on your

25  behalf is against several officers from Noble County, Kyle

1  Hartman and Shaun Dunafin, the clerk with the department,

2  Wanda Truelove and also against the Sheriff, Douglas Harp.

3  And I understand from the Amended Complaint that's

4  been filed it's generally a claim that your rights were

5  violated because you were arrested and charged with failing

6  to register as a sex offender, correct?

7 A  Correct.

8 Q  I want to take you back a little bit and go through a

9  little bit of the history of how we got to this point.  So

10  be patient with some of my questions.  I know they may go

11  back a little bit, a little ways.  But as I understand it,

12  sometime back in the nineties you were arrested on several

13  criminal charges, one of which involved some sort of sexual

14  battery; is that right?

15 A  Yes, sir.

16 Q  You ended up being convicted of several charges which led

17  to your incarceration at that time?

18 A  Yes, sir.

19 Q  Can you tell me, what were the charges you were convicted

20  of?

21 A  Criminal confinement with a deadly weapon and sexual

22  battery.  Class D felony.

23 Q  This involved your wife at the time?

24 A  Yes, sir.

25 Q  Were you separated?

1 A  We were still married at the time.

2 Q  Were you separated, though?

3 A  Yes.  Yes.

4 Q  So she was an adult at that point, right?

5 A  Yes.

6 Q  What County did these convictions occur in?

7 A  Kosciusko.

8 Q  What was the sentence?

9 A  20 years.

10 Q  What year was the conviction?

11 A  1997.

12 Q  So at that point in 1996 after your conviction you were

13  incarcerated in a State facility, correct?

14 A  Yes.

15 Q  Did you remain incarcerated in the State facility the

16  entire time you served your sentence?

17 A  Yes, I did.

18 Q  What was the last State facility you were incarcerated at?

19 A  New Castle Correctional Facility.

20 Q  What was your release date; do you remember?

21 A  Right around February 19th, 2009.  That may not be the

22  right day, but it's real close.

23 Q  I think it is pretty close.  So did you know that was going

24  to be your release date?  Was that a date that was told to

25  you would be your release date in advance?

Veritext Legal Solutions

800-567-8658                                973-410-4040

1 A  Maybe two or three days in advance, because you don't know
2    for sure.  Because in prison they let you out sometimes on
3    Mondays or Thursdays, whatever is convenient for them.
4 Q  Is it fair to say you knew it was going to be sometime
5    around then at least?
6 A  Yes, sir.
7 Q  So leading up to that point in time did you have any
8    conversations with any State correctional employees about
9    what the circumstances or requirements would be upon your
10    being released from prison?
11 A  Yes, sir.
12 Q  Explain to me how that process worked as you best remember.
13    Who did you talk to?  What did they talk to you about?
14    That sort of thing.
15 A  I don't know the person's name, but they have a pre-release
16    class.  And that's where they were releasing most anyone
17    with a sex offender case from that prison.  And they were
18    telling me that I would have to register for life.
19        I wrote the judge and said, "I shouldn't have to
20    register at all."
21        And the Judge Robert Kirsch wrote me back and
22    checked into it which, good judge, said, "I'm sorry,
23    Mr. Brown, I think you only have to register for ten
24    years."  Should be a copy of his letter somewhere.
25 Q  But there was an actual class that the prison facility put

1    on for you and others at that point?
2 A  Yes, sir.
3 Q  To explain the sex registry requirements?
4 A  Yes, sir.
5 Q  So were you informed by someone, some State employee, that
6    you were subject to those requirements at that time?
7 A  They would have to have been a State employee, I'm
8    guessing.
9 Q  They told you that you would have to register.  And the
10    only question in your mind was whether it should be for
11    life or some shorter period of time?
12 A  Yes.
13        (Defendants' Exhibit A
14        marked for identification.)
15 Q  I'll show you a document I did get from the State and see
16    if this refreshes your memory about some of this.  This is
17    marked as Exhibit A.  Defendants' Exhibit A.  Take a look,
18    if you would.  Have you seen that document before?
19 A  Yes, that's my signature.
20        MR. MYERS:  Do you have copies?
21        MR. KEEN:  Yeah, I have this one here.  It's
22    actually one of the documents we have given you in
23    the disclosures.
24        MR. MYERS:  Yeah, I just want a full set.
25    Maybe I can get them from you afterwards.

1 Q  So this is a one-page document and it's got your signature
2    near the bottom, correct?
3 A  Yes.
4 Q  It has a date of February 19th of 2009, right?  Is that
5    what it says?
6 A  What a memory.
7 Q  So you believe that was the date you actually were
8    released?
9 A  It was real close to that, obviously.  Release date.  Walk
10    out date.  February 19th, 2009.
11 Q  Now, the information at the top of the form on the page, it
12    has your name, correct?
13 A  Yes, sir.
14 Q  And then next to that it has an item.  It says, "How long
15    is the offender required to register?"  And there's an X
16    there for life.  That was the issue you talked about
17    before, correct?
18 A  Yes, sir.
19 Q  Then down at the bottom it has this person's name, Vickie
20    Halsell, H-a-l-s-e-l-l.  It says re-entry specialist.  She
21    apparently is a State employee; is that your understanding?
22 A  I can't even recall what she looks like or anything about
23    her, sir.
24 Q  But this form was completed at New Castle at the State
25    facility?

1 A  Yes, sir.
2 Q  Based upon your receipt of this form were you of the
3    understanding that upon your release you had to register as
4    a sex offender?
5 A  Yes, sir.
6 Q  And you would be subject to all the requirements of the
7    statute?
8 A  Yes, sir.
9 Q  Is that one of the things the classes went over to sort of
10    tell you all the things you would have to do to comply?
11 A  Yes, sir.  But if you got parole there's different sex
12    offender rules.  And if you had probation there's different
13    rules.
14 Q  So you were getting out it says on parole and probation?
15 A  Yes.
16 Q  That's what the form says; is that right?
17 A  That's correct.  But the probation department dropped it
18    and said just follow the parole rules.
19 Q  Which probation department dropped it?
20 A  Noble County Probationary Department.
21 Q  At some later time after you were released?
22 A  As soon as I was released I contacted them immediately.
23 Q  At that point in time in February of 2009 was it your
24    intention to return to Noble County?
25 A  Yes.

1 Q  Had you been informed by the State employees at New Castle
2    that that's where you had to register, in Noble County with
3    the Sheriff's Department?
4 A  Yes.
5 Q  So you knew upon your release you had to come to Noble
6    County and register?  That's what you were told you needed
7    to do, right?
8 A  Wherever I resided.
9 Q  But your intention was to come to Noble County?
10 A  Yes, sir.
11 Q  So once you were released you came to the Sheriff's
12    Department to complete the registration process, correct?
13 A  Yes, sir.
14 Q  Let me show you this document which is Exhibit B.
15         (Defendants' Exhibit B
16         marked for identification.)
17 Q  That's a multi-page document.  So you can take a look at
18    that for a minute or two and refresh your memory.
19 A  Did you see I messed this up when I filled this out?  I put
20    down my son's information by accident.
21 Q  That's on Page 3 of the form you are looking at?
22 A  Yes, sir.
23 Q  Exhibit B?
24 A  Yes, sir.  I believed they were asking for me and I wrote
25    it down wrong.

1 Q  Talking about the employment information?
2 A  Yes, vehicle information and additional employment
3    information.
4 Q  Okay.
5 A  I'm not sure why I wrote down my son's, though.
6 Q  Does it have your signature on the fifth page of the
7    document?
8 A  Yes.
9 Q  So that was the next day on February 20th, 2009, right?
10 A  Yes, sir.
11 Q  And also on that page it shows the witness who signed was
12    Wanda Truelove, right?  She was the person at the Sheriff's
13    Department that worked with you on this, right?
14 A  Yes.
15 Q  Now, the rest of the information here, all this first two
16    pages, is this in your handwriting here?  Did you fill out
17    the first two pages?
18 A  Yes, that's my handwriting.
19 Q  Is all the information on the first page correct?
20 A  Yes, sir.
21 Q  On the second page, did you fill out that information on
22    the second page, too, including the charge information?
23 A  Yes, sir.
24 Q  You have the sexual battery D felony, correct?
25 A  Yes.

1 Q  And the date and so forth.
2 A  That conviction date though may not be the exact date, but
3    it's somewhere close.
4 Q  It was definitely in 1996, though?
5 A  Yes, sir.
6 Q  And then down at the bottom of the second page talks about
7    you were on probation or parole at that point, right?
8 A  Yes, sir.
9 Q  Page 3 you have already told me was a mistake because you
10    put your son's information there.
11        And then Page 5 that has your signature, if you will
12    turn to Page 5 it has a reference to things as part of the
13    registration requirements that you are supposed to do to
14    comply, correct?
15 A  Correct.
16 Q  Did Wanda give you a copy of this document to take with you
17    at the time?
18 A  I believe so.  I'm not sure.  I can't say for sure.
19 Q  Was there any discussion with Ms. Truelove at the time
20    about whether you should or shouldn't be subject to the
21    registration requirements?  Did that even come up?
22 A  No, it did not.
23 Q  So on this date, on February 20th, it was your
24    understanding that you were subject to the requirements?
25 A  Yes, sir.

1 Q  Because that's what they told you at the State?
2 A  Yes, sir.
3        (Defendants' Exhibit C
4        marked for identification.)
5 Q  I'll show you Exhibit C.  This is just one page.  Don't
6    know if you have seen this or not, but take a look at it.
7 A  I'd like to add something about this.
8 Q  Sure, if you want to add something about Exhibit B go ahead
9    and do that first.
10 A  On Exhibit B is where I was living.  And then when the
11    landlord found out that I had to register as a sex offender
12    he made me move.
13 Q  That was obviously at some later point in time?
14 A  Yes, sir.
15 Q  Have you seen Exhibit C before?
16 A  That's my handwriting.
17 Q  And it's dated, well, looks like it's in September, anyway,
18    September 3rd of 2009.  At that point had you been
19    re-arrested?  Is that why this form was completed?  Says
20    transport to DOC.
21 A  I'm sorry.  Would you rephrase the question?  I was
22    reading.
23 Q  Was this document generated in September of 2009 because
24    you had been re-arrested?
25 A  For failure to register.

6 (Pages 18 - 21)

1 Q Okay. For this --

2 A Sentenced to the Indiana Department of Corrections.

3 Q So before September of 2009 you were arrested again by an

4   officer of Noble County, correct?

5 A Yes, sir.

6 Q Were you actually arrested on that charge or had you

7   already been incarcerated for something else?

8 A I was incarcerated for disorderly conduct.

9 Q And in addition to that you were charged with the felony

10   failure to comply with the registration requirements?

11 A Yes.

12 Q You were represented by counsel in connection with that?

13 A Yes, John Owen.

14 Q Owen?

15 A Yes, sir.

16 Q O-w-e-n?

17 A Yes, sir.

18 Q Did you enter a plea of guilty of failure to comply with

19   the registration requirements?

20 A Yes. It was with great trepidation.

21 Q But you did do so?

22 A Yes, sir.

23 Q Did it come up in the course of your entering the plea with

24   the court, the judge, anyone, about whether you should be

25   subject to those registration requirements at that point?

1 A No, not under what we're asking about. But definitely it's

2   on the record of me objecting to the judge about being sent

3   back to prison for failure to register a job that I had

4   done for a woman I dated and didn't get paid. It was a

5   volunteer act.

6 Q But just so it's clear, Mr. Brown, at that point from your

7   standpoint the dispute wasn't about whether you were

8   subject to the requirements, it was about whether you

9   complied?

10 A Exactly.

11 Q You were arrested and charged because the allegation was

12   that you didn't comply with the notice requirement?

13 A Yes, sir.

14 Q Do you remember the date of that conviction?

15 A If the arrest was May 5th I'd say it was right around June

16   28th.

17 Q And what was your sentence on that charge?

18 A Six months.

19 Q Do you know why you were sent to the Department of

20   Corrections rather than serve the time here?

21 A Because if you are on parole and you catch another felony

22   they automatically give you half your backup time. So I

23   did three and-a-half years because of that.

24 Q So because it was a parole violation?

25 A Exactly.

1 Q Besides the failure to comply with the registration

2   requirements was there any other basis for the parole

3   violation at that point? Was there any other basis for it?

4 A No.

5 Q Did the disorderly conduct charge play any part in that?

6 A They said they would have turned me back on the street for

7   that because it was a misdemeanor.

8 Q And was that violation here in Noble County also, the

9   parole?

10 A Yes, sir. And I even brought it up to my attorney that if

11   I knew that admitting to a felony would automatically make

12   me go back and do half my backup time there's no way I

13   would have even signed that.

14 Q But, well, you did?

15 A But I did. Because I wasn't aware of the law at that time.

16 Q And again it just never came up with either your attorney

17   or the judge about the issue of whether or not you were

18   supposed to be subject to the registration requirements?

19 A Correct.

20 Q Where were you incarcerated then after that? Where did you

21   go in the State prison system?

22 A New Castle. No, no. I'm sorry. Indiana Youth Camp in

23   Plainfield, Indiana. IYC, they call it.

24 Q While you were there, well, maybe not, looks like you got

25   moved over to New Castle again at some point?

1 A Yes.

2     (Defendants' Exhibit D

3     marked for identification.)

4 Q This is a letter you wrote in May of 2012. I marked this

5   as Exhibit D. Is this the letter you are talking about?

6     MR. KEEN: I think it's in the packet, Chris.

7 Q Is this the letter you sent to the judge about how long you

8   were supposed to register?

9 A I will have to read it first.

10 Q Yeah, please take your time.

11 A This is the one I wrote to the judge, I believe.

12 Q That's your handwriting, correct?

13 A Yes, sir.

14 Q You signed it as well?

15 A Excuse me, sir. I wrote it to the Sheriff, but I think I

16   sent one almost identical to the judge.

17 Q I saw that Sheriff, then it was Sheriff Leatherman was the

18   Sheriff of Noble County back in 2012, was this addressed to

19   him or copied to him?

20 A It was addressed to him.

21 Q But you think you also sent a copy to the judge?

22 A I know I did because the judge answered me. I was

23   surprised the judge wrote me, took the time to look it up

24   and said, "You are right, Mr. Brown. It should only be ten

25   years."

1 Q This was Judge Kirsch?

2 A Yes, Judge Robert Kirsch.

3 Q I don't have his letter, but he wrote you and said it

4 should only be ten years, not life?

5 A Yes.

6 Q But he didn't say you shouldn't have to register at all?

7 A No, he did not.

8 Q Did you receive any response from Sheriff Leatherman?

9 A No, I did not.

10 Q When was your release date then after that? 2012,

11 sometime?

12 A I believe so. 2012. September 6th, I believe, or 5th.

13 Right around there.

14 Q I think you are right. You've got your dates pretty well

15 in mind. Were you in New Castle still then in September of

16 2012?

17 A Yes, up until that date there.

18 (Defendants' Exhibit E

19 marked for identification.)

20 Q Marked as Exhibit E, this is a one-page document dated

21 September 5th, 2012. Looks similar to Exhibit A. Is this

22 a document that was completed while you were still at the

23 New Castle facility?

24 A Yes, sir.

25 Q And it does show your release date of September 6th of

1 2012. See that?

2 A Yes.

3 Q It doesn't have a full signature. Is that like a half

4 signature of yours or what is that?

5 A Yes. I don't know what happened. That is my first three

6 letters of my first name. And that is part of my

7 signature.

8 Q Had you seen this document before?

9 A Yes, sir.

10 Q It looks like the person you were dealing with in 2012 from

11 New Castle, the State facility, was April Wilburn,

12 W-i-l-b-u-r-n, looks like. Do you have any recollection of

13 your conversation with April?

14 A No, I do not.

15 Q Now, looking at the top of this again it's still saying you

16 are supposed to register for life?

17 A Yes, I do.

18 Q Did you have any conversation with April at the time about

19 whether that was right or wrong in light of what you

20 received from the judge?

21 A That letter to the judge was in 2012. So that first one,

22 the 2009 release date, no. I know I told her that. I

23 don't know if I showed her the letter from the judge, but I

24 know I told her I contested the lifetime registry.

25 Q What did she say?

1 A "Well, you will have to take that up in your county with

2 the judge."

3 Q Did you go through one of those pre-release classes again?

4 A Yes, sir.

5 Q About the registration requirements?

6 A Yes, sir, I did.

7 Q Was there anything different about the class and the

8 procedure than you had encountered in 2009?

9 A No, sir.

10 Q So when you were released from New Castle in September of

11 2012 was it once again your understanding and expectation

12 that you had to register as a sex offender at least for the

13 ten years?

14 A Yes, sir.

15 Q And you planned to come back to Noble County at that time

16 also?

17 A Yes, sir.

18 Q Did you want to add something?

19 A Yes, sir. I apologize. In 2009 they didn't even send me

20 to a pre-release class. I did 13 years, 7 months. And

21 they didn't send me to a pre-release. Just pushed me out

22 the door. Because I got my time cut with my college degree

23 and it put me out the door. So I didn't have time to do

24 the pre-release.

25 Q But you did go through the pre-release class before the

1 2012 release?

2 A Yes, I did.

3 Q And that's where they talked about the registration

4 requirements?

5 A Yes, sir.

6 Q Looks like again you were being released on parole and

7 probation then in September of 2012? At least that's

8 what's checked on the form?

9 A That's what it should have been.

10 Q And then you came back to Noble County?

11 A Yes, sir.

12 Q Come to the Sheriff's Department to register?

13 A Yes, sir.

14 Q Did you come here and talk to Wanda Truelove again?

15 A Yes, I did.

16 (Defendants' Exhibit F

17 marked for identification.)

18 Q I will show you this. I don't know whether this is the

19 first one or not, but it's the first one I could find.

20 Exhibit F, another multi-page document dated September 28th

21 of 2012. Take a minute to look through that, if you would.

22 Have you seen this before?

23 A Yes, sir.

24 Q Was this a document you completed in connection with the

25 registration as a sex offender in Noble County?

8 (Pages 26 - 29)

1 A  Yes, sir.

2 Q  Actually, it looks like some of the dates are earlier than

3     the 28th.  If you look on Page 4, why don't you turn to

4     Page 4 and Page 5 and Page 6 of that document and Page 7.

5     They have September 7th there.

6 A  That's correct.

7 Q  I don't know why the first page has the 28th.  Do you know

8     why that's a different date?  See at the bottom?

9 A  That was my mistake.  I don't know why.  Unless she told me

10    I had to come back with something.  And she gave me 30 days

11    to do it.  And that may be why.  I come back and then she

12    handed it to me to finish.

13 Q  The first two pages might have been a second time when you

14    were there on the 28th?

15 A  Yes.

16 Q  But the information on the first two pages, that's your

17    writing, correct?

18 A  Yes.

19 Q  Then on the third page which actually says Page 1 on what I

20    am looking at, see, that's what it looks to me like, that

21    page is dated September 7th.  That must have been the first

22    time you came after your release?

23 A  Yes.

24 Q  This information here, is that in your handwriting also on

25    the third page but it says Page 1?

1 A  Yes, sir.

2 Q  The next page, is that your handwriting also?

3 A  Yes, sir.

4 Q  And the part here where it's checked sexual battery, did

5     you do that?

6 A  Yes.

7 Q  Then the page that actually says Page 4, but it's Page 6 or

8     7, whatever it is, but Page 4, is that your handwriting

9     also?

10 A  Yes, sir.

11 Q  Then the next two pages after that are preprinted pages

12    that talk about the registration requirements that you are

13    under; is that right?

14 A  Yes, sir.

15 Q  And then the last page of this Exhibit F has some

16    additional registration requirement.  Then it has your

17    signature, correct?

18 A  Yes, sir.

19 Q  I assume, did you read through all those registration

20    requirements when you completed the form?

21 A  Yes, sir.

22 Q  So was there any discussion with Wanda or anybody from the

23    Sheriff's Department in September of 2012 about whether you

24    should be subject to any of these requirements?

25 A  Only for how long.  Ten or life.

1 Q  So did you have a specific discussion with Ms. Truelove

2     about whether it should be ten years or life?

3 A  She referred me to someone else, but I can't remember the

4     name for sure.  I don't remember if she said Mr. Dunafin or

5     my parole officer.  Detective Dunafin.  I'm sorry.

6 Q  That's fine.  Who did you talk to next about that issue,

7     about whether it's life or ten years?

8 A  My parole officer, I believe.

9 Q  Was that Noble County parole or Kosciusko County?

10 A  No, it's Noble County, but he is from Fort Wayne there.  So

11    I'm not sure if it was Bobby Yarborough or if it was the

12    next parole officer.

13 Q  But it was through the probation department in Fort Wayne?

14 A  Yes, sir.  Parole.

15 Q  Parole, I mean.  So wherever it was, tell me about that

16    discussion about the life versus ten years requirement.

17 A  I can't recall what he said.  I just went by the judge's

18    letter.  The judge's letter said ten years.  So I just

19    always believed it was ten years.

20 Q  So between September of 2012 and June of 2015 did you

21    continue to regularly report changes as necessary about

22    your situation to comply with the act?

23 A  I thought I did.

24 Q  There's another change form I have here in June of 2015.  I

25    will mark as Exhibit G.

1        (Defendants' Exhibit G

2        marked for identification.)

3 Q  It's a multi-page form again.  So just take a minute to

4     look through it.  Looks very similar to Exhibit F except

5     the different date and perhaps some change you were

6     notifying the department about, correct?

7 A  Yes.

8 Q  Again it looks like it was actually completed on two

9     different dates.  First two pages on June 19th, the rest of

10    them on May 20th, both of 2015, correct?

11 A  Yes.

12 Q  The last page has your signature on it again, right?

13 A  Yes, sir.

14 Q  As well as Wanda Truelove.  Was there anything discussed

15    with Ms. Truelove at that point in time about whether you

16    should or shouldn't be subject to the requirements?

17 A  No, sir.

18 Q  Now, there came a point in time where you were then

19    arrested for failure to comply with the registration

20    requirements, correct?

21 A  Yes, sir.

22 Q  That was in September of 2015; is that right?

23 A  Yes, sir.

24 Q  Did you understand you were arrested on a warrant that had

25    been issued by the Noble County court system for various

## Page 34

1  felonies for failure to comply with reporting requirements?

2  A  The officer arresting, Officer Deputy Kyle Hartman, went to

3  the house I was living at prior, past Lisle Street I went

4  to Riley Street. Should be an updated thing there.

5      Then I come over here to see Wanda. I told her

6  about it. I only had a paper ID because you have to get a

7  new license every time you move. So they gave me a paper

8  ID. I came over here and showed it to Miss Truelove.

9      She said, "I will give you 30 days to get your hard

10  license in the mail because you will have to come back over

11  here and show me that."

12      In the meantime an officer went to the other house

13  where I used to live on Riley Street, here it is. And my

14  friend that I lived there with called me and said, "An

15  officer was here checking on you."

16      I said, "What for?"

17      So I got the gentleman's name. I called over here.

18  Called him immediately and reported everything to him. And

19  he asked me to meet him over here at the jail with all my

20  information. And I beat him to the jail with it from

21  Kendallville.

22  Q  Who did you meet with that year?

23  A  Detective Kyle Hartman.

24  Q  Was that before or after the warrant had been issued for

25  your arrest?

## Page 35

1  A  That was before.

2  Q  But then at some point after that the court still issued a

3  warrant for your arrest for violation of the registration

4  requirements?

5  A  Approximately a week later.

6  Q  And you were arrested on that warrant, correct?

7  A  Yes, sir.

8  Q  You were incarcerated in the Noble County Jail beginning

9  what date; do you remember? You have been so good with the

10  other dates.

11  A  Now you stumped me. Let me think here. I'd say right

12  around September 6th again.

13  Q  Of 2015?

14  A  Yes, sir.

15  Q  And were you appointed an attorney or did you hire one?

16  A  I hired one this time.

17  Q  Who was that?

18  A  Richard Thonert.

19  Q  T-h-o-n-e-r-t. Eventually you pled guilty to those

20  charges?

21  A  Yes, sir.

22  Q  For failure to register as a sex offender, right?

23  A  Yes, with great trepidation again.

24  Q  That was here in Noble County?

25  A  Yes, sir.

## Page 36

1  Q  Again did it come up at any point in time during this

2  process until the point you pled guilty and were sentenced

3  that you maybe shouldn't be subject to the requirements?

4  A  No, sir.

5  Q  What was the sentence you received at that point?

6  A  30 months home detention.

7  Q  Why were you still remaining incarcerated at the jail after

8  that then?

9  A  I wasn't when I was sentenced. I got sentenced to house

10  arrest.

11  Q  So you weren't at the jail then at that point?

12  A  I was for a moment. Then I bonded out.

13  Q  Yeah. I'm going to show you, you wrote some letters to

14  various people. And I thought they were from the jail.

15  Were you out on home arrest then?

16  A  I was out on house arrest for the sentence. Then they come

17  to the house and found drug paraphernalia that my wife had.

18  And they brought me back to the jail. Then when I was here

19  I got on the law library and was looking up the sex

20  offender registry again that I shouldn't even be registered

21  at all and found it.

22  Q  Do you remember the date you were released on house arrest

23  and when you were brought back?

24  A  I'm guessing right around January 22nd on house arrest of

25  2015.

## Page 37

1  Q  When did you return to the jail then on the drug

2  paraphernalia charge?

3  A  That's 2016. I'm sorry.

4  Q  Yes. 2016.

5  A  About 45 days later approximately.

6      (Defendants' Exhibit H

7      marked for identification.)

8  Q  This is Exhibit H. Looks like it's a letter from you dated

9  March 2nd to Detective Dunafin. See that?

10  A  Yes, sir.

11  Q  This is a letter you wrote of that date, correct?

12  A  Yes, sir.

13  Q  Were you in the Noble County Jail then?

14  A  Yes, sir, I was.

15  Q  What was the purpose of this letter?

16  A  To correct a blatant wrong that they done to me.

17  Q  So this was after you did this legal research yourself

18  about the registration requirements?

19  A  Yes, sir.

20  Q  Is that the first time that you had any understanding that

21  maybe you shouldn't have been subject to the requirements?

22  A  Yes, sir.

23  Q  Is that the first time anyone told you that?

24  A  Absolutely. Nobody told me. I figured it out myself.

25  Q  None of the State officials told you

10 (Pages 34 - 37)

1 A  Not one person.

2 Q  None of your defense lawyers representing you in the

3    criminal cases told you, right?

4 A  No, sir, none of them told me.

5 Q  Not the prosecuting attorneys, correct?

6 A  Correct.

7 Q  And not the judges in your cases, none of them?

8 A  Correct.  No one told me.

9 Q  So when you sent this letter to Detective Dunafin did you

10    get a response?

11 A  A few days later he come back and was rude with me.  He

12    made out like I shouldn't threaten him.  I said, "It wasn't

13    a threatening letter.  You was the one that handled the

14    case.  You told me I had to register as a sex offender."

15 Q  What else was discussed?

16 A  But in his defense he did bring me up to his office.  He

17    went over the sex registry paperwork, I mean the

18    stipulations on the computer and seen the mistake that was

19    made.  He agreed with me.

20 Q  Did he say what he was going to do at that point?

21 A  I can't recall.

22 Q  Based upon your conversations with Detective Dunafin then

23    do you have any reason to believe that he knew prior to

24    that time that you shouldn't have been subject to the

25    registration requirements?

1 A  That would be me speculating.  I don't think I can do that.

2 Q  Did he say anything at any point during your conversation

3    with him that led you to believe that he knew already

4    before you brought it to his attention?

5 A  Nothing that I can recall specifically.

6        (Defendants' Exhibits I and J

7        marked for identification.)

8 Q  These are Exhibits I and J.  I think they kind of go

9    together.  Did you file something with the court regarding

10    this issue, correct?  Described as a protest, right?

11 A  Yes.

12 Q  That's Exhibit J.  It looks like you sent a copy of it to

13    Detective Dunafin under Defendant's Exhibit I, both March

14    7th of 2016; is that correct?

15 A  Yes, sir.

16 Q  Did you hear anything back from Detective Dunafin right

17    away when you sent him this letter with the protest?

18 A  I don't recall.  I can't remember.

19 Q  At some point after that did you get brought before the

20    judge?

21 A  They didn't even make me go before the judge.  They just

22    come over here and vacated both sentences.

23 Q  How did you learn about that?

24 A  Head public defender Jim Abbs came over with a revised

25    version of my own post conviction relief that I filed

1    myself.

2 Q  Which judge vacated your convictions?

3 A  I believe it was Judge Laur.

4 Q  But you didn't even have to go to the court and talk to him

5    about it?

6 A  No.

7        (Defendants' Exhibit K

8        marked for identification.)

9 Q  I will show you what's been marked as Exhibit K.  This

10    looks like another letter to Detective Dunafin you wrote

11    the next day on March 8th.  This is talking about just

12    advising him those convictions had been vacated, right?

13 A  Yes, sir.

14 Q  Were you released from the Noble County Jail the same day

15    or were you still held because you had the pending drug

16    charges?  It does say in the letter that you would be

17    leaving in the morning.  So that's why I asked you about

18    that.

19 A  I'm not sure.  I must have bonded out then.

20 Q  What happened with regard to the drug charges that were

21    pending?

22 A  Dismissed.

23 Q  In this letter, Exhibit K, you say, "I have some issues I'd

24    like to address with you as well."  Did you ever talk with

25    Detective Dunafin again about this issue after March 8th of

1    2016?

2 A  That may have been about a friend that died.  I'd have to

3    look at that letter, sir.

4 Q  It's here in front of you.

5 A  That was about a different issue.

6 Q  Did you ever talk with Detective Dunafin again about the

7    issue of the sex registration?

8 A  No, sir, I did not.

9 Q  Did you ever have any conversations with Detective Hartman

10    or Deputy Hartman about any of those issues?

11 A  No, sir, I did not.  Only the day that I met him here.

12 Q  Right.  And that wasn't about whether you were subject to

13    the requirements but whether you complied?

14 A  Exactly.

15 Q  And did you ever talk with Wanda Truelove at any other

16    point in time about this whole issue of whether you

17    shouldn't or shouldn't be subject?

18 A  No, sir.

19 Q  Never had any follow-up conversation with her about, "Hey,

20    why didn't you tell me I didn't have to do this."

21 A  No, I never approached her that way.

22 Q  Did you ever talk with Sheriff Harp at all at any point in

23    time about any of this?

24 A  No, sir.

25 Q  You had no conversation with him at any time during this

11 (Pages 38 - 41)

1  whole process about registration, whether you complied with
2  the registration, whether you should be required to comply,
3  none of that?
4  A  No, sir, I did not.
5        (Defendants' Exhibit L
6        marked for identification.)
7  Q  I will show you what is marked as Exhibit L. I don't know
8  whether you have seen this or not so take a minute to look.
9        Mr. Brown, have you seen this document before today?
10 A  No, I have not.
11 Q  It apparently is from a person named Laura with the Indiana
12 Department of Corrections. And it's dated March 14th of
13 2016. It seems to be advising Noble County that you are
14 not subject to the sex offender registration requirements.
15 Do you see that at the top?
16 A  Yes, sir, I do.
17 Q  Are you aware of any prior notification that anyone at
18 Noble County received from the State that said you weren't
19 required to register as a sex offender?
20 A  I'm not aware of any.
21 Q  Have you ever talked with any State employee at any of the
22 State penitentiaries, facilities, where they indicated they
23 informed anyone at Noble County you weren't subject to the
24 requirements of the registration statute?
25 A  No, I never heard nothing like that.

1  Q  Have you had any conversations with Detective Dunafin,
2  Deputy Hartman, Wanda Truelove, or Sheriff Harp about the
3  lawsuit that you filed or any of the allegations that are
4  contained in the lawsuit itself?
5  A  No, sir, I have not.
6  Q  It hasn't come up while you have been incarcerated here at
7  all more recently?
8  A  Not more recently, I don't believe. I did say that I
9  planned on filing a lawsuit, but I didn't know who would be
10 included in that.
11 Q  But no discussion about the specifics with any of them on
12 the lawsuit?
13 A  No, sir.
14 Q  One of the people that's been listed as a possible witness
15 in this case by your attorney was a person named Tim
16 Sillaway, S-i-l-l-a-w-a-y.
17 A  Yes, sir.
18 Q  Who is Mr. Sillaway?
19 A  He is the friend I lived with on Riley Street that said
20 Mr. Hartman showed up to his door.
21 Q  So he would be somebody that would be able to testify about
22 this change of address issue?
23 A  Absolutely. And how adamant I was not to mess it up.
24 Q  Since you were released from the Noble County Jail in March
25 of 2016 you had the current charge arrest that you've

1  talked about and there was an incident in Oklahoma where
2  you were arrested as well and charged with some crimes,
3  correct?
4  A  Yes.
5  Q  When did that happen?
6  A  September of last year.
7  Q  2016; is that right?
8  A  Yes, sir.
9  Q  How long were you held, incarcerated in Oklahoma on those
10 charges?
11 A  About a week, week to ten days, I think.
12 Q  Have you been incarcerated for any other reason since your
13 release in March of 2016 besides Oklahoma and the current
14 charges against you?
15 A  No, sir.
16 Q  With the probation violation issue what charge was that a
17 probation violation of?
18 A  For the precursors.
19 Q  No, but what were you still on probation for that caused
20 that to be a violation? What charges or what conviction --
21 A  Conviction of precursors.
22 Q  Okay. That's the one that was pending at the same time
23 that you were arrested on the first registration
24 requirement?
25 A  Exactly. Yeah, it was still pending, correct.

1  Q  There's been an allegation, Mr. Brown, on your Amended
2  Complaint that Sheriff Harp and the Sheriff's Department
3  should be liable to you for false arrest because they
4  didn't have proper policies or procedures in place to
5  prevent your constitutional rights from being violated.
6        I know you are not a lawyer, but is there anything
7  specifically in your mind that you believe the Sheriff
8  should have done, or didn't do, or should have done
9  differently as far as policies or procedures to keep this
10 from happening?
11 A  I believe that on that date that it changed over or how the
12 ex post facto he should have informed his employees there's
13 a cut-off line. We need to check every person that is
14 required by the State to look it up.
15        I can't do that. As you even said, I'm not an
16 attorney. And if I would have never come here and had
17 access to a law library I'd still have that label. Still
18 be biased and prejudiced against.
19        When I got out in 2009 they told me I couldn't be
20 around my 17-year-old daughter. They told me I couldn't be
21 around my grandson. I went to a psych doctor, you can
22 verify all this, from the Northeastern Center in
23 Kendallville, Indiana. Dr. Ali was the doctor. I was
24 devastated.
25        My youngest daughter was only 4 when I left. She

1  was 17 when I got out. They told me I couldn't see her,
2  have no verbal conversations on the phone or nothing. I
3  said, "I don't have a case against a child. This was their
4  mother." And their mother even come and seen me after
5  that.
6  Q  Who was it that told you that?
7  A  The parole office.
8  Q  That was the parole office, not Miss Truelove?
9  A  No, it was not. It was a parole stipulation.
10 Q  Right.
11 A  And I got another doctor, Dr. Surakanti, if you need to put
12    him down to check all this.
13 Q  During the time that you were out of jail and prison
14    between 2009 and now when you worked the self-employment
15    jobs you described, did you file tax returns any of those
16    years?
17 A  No, I did not.
18 Q  Did you keep any record of any earnings you had during
19    those periods of time?
20 A  No, I did not.
21 Q  With regard to the lawyers that you hired to defend you in
22    the criminal cases, was it only Richard Thonert, the
23    non-public defender, was he the only one you paid yourself?
24 A  And John Owen.
25 Q  You paid him as well?

1  A  Yes, sir.
2  Q  What did you pay each of them to represent you in those
3    criminal cases that dealt with the sex registration
4    charges?
5  A  John Owen was only like $450. And I wrote him a letter,
6    giving him a chance to make that right. He just ignored
7    me.
8  Q  What about Mr. Thonert?
9  A  Mr. Thonert, we settled out of court, me and him did. He
10   gave me my money back and a little bit more. I don't know
11   if you are supposed to disclose it.
12 Q  It depends on whether you signed something that made it a
13   confidential settlement.
14 A  I can't remember. So I probably should not say.
15 Q  That's fine. But at least it covered what you paid him, he
16   reimbursed you that money so you didn't have that cost
17   anymore?
18 A  Correct.
19 Q  Did you ever make a formal claim of malpractice against
20   those lawyers?
21 A  No, I did not. Not against Mr. Thonert. Mr. Owen I
22   thought about. I --
23 Q  Don't tell me what you talked to Mr. Myers about. But you
24   haven't done so so far anyway?
25 A  No, sir. But there's another attorney that should be

1  included in that.
2  Q  Who is that?
3  A  Howard Hanson, from the public defender's office.
4  Q  When did he represent you?
5  A  September of 2012. Right around there. I come back on
6    post conviction again that I filed because of the Boykin
7    rights. And then he talked me into signing the same plea.
8  Q  Have you made any formal claim against him for malpractice?
9  A  No.
10 Q  Have you ever filed any lawsuits or claims against anyone
11   else for violation of your constitutional rights?
12 A  In Michigan City I did against John Barns, I believe the
13   employer was.
14 Q  Is that a prison guard?
15 A  Prison counselor.
16 Q  What was the nature of that claim?
17 A  I was in a cell down close to the range. I said, they told
18   me I was going to have to be moved all the way down to the
19   other end. I said, "If you do that I will be stabbed
20   tomorrow."
21      They said, "Just a minute." He goes downstairs,
22   comes back. He goes, "Sorry. Nothing I can do."
23      He moved me down there and I got stabbed the next
24   day.
25 Q  When was that?

1  A  I believe it was 2002. January 9th.
2  Q  Was that an actual lawsuit you filed then against the
3    counselor and state?
4  A  Yes, sir.
5  Q  And did it go to court?
6  A  It didn't go to court. I just backed out. I was just
7    upset.
8  Q  You just what?
9  A  I was upset. Just wanted to show them what they did was
10   wrong. I just said, "I don't even care." Because I first
11   did it myself, you know. Then I had some attorney from
12   Indianapolis step in. Then he wanted to back out. He
13   said, "I want to change my mind."
14      The judge told him it was too late, too far along in
15   the case, that he couldn't step down. But I didn't want to
16   force the gentleman to represent me if he didn't want to.
17   So I just said, "The heck with it."
18 Q  So you voluntarily dismissed it then?
19 A  Yes.
20 Q  Any other lawsuits or claims you filed for violation of
21   your rights besides this one?
22 A  In 1983?
23 Q  Yeah. Anything to do with your civil rights or
24   constitutional rights?
25 A  No. I apologize. I don't want to make any misstates here.

13 (Pages 46 - 49)

1 When Jim Abbs represented me in the case I filed a case
2 against him saying he violated my rights representing me,
3 but they dismissed it. But I tried to file it in Allen
4 County against Jim Abbs.
5 Q In State Court or Federal Court?
6 A Federal. It was the chief public defender's office. Jim
7 Abbs here.
8 Q Was that because of a representation in the sex
9 registration case or something else?
10 A No, that was something else, but I did write Mr. Abbs a
11 letter about Howard Hanson. And I made a public record to
12 Judge Kirsch that Howard Hanson should not be allowed to
13 represent my wife in a case. When they said, "Why not?"
14 I said, "Because I will probably have a lawsuit
15 against Mr. Hanson for the sex offender registration case.
16 And the judge tells me, "No, that's done, over with,
17 Mr. Brown. That's long gone."
18 "No, Your Honor, that will never be over. That was
19 three and-a-half years of my life. That will never be
20 over."
21 He said, "Well, that's not what we're here to
22 discuss today, Mr. Brown."
23 Q Any other lawsuits or claims that relate to your legal
24 representation or your arrests and convictions?
25 A No, sir.

1 Q Did anything, any other untoward events happen to you when
2 you were in prison between 2012 and 2015 when you were
3 serving the sentence on the first conviction for failure to
4 register?
5 A Multiple fights, if you are talking that.
6 Q Did you sustain any injuries as a result of them that
7 required medical care?
8 A You have to keep those hid or you will make your time that
9 much harder.
10 Q So whatever injuries you sustained you just bore the brunt
11 of them and moved on?
12 A Absolutely.
13 Q They weren't serious enough that required hospitalization?
14 A No, sir, not the ones from 2012.
15 Q To 2015?
16 A When I got stabbed I went to an outside hospital in
17 Michigan City.
18 Q Mr. Brown, have you told us now everything that you
19 remember about the events that I've taken you through from
20 your release in 2009 to the vacating of your convictions in
21 2016 that deal with the sex registration requirement
22 issues?
23 A Yes, sir.
24 Q Have we discussed the various types of damages that you are
25 claiming resulted from the alleged wrongful arrest and

1 convictions, or are there additional things you want to
2 tell us about?
3 A About the damages that I feel I received?
4 Q Yes. Not asking about monetary ones. I think we talked
5 about that. But any other type of damage, or harm, or
6 injury you are claiming?
7 A No. Just psychological was awful not being able to be
8 around my children and my grandson. The psych doctor even
9 told me, he said, "I know your parole officer. He is a
10 good guy. How can I tell you this?" He leaned back.
11 "Without me telling you to break the law, how can I tell
12 you this?" He goes, "A man's got to do what a man's got to
13 do."
14 Because I was crying in his office about it. I was
15 real close to my children. I still am even. So that was
16 the hardest part, with my children and being away from my
17 grandson. I'm sorry.
18 Q That was what the parole officer told you when you first
19 got out in 2009?
20 A Yes, that I couldn't be around my children. And my
21 daughter was 4 when I left. She was 17. And she needed me
22 the most because I wasn't in her life. And then I couldn't
23 be around her then.
24 Q That was the parole officer through Allen County you are
25 talking about?

1 A Yes, sir. Any other damage? Just psychological stuff.
2 Well, I got kicked out of the house and didn't have a place
3 to live. That was wrong. I told him. He didn't care, the
4 landlord. Just the prejudice. Not being able to work
5 here. Not being able to live there. That was crazy.
6 Q Did you have any psychological care or treatment when you
7 were at the State facilities between 2012 and 2015? So
8 after your first arrest?
9 A Yes, I did.
10 Q Where was that? Where did you have that treatment?
11 A IYC in New Castle.
12 Q So if we got the records they would have records of that?
13 A Yes, sir. I went to see a psych doctor for sure.
14 Q Were you on any kind of medication during that time?
15 A Yes.
16 Q Antidepressant? Anxiety?
17 A Yes. Both.
18 Q Had you taken those medications when you were incarcerated
19 the first time?
20 A No, I did not.
21 Q So when did you first start to take those medications?
22 A When I got out. They told me that I couldn't be around my
23 kids and stuff. I was under severe stress. Wait. Wait.
24 Q Just to clarify, that would be in 2009 when you first
25 started those medications?

14 (Pages 50 - 53)

1 A Yes, sir.

2 Q Then did you continue them after you were incarcerated then

3 back in 2012?

4 A Yes, sir.

5 Q Do you still take them now?

6 A I'm supposed to.

7 Q But you haven't been?

8 A No.

9 Q Why is that?

10 A She says, the nurse here in Noble County says I can't have

11 them here.

12 Q When did they tell you that?

13 A She told me that about two and-a-half weeks ago, maybe

14 three weeks ago. Said, "You are not allowed to have

15 Artanes."

16 Q Have what?

17 A Artanes. The generic name is Trihexyphen.

18 Q What was the nurse's name?

19 A I don't know her name, but she is out there. I just seen

20 her when I walked through.

21 Q Why did she tell you you weren't allowed to have that?

22 A I don't know why.

23 Q Have you seen the doctor while you have been here?

24 A No.

25 Q Have you asked to?

1 A Yes, I told the psych doctor. She said, "You are not

2 getting your Artanes."

3 Q Have you filled out any written form request for treatment

4 while you have been in the jail here?

5 A I think I did on the kiosk.

6 Q Would that have been since your most recent arrest?

7 A Yes.

8 Q When did you last take anxiety or depressive medication?

9 A Last summer sometime.

10 Q Who was prescribing it for you then?

11 A Dr. Surakanti.

12 Q Where is Dr. Surakanti located?

13 A Fort Wayne. I think it's West Jefferson Street.

14 Q Did the prescription just run out or what happened?

15 A I didn't have money to get down there or something. I

16 can't remember. I was on Haldol and Artanes.

17 Q So at the time that you were arrested most recently here

18 and what causes you to be here in Noble County Jail, at

19 that point in time had the prescriptions run out so you

20 didn't have any more?

21 A When I was arrested here in December, yes, I didn't have no

22 more. Correct.

23 Q At that point in time you weren't taking them because you

24 hadn't been able to afford to continue?

25 A Exactly.

1 Q And you haven't been prescribed them by anyone since then?

2 A No, but I did bring it up to the nurse. She said right off

3 the bat, "You are not getting the Artanes."

4 Q Have you had any other medical complaints while you have

5 been at the jail here since December? Any other medical

6 issues?

7 A I just got a bad tooth. I lost a tooth.

8 Q Had a tooth fall out?

9 A Yeah.

10 Q Have you seen a dentist at all?

11 A No.

12 Q Have you asked to while you have been here?

13 A She asked me when I would get out. She said they would

14 just pull it. It fell out actually this morning. I

15 swallowed. I didn't know unless I swallowed it in my

16 sleep.

17 Q Was it a tooth that had been already damaged somehow or

18 what happened?

19 A Yes.

20 Q It was. Okay. Have you received any other medical or

21 psychiatric care or treatment since 2009 that we haven't

22 talked about?

23 A No, just those two doctors, Dr. Ali and Dr. Surakanti.

24 Q Where is Dr. Ali?

25 A Dr. Ali was at the Northeastern Center in Kendallville, but

1 he retired or moved to a different place. And then they

2 referred me to down in Fort Wayne a better doctor, I guess.

3 His name was Dr. Surakanti, but I think he worked for the

4 Bowen Center, I think it is.

5 Q Through the Bowen Center?

6 A Yes.

7    MR. KEEN: Mr. Brown, I think those are all

8 the questions I have for you today. Thank you for

9 being so patient with me.

10    THE WITNESS: Thank you, Mr. Keen.

11    MR. MYERS: I just have a couple questions.

12 CROSS-EXAMINATION

13 BY MR. MYERS:

14 Q How do you spell Surakanti?

15 A S-u-r-k-a-n-t-i, I believe.

16 Q T-i? Okay.

17 A Yeah. Probably an A between the R and K, I'm thinking.

18 Surakanti. I'm not sure.

19 Q Thank you.

20 A The one from Northeastern Center is Dr. Ali.

21 Q I got that. I want to talk about a couple things you

22 mentioned regarding your medical information and your

23 teeth. Regarding the most recent situation with your

24 tooth, was it giving you pain at all?

25 A I pointed out to the nurse it was sore, but she said,

1  "Well, how long are you going to be here?"
2      I said, "Until July. July 18th."
3      She said, "Well, they'll just pull it."
4      I said, "I can't afford it."
5 Q  Would you have preferred some kind of care for your teeth,
6      though?
7 A  Yes.
8 Q  Did you ask to be seen by a dentist?
9 A  Well, when she told me it would cost me $30 I told her, "I
10     will just pass."
11 Q  Are you indigent?  Do you have any money at all?
12 A  I got very little.  You starve if you don't spend it on the
13     commissary.
14 Q  So the nurse indicated that you were going to have to be
15     charged money to have your tooth seen?
16 A  Yes, sir.  And I brought up to her, I said, "Well, if I'm
17     Indiana Department of Correction sentenced why wouldn't it
18     just cost me $5?  Because that's all it costs you in the
19     Department of Corrections."
20     She said, "Well, because you are not there, are
21     you?"
22 Q  So you were denied tooth care for lack of funds?
23 A  They would have billed me, but I'm not going to let them
24     bill me $30.  Then I don't have nothing to eat.
25 Q  Regarding your access to your psychological meds for

1     anxiety and depression, what were the medications you were
2     on?
3 A  Haldol and Artane.
4 Q  Is Artane, A-r-t-a-n-e-s?
5 A  They will know.
6 Q  And you mentioned another drug called, is it Trihexyphen?
7 A  Trihexyphen.  That's with a ph instead of an f.
8 Q  Trihexyphen?
9 A  That is just the generic form name of Artane.
10 Q  So you had this condition that normally would have
11     necessitated you having these what you call Artanes and
12     Haldol?
13 A  Haldol.
14 Q  And you were not able to get those drugs in this jail?
15 A  Absolutely.
16 Q  How long have you been deprived of those medications?
17 A  Ever since I asked her.
18 Q  How many months?
19 A  Probably a month now, because she has the date I was in
20     there and asked her marked down.  To bring to your guys'
21     attention I even put in on the kiosk saying I'm court
22     ordered by the judge to take those medications.
23     She said, "I don't see no court order anywhere.  You
24     have to have the judge send it over here."
25     I said, "I will let him know when I go before him

1     that you are denying me this."  This was like last year.
2     But it's still up there in the kiosk because I went through
3     my medical request and it was still there.
4 Q  How long have you been requesting these medications in this
5     jail?  Going back to the last year?
6 A  Absolutely.  They took them from me then.
7 Q  To be discussed.  All right.  Let's talk about this issue.
8     As I understand it from -- I'm not going to get specific
9     with the dates, but 2009 up through looks like March of
10     2016 you have come back to Noble County and were advised by
11     different Noble County Sheriff employees, Hartman, Dunafin,
12     perhaps Wanda Truelove, they assisted you or told you
13     regarding your obligation with respect to this registry.
14         MR. KEEN:  Object to the form of the question
15         as leading.  Also I think it misstates the
16         evidence.  It's also compound since there's
17         multiple people.
18 Q  Is that my understanding?
19         MR. KEEN:  Same objection.
20 Q  In other words, that's the question that's pending.  He's
21     already objected so you don't have to listen to his
22     objection again.  My question is, is from 2009 to March of
23     2016 --
24 A  None of them four individuals informed me that I didn't
25     have to register at all.

1 Q  And these individuals all operated under the supervision of
2     the Noble County Sheriff?
3 A  Absolutely.
4 Q  They're all Noble County Sheriff employees, or officers, or
5     detectives?
6 A  Yes, sir.
7 Q  You are not a lawyer.  You have already testified to that.
8     Are you aware of the concept of presumed to know the law,
9     that an officer or a state actor is presumed to know the
10     law; are you aware of that?
11 A  I'm aware of that because they make me aware that ignorance
12     is no defense.
13 Q  So from 2009 going forward you have been involved, as I
14     understand it, with Indiana Department of Corrections
15     employees, you have been involved with judges, you have
16     been involved with public defenders, you have been involved
17     with the local Sheriff, that is, the Noble County Sheriff
18     and his employees and agents and detectives and officers.
19     And none of them throughout this whole process indicated to
20     you that you did not have to register?
21 A  Not a single person.
22 Q  You found that out on your own?
23 A  Yes, sir.
24 Q  Now, going back to 2009, if you didn't have to register as
25     an offender would you have been incarcerated or sent back

16 (Pages 58 - 61)

1    to jail for failing to register? In other words, there

2    were times when you were sent back to jail, as I understand

3    it, for failing to register as an offender?

4  A  Yes, sir.

5  Q  But you didn't have to register?

6  A  No, I was sentenced to the Indiana Department of

7    Corrections and I didn't have to register by law.

8  Q  So there were periods of time where you were incarcerated,

9    that is, that you lost liberty?

10  A  Yes, sir.

11  Q  For failing to register when in fact you didn't have to

12    register?

13  A  About 43 months all together.

14  Q  And then you testified about the emotional harm, the

15    psychological damages that you experienced.

16  A  Yes, sir.

17  Q  The problems with work and having to change residences, not

18    to mention the continuing psychological harm for which you

19    have been denied some medicine here at the Noble County

20    Jail?

21  A  Yes, sir.

22        MR. MYERS: I have nothing else.

23  REDIRECT EXAMINATION

24  BY MR. KEEN:

25  Q  Mr. Brown, just to make sure I understand the

1    circumstances, when you came and registered each time here

2    in Noble County at the Sheriff's Department as a sex

3    offender that we've talked about, each of those times, am I

4    correct that each time you just simply met with Wanda

5    Truelove and completed the paperwork with her? That is the

6    person you dealt with for that purpose?

7  A  Yes and Detective Dunafin.

8  Q  Did you meet with Detective Dunafin when you signed up to

9    register as well?

10  A  He came out and spoke to me with Wanda. They brought me in

11    the office. They have to take a picture of you. He spoke

12    to me about -- nothing about not registering and stuff, but

13    I can't recall the conversation exactly.

14  Q  Was that the first time you registered in 2009?

15  A  That was the second time.

16  Q  2012?

17  A  Yes.

18  Q  And then did you ever talk with Deputy Hartman about any of

19    the registration requirements before the time you were last

20    arrested?

21  A  No, sir, I did not.

22  Q  And before you talked with Wanda Truelove and before you

23    talked with Detective Dunafin about registering, you had

24    been told by employees of the State Penitentiary that you

25    were required to register?

1  A  Yes, sir.

2  Q  You haven't filed any kind of lawsuit or claim against

3    those employees?

4  A  No, sir, I have not.

5        MR. KEEN: That's all I have.

6        MR. MYERS: No.

7        MR. KEEN: Do you want him to sign?

8        MR. MYERS: Would you like to read and sign

9    this? In other words, you have an opportunity to

10    make corrections. How long are you going to be

11    here?

12        THE WITNESS: July 18th.

13        MR. MYERS: Send it here, I suppose. I do

14    want a copy.

15        (Deposition concluded and Witness

16        excused at 3:32 p.m.)

17

18

19

20

21

22

23

24

25

1

2

3                CERTIFICATE

          I, Kristin J. Nichols, CSR, RPR, a Notary Public

4  within and for the County of Porter and State of Indiana,

    do hereby certify:

5

          That JEFFREY SCOTT BROWN appeared before me on

6  Monday, February 20 2017, and was duly sworn to testify

    the truth, the whole truth and nothing but the truth to

7  questions propounded at the taking of the foregoing

    deposition in a cause now pending and undetermined in

8  said court;

9          That I further certify I then and there reported

10  stenographically the proceedings at the said time and

    place; that the proceedings were then transcribed from

11  my original shorthand notes; and that the foregoing

    typewritten transcript is a true and correct record

12  thereof;

13          That I am not a relative or employee or attorney

14  or counsel for any of the parties hereto, nor am I

    interested directly or indirectly in the outcome of

15  this action.

16          IN WITNESS WHEREOF, I have hereunto set my Notarial

17  seal this 27th day of February, A.D. 2017.

18

19

20

21

       Kristin J. Nichols, CSR, RPR

22     Notary Public, State of Indiana

       Residence: Porter County

23     My Commission Expires: 8-29-23

24

25

IN THE UNITED STATES DISCTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

JEFFREY BROWN, )
    Plaintiff, )
    -vs- ) Case No. 1:16-cv-00337-WCL-SLC
DEPUTY KYLE HARTMAN, )
DET. SHAUN DUNAFIN, )
WANDA TRUELOVE, )
SHERIFF DOUGLAS A. HARP, )
    Defendants. )

JEFFREY SCOTT BROWN

I hereby acknowledge that I have read the foregoing

deposition transcript regarding the case of Brown v.

Hartman, et al., taken Monday, February 20, 2017, and

that the same is a true and correct transcription of the

answers given by me to the questions propounded, except

for the additions or changes, if any, as noted on the

attached errata sheet.

_____
JEFFREY SCOTT BROWN

Subscribed and sworn to me this

_____ day of _____,

20____, A.D.

_____
Notary Public or Witness
State of_____
County of_____
Commission Expires:_____

## ERRATA SHEET
### VERITEXT LEGAL SOLUTIONS
### 800-567-8658
ASSIGNMENT NO. 2533499
CASE NAME: Jeffrey Brown v. Dunafin, Et Al
DATE OF DEPOSITION: 2/20/2017
WITNESS' NAME: Jeffrey S. Brown

PAGE/LINE(S)/    CHANGE     REASON

____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____
____/____/____ _____ ____/_____

Veritext Legal Solutions
290 W. Mt. Pleasant Ave. - Suite 3200
Livingston, New Jersey 07039
Toll Free: 800-227-8440 Fax: 973-629-1287

_____, 2017

To: Christopher C. Myers, Esq.
Case Name: Jeffrey Brown v. Dunafin, Et Al
Veritext Reference Number: 2533499
Witness: Jeffrey S. Brown     Deposition Date: 2/20/2017

Dear Sir:

Enclosed please find a deposition transcript. Please have the witness review the transcript and note any changes or corrections on the included errata sheet, indicating the page, line number, change, and the reason for the change. Have the witness' signature at the bottom of the sheet notarized except in California where they are signing under penalty of perjury and forward the errata sheet back to us at the address shown above.

If the jurat is not returned within thirty days of your receipt of this letter, the reading and signing will be deemed waived.

Sincerely,

Production Department

Encl.
Cc: Robert T. Keen, Esq.

1                          CERTIFICATE

2

3       I, Kristin J. Nichols, CSR, RPR, a Notary Public
   within and for the County of Porter and State of Indiana,
4  do hereby certify:

5

6       That JEFFREY SCOTT BROWN appeared before me on
   Monday, February 20 2017, and was duly sworn to testify
   the truth, the whole truth and nothing but the truth to
7  questions propounded at the taking of the foregoing
   deposition in a cause now pending and undetermined in
8  said court;

9

10      That I further certify I then and there reported
   stenographically the proceedings at the said time and
   place; that the proceedings were then transcribed from
11 my original shorthand notes; and that the foregoing
   typewritten transcript is a true and correct record
12 thereof;

13

14      That I am not a relative or employee or attorney
   or counsel for any of the parties hereto, nor am I
   interested directly or indirectly in the outcome of
15 this action.

16

17      IN WITNESS WHEREOF, I have hereunto set my Notarial
   seal this 27th day of February, A.D. 2017.

18

19

20

21      _____

       Kristin J. Nichols, CSR, RPR
22     Notary Public, State of Indiana
       Residence:  Porter County
23     My Commission Expires:  8-29-23

24

25

Electronically signed by Kristin Nichols (601-396-017-4748)          48817e39-a856-4fcf-b1d2-702ec334b0bd

# Notification of Sex and Violent Offender Registration Responsibilities and Other Duties

State Form 46656 (R10 / 7-07)

*This agency is requesting the disclosure of your Social Security Number in accordance with IC 11-8-8. Disclosure is mandatory; this record cannot be processed without it.

| Full Name of Offender (first, middle, last, and suffix) | | Please check one item in each row | | |
|---|---|---|---|---|
| | | | Yes | No |
| *Jeffrey Brown* | A | Is the offender required to register under IC 11-8-8? | ☑ Yes | ☐ No |
| | B | Is the offender a sexually violent predator under IC 35-38-1-7.5? | ☐ Yes | ☑ No |
| | C | Is the offender an offender against children under IC 35-42-4-11? | ☐ Yes | ☐ No | ☐ NA |
| | D | How long is the offender required to register under IC 11-8-8? | 10-Years ☐ | Life ☑ | Other ☐ |

| DOC Number (if applicable) | Did the offender successfully complete the Indiana Department of Correction's Sex and Violent Offender Registration Course? | Yes ☐ | Enter Date Completed |
|---|---|---|---|
| 956175 | | | |

| Social Security Number | Date of Birth | FBI Number |
|---|---|---|
| | 4-10-64 | |

| Cause # | IC Code (or out-of-state code) | Felony Level |
|---|---|---|
| | | |

| Current Status | Parole ☑ | Probation ☑ | CC/CTP ☐ | Discharged ☐ | Other ☐ |
|---|---|---|---|---|---|

| Release Date (walkout date) | Next Registration Date | End Registration Date |
|---|---|---|
| 2-19-09 | | |

### Registered Address

| | Street Address | City | State | Zip Code |
|---|---|---|---|---|
| Residence ✕ | 1241 Hwy. 6, Apt. #4 | Brimfield | IN | 46720 |
| Work | | | | |
| School | | | | |

I have read or have had read to me the information contained in "Sex and Violent Offender Registration Responsibilities and Other Duties". By my signature, I acknowledge that I have received a copy of this information and that I understand my registration duties and obligations under IC 11-8-8, IC 35-42-4-10, and IC 35-42-4-11 and other corresponding Indiana Statutes.

| Signature of offender | Printed name of offender | DOC number | Date (month, day, year) |
|---|---|---|---|
| *Jeff Brown* | Jeff Brown | 956175 | 2/19/09 |

I hereby certify that the above offender was orally informed and provided a copy of the information contained in "Sex and Violent Offender Registration Responsibilities and Other Duties".

| Signature of witness | Printed name of witness | Title | Date (month, day, year) |
|---|---|---|---|
| *Vickie Halsell* | Vickie Halsell | RE-ENTRY SPECIALIST | 2-19-09 |

EXHIBIT A
WIT: BROWN
DATE: 2-20-17
Kristin J. Nichols, CSR, RPR

NOBLE CO SHERIFF 0140

# Noble County Sheriff's Department
## Sex and Violent Offender Regisration

### IC 11-8-8-7 & IC 11-8-8-5

| ☑ | New County Registrant | ☐ | Employment Registrant |
|---|---|---|---|
| ☐ | Change of Information | ☐ | Annual Update |

## *Registrant Information*

Name: __BROWN__   __JEFFrey__   __ScoTT__   _____
        (Last)        (First)        (Middle)        (Suffix)

Alias/Nickname: _____

Current Physical Address: __1241  HWY 6  Apt. #4__
__BRIMFIELD__      __IN.__      __46720__
     (City)        (State)        (Zip Code)

Mailing Address (if different from the physical address): __200 W. Booth St. Wolcottville IN 46793__

Phone #/Contact #: __260-854-3784__      _____
          (Home)               (Cell)

DOB: __4/10/64__      SSN: _____

Driver's License #: __N/A__    State: _____ Expiration: _____

Gender: __Male__ Height: __6.1__ Weight: __215__ Eye Color: __BROWN__

Hair Color: __BRowN__ Hair Length: __Short__ Build: __Avg.__ Complexion: __Tan__
Facial Hair (what type/description) __BLACK  Mustache__

Right/Left Handed or Ambidextrous: __Right__

Glasses/Contacts: __N/A__      Religious Preference: __N/A__
(Specify if you wear glasses all the time or for reading/driving only.)

Scars/Marks/Tattoos: __Left Knee   SCAR__
                         (Location/Description)

Health Problems/Prescription Medications: __None__

State of Birth: __Ky__      City of Birth: __McDowell__

Can you read, write and speak English?    __Yes / No__



EXHIBIT __B__
WIT: __BROWN__
DATE: __2-20-17__
Kristin J. Nichols, CSR, RPR

NOBLE CO SHERIFF 0102

Are you a student? If yes, where? __NO__

Do you have a temporary address? If yes, please indicate the physical address below.

_____
(Street Address)                    (City)              (State)        (Zip)          (County)

## Employment Information

Employer: __N/A_____          _____
                                (Company Name)                                         (Supervisor's Name)

Employer Address: _____

_____
        (City)                          (State)                    (ZIP)              (County)

Employer Phone #: _____ Hours/Days Working: _____

Work Performed: _____
                                                        (Description)

## Charge Information

Sex Offense: __Sexual Battery "D" Felony__ State Crime Occurred: __Ind.__

Conviction Date: __Oct. 25 1996__ Conviction County: __Kosciusko__

Cause #: __43D01 9608-CF-000287__ Sentence: _____

Has a court determined you to be a sexual predator? Yes /(No)  Violent? Yes /(No)

Date Released from Jail/Prison: __2/19/09__          DNA Available: (Yes) No

Facility Where Sentence Was Served (list all): __Ind. State Prison, Miami Correctional, New Castle__

## Victim Information

Number of Victims: __1__      Child: Yes /(No)        Elderly: Yes /(No)

Disabled: Yes /(No)      Gender: Male /(Female)      Age of Victim: __31__

Relationship to Victim: __Wife__ / Husband

## Probation/Parole Information

Are you or were you on probation or parole? If yes, which one: ~~No~~ Yes
(Information should pertain to the sex crime for which you are required to register.)

What county and state handled your probation or parole? __Ind__

Name and Phone # of PO: __260-424-3536__

Date Probation or Parole Began: __2/19/09__          Ended: _____

## *Vehicle Information*

(The NCSD must have a copy of your vehicle registration. If you are driving the vehicle today, please give your registration to the office deputy so that a copy can be made. If you are able to provide a registration today, you may skip the remainder of this section. If you do not have the registration with you, please complete the information below.)

Make: _N/A_    Model: _____    Year: _____    Color: _____

Body Style: _N/A_    Plate #: _____    Plate State: _____

### *Next of Kin*

Name: _TREVOR BROWN_    Phone #: _574-529-2415_

Address: _3578 N. Barbee Rd._    _46582_

| (City) | (State) | (Zip Code) |

SSN: _____    Relationship to You: _SON_


### *Additional Employment Information*

Employer: _Symmetry_    _Adam Craig_
     (Company Name)    (Supervisor's Name)

Employer Address: _Warsaw_    _IND_    _46582_    _Kosciusko_
    (City)    (State)    (ZIP)    (County)

Employer Phone #: _574-267-8700_  Hours/Days Working: _10:00 - 6:00 Am_  _Third Shift_

Work Performed: _Machinist_
    (Description)

**Please use the back of this sheet for any additional information.**

Effective July 1, 2008

IC 11-8-8-8 (a) (7)

N/A

Electronic Chat Room User Name:_____

Electronic Mail Address:_____

Instant Messaging Username:_____

Social Networking Web Site Username:_____

NOBLE CO SHERIFF 0105

**Registration Conditions**

1. I have been notified **IN Writing** of my duty to register.

2. I understand that if I change my place of residence, including my specific home address, my place of employment or my place of education, I have three (3) days to update this information with the County Sheriff's Office. (IC 11-8-8-11)

3. I further understand that if I move to a new county within the State of Indiana, I have three (3) days to update my registration information with the county that I am leaving and the county I am moving to.

4. I understand that I must comply with any mail that I receive from the County Sheriff's Office, in a timely manner.

5. I understand that if I fail to register under this chapter (IC 11-8-8) or fail to complete and submit a new registration form as required under section 11 of this chapter (IC 11-8-8), I may be charged with a Class D Felony. However, the offense is a Class C Felony if I have a prior unrelated offense under this section.

I hereby certify that I have truthfully answered the information requested above and understand the duties and obligations required of me under (IC 11-8-8) as outlined in this registration form.

Registrant _Jeff S. Brown_ Date _2/20/09_

Witness _Wanda Truelove_ Date _2-20-09_



**INDIANA DEPARTMENT OF CORRECTION**

**BROWN, JEFFREY**

DOC # 956175
SSN:
New Castle Indiana

DATE OF RELEASE
02/19/2009

**RELEASED**

| DATE OF BIRTH | HEIGHT | WEIGHT | SEX |
| --- | --- | --- | --- |
| 04/10/1984 | 6-3 | 230 | MALE |

| EYE COLOR | HAIR COLOR | RACE |
| --- | --- | --- |
| BROWN | BROWN | WHITE |

NOBLE CO SHERIFF 0108

C⁄o Sheriff Gary D Leatherman                          May 3, 2012

Dear Sirs,
     I'm writing you in regards to the sex offender registry. My counselor here at New Castle Mrs McCormick was doing my pre-release paper work & she seen that you have me listed as a life time registrant.
     She said it should be 10 yrs & that I needed to write you to get it corrected prior to my release. My case was a Class D Sexual Battery with my wife. I only have one sex offense case & according to the criteria I should be listed as a 10 yr. registrant.
     I only received 18 months do 9 for the sexual battery charge. I have paper work that says clearly if your charge is a Class D felony you only have to register for 10 yrs. Which still seems to long for a case like mine. I was married to my alleged victim for 13½ yrs when this took place. Don't get me wrong I handled the situation inappropriately & I sure feel like I've paid my dues, but to hold this over my head for the rest of my life? I don't believe that's appropriate. Will you please check into this & make the correction & let me know.
     Thank You,
        Sincerely
        Jeff S. Brown #956175
        NCCF P.O. Box A
        New Castle Ind
        47362

EXHIBIT D
WIT: BROWN
DATE: 2-20-17
Kristin J. Nichols, CSR, RPR

# Notification of Sex and Violent Offender Registration Responsibilities and Other Duties
State Form 46656 (R11 / 7-08)

*This agency is requesting the disclosure of your Social Security Number in accordance with IC 11-8-8. Disclosure is mandatory; this record cannot be processed without it.

| Full Name of Offender (first, middle, last, and suffix) | | Please check one item in each row | Yes | No |
|---|---|---|---|---|
| Jeffrey S. Brown | A | Is the offender required to register under IC 11-8-8? | ☐ | ☐ |
| | B | Is the offender a sexually violent predator under IC 35-38-1-7.5 | Yes ☐ | No ☑ |
| | C | Is the offender an offender against children under IC 35-42-4-11? | Yes ☐ No ☐ | NA ☐ |
| | D | How long is the offender required to register under IC 11-8-8? | 10 Years ☐ | Life ☑ Other ☐ |

| DOC Number (if applicable) 956175 | Did the offender successfully complete the Indiana Department of Correction's Sex and Violent Offender Registration Course? | Yes ☐ | Enter Date Completed |
|---|---|---|---|

| Social Security Number | Date of Birth 4/10/64 | FBI Number 920 119 PA6 |
|---|---|---|

| Cause # 43D01 9608 CF 227 | IC Code (or out-of-state code) 35-42-4-8 | Felony Level FD 66 |
|---|---|---|

| Current Status | Parole ☑ | Probation ☑ | CC/CTP ☐ | Discharged ☐ | Other ☐ |
|---|---|---|---|---|---|

| Release Date (walkout date) 9/6/12 | Next Registration Date 72 Hours |
|---|---|

## Registered Address

| Residence Robert Brown | Street Address 1241 E. Hwy 6 | City Brimfidd | State IN | Zip Code 46794 |
|---|---|---|---|---|
| Work | Street Address | City | State | Zip Code |
| School | Street Address | City | State | Zip Code |

I have read or have had read to me the information contained in "Sex and Violent Offender Registration Responsibilities and Other Duties". By my signature, I acknowledge that I have received a copy of this information and that I understand my registration duties and obligations under IC 11-8-8, IC 35-42-4, and other corresponding Indiana Statutes.

| Signature of offender | Printed name of offender | DOC number | Date (month, day, year) |
|---|---|---|---|

I hereby certify that the above offender was orally informed and provided a copy of the information contained in "Sex and Violent Offender Registration Responsibilities and Other Duties".

| Signature of witness | Printed name of witness | Title Re-entry Spec | Date (month, day, year) 9-5-12 |
|---|---|---|---|

EXHIBIT E
WIT: Brown
DATE: 2-20-17
Kristin J. Nichols, CSR, RPR

OFFENDER WATCH ... Offender Watch ... All Responsibility ... Any Utilization Cycle ... Of ... ... NOTICE

# *CHANGE FORM*

### Address / Employment / School / E-Mail / Vehicle

Name: JEFF S. BROWN  Date of Birth: 4-10-64  Social Security: _____

---

**ADDRESS INFORMATION**  ☑ **No Change**  ☐ New

Previous Address: 1241 E US 6  Apt/Lot 4  City Brimfield  Zip 46794

New Address: _____  Apt/Lot ___  City ___  Zip ___

Telephone #: _____  Cell #: _____  Initials

---

**EMPLOYMENT**  ☐ None  ☑ No Change  ☐ New  ☐ Remove  ☐ Updated

Employer: Self Employed

Employer Address: 1241 E US 6

Employer Telephone #: (260) 854-3786  Shift / Hrs/Days Daytime / When Needed

Start Date: _____  End Date: _____

List **all current** employers: _____  Initials  ✓

---

**SCHOOL INFORMATION**  ☐ None  ☐ No Change  ☐ New  ☐ Remove  ☐ Updated

School: _____

Start Date: _____  End Date: _____

School Address: _____

School Telephone #: _____  Hours/ Days: _____  Initials

---

**EMAIL ADDRESS AND INTERNET USERNAMES**  ☐ None  ☐ No Change  ☑ New  ☑ Remove  ☐ Updated

@ gmail.com BROWN

USER NAME  BROWN 2431  Initials

---

Signature: *Jeff Brown*  Date: 9/28/12

**(Use next page for VEHICLE changes)**

EXHIBIT F
WIT: BROWN
DATE: 2-20-17
Kristin J. Nichols, CSR, RPR

NOBLE CO SHERIFF 0072

**VEHICLE # 1 INFORMATION**   ☐ None   ☑ No Change   ☐ New   ☐ Remove   ☐ Updated

Make:_____   Model:_____   Year_____

Color(s):_____ Plate:_____ Plate Type:_____ Expiration Date:_____

Vin:_____   Registered Owner:_____ **Initials**

---

**VEHICLE # 2 INFORMATION**   ☐ None   ☐ No Change   ☐ New   ☐ Remove   ☐ Updated

Make:_____   Model:_____   Year_____

Color(s):_____ Plate:_____ Plate Type:_____ Expiration Date:_____

Vin:_____   Registered Owner:_____ **Initials**

---

**VEHICLE # 3 INFORMATION**   ☐ None   ☐ No Change   ☐ New   ☐ Remove   ☐ Updated

Make:_____   Model:_____   Year_____

Color(s):_____ Plate:_____ Plate Type:_____ Expiration Date:_____

Vin:_____   Registered Owner:_____ **Initials**

---

**VEHICLE # 4 INFORMATION**   ☐ None   ☐ No Change   ☐ New   ☐ Remove   ☐ Updated

Make:_____   Model:_____   Year_____

Color(s):_____ Plate:_____ Plate Type:_____ Expiration Date:_____

Vin:_____   Registered Owner:_____ **Initials**

---

**VEHICLE # 5 INFORMATION**   ☐ None   ☐ No Change   ☐ New   ☐ Remove   ☐ Updated

Make:_____   Model:_____   Year_____

Color(s):_____ Plate:_____ Plate Type:_____ Expiration Date:_____

Vin:_____   Registered Owner:_____ **Initials**

---

Signature: *Jeff S. Brown*      Date: 9/28/12

NOBLE CO SHERIFF 0073

## STATE OF INDIANA SEX OR VIOLENT OFFENDER REGISTRATION FORM
### (Revision 2 August/2012)

Social Security # _____  DOB: 4 / 10 / 64

Name: BROWN          JEFF          Scott
      (Last)         (First)       (Middle)          (Suffix)

Driver's License # _____ State: ___ Expiration Date _____

---

OFFICE USE ONLY Registration # _____ Alternate Registration # _____

SID # _____ FBI# _____

NCIC# _____ DOC# _____

Registration Start Date _____ End Registration Date _____

---

Alias/Nicknames: N/A

Place of Birth: City McDowell  State KY  County 3

Height 6'1"  Weight 225  Build ___  Gender M  Race ___

Hispanic: Yes/No  Hair Color Salt pepper  Hair Length Short

Facial Hair (describe) Mustache  Eye Color Brown

Do you wear Glasses or Contacts yes  Complexion Medium  Right or Left Handed Right

Describe any Scars/Marks/Tattoos on your body and their location:
Left Knee 5 inch Scar
Tatoo Right Bicep of Emmitt Kelly

Current Address 1241 Hwy 6 Apt #4  Lot/Apt # 4

City Brimfield  State IN  Zip 46794  phone#( 260 ) 854-3786

Additional Address :( other address that you spend more than seven (7) nights in a fourteen (14) day period.) _____ Lot/Apt# _____

City _____ State _____ Zip _____ phone#: ( ) _____

Email addresses, internet identifiers / usernames:
_____
_____
_____

Employer Self Employed
        (Company Name)              (Supervisor's name)

Employer Address 1241 Hwy 6 Apt #4

Employer's Phone # 260-854-3786  County you work in Noble

Start Date _____ What shift do you work? 1st 2nd 3rd

Hours and days worked When Needed Daytime

Professional Licenses (list license number, issuing agency, description below):
_____

Are you currently a student? No

Name of School N/A

School Address _____

School Phone # _____ County you attend school in _____

Class Schedule (list days / nights and hours attended):
_____

I attest that the information that I have provided and listed above
Is accurate and complete to the best of my knowledge Jeff Brown so dated Sept. 7 2012

1

NOBLE CO SHERIFF 0074

**List ALL vehicles you own or may drive (Including employment vehicles)**

Vehicle #1 Make _OLD_ Model _BRAVADA_ Body Style _SUV_
Color _Dark grn_ Year _2000_ Plate _978210_ Plate Type _____ Expiration Date _____ State _IN_
VIN # _1GHDT13W6Y2202731_ Registered Owner _TRENT BROWN_

Vehicle #2 Make _____ Model _____ Body Style _____
Color _____ Year _____ Plate _____ Plate Type _____ Expiration Date _____ State _____
VIN # _____ Registered Owner _____

Vehicle #3 Make _____ Model _____ Body Style _____
Color _____ Year _____ Plate _____ Plate Type _____ Expiration Date _____ State _____
VIN # _____ Registered Owner _____

Vehicle #4 Make _____ Model _____ Body Style _____
Color _____ Year _____ Plate _____ Plate Type _____ Expiration Date _____ State _____
VIN # _____ Registered Owner _____

## INDIANA CASE INFORMATION:
### (OFFICE USE ONLY)

☐ Rape (35-42-4-1)
☐ Criminal Deviate Conduct (35-42-4-2)
☐ Child Molesting (35-42-4-3)
☐ Child Exploitation (35-42-4-4)
☐ Vicarious Sexual Gratification (35-42-4-5)
☐ Performing sexual conduct in the presence of a minor (35-42-4-5) (c)
☐ Child Solicitation (IC-35-42-4-6)
☐ Child Seduction (35-42-4-7)
☐ Sexual Misconduct with a Minor (35-42-4-9) Class A, B, C Felony
☐ Incest (35-46-1-3)
☒ Sexual Battery (35-42-4-8)
☐ Kidnapping (35-42-3-2) (if victim is less than eighteen (18) years of age)
☐ Criminal Confinement (35-42-3-3) (if victim is less than eighteen (18) years of age)
☐ Possession of Child Pornography (IC 35-42-4-4 (c)
☐ Promoting Prostitution (IC 35-45-4-4)
☐ Promotion of human trafficking (IC 35-42-3.5-1 (a) (2) (if victim is less than eighteen (18) years of age)
☐ Sexual Trafficking of a minor (IC -35-42-3.5-1 (b)
☐ Human Trafficking (IC 35-42-3.5-1 (c) (3) if the victim is less than eighteen (18) years of age.
☐ Murder (IC 35-42-1-1)
☐ Voluntary manslaughter (IC 35-42-1-3)
☐ Attempt or Conspiracy to commit any of above (select this box and applicable charge above.
   i.e. Attempted Rape. Attempted Murder etc...)

☐ Juvenile Adjudication for any of above and found likely to re-offend

Committed date _____ Conviction Date _10/25/96_ Release Date _____
Conviction State _IN._ Conviction County _Kosciusko_ Court _Superior_
Cause Number _43D01 9608-CF-000227_ NCIC Code _____
Sentence _18 months_ /Served _9 months_ Felony level _D_

### VICTIM INFORMATION:
Child: Yes or ~~No~~ Elderly: Yes or ~~No~~ Disabled: Yes or ~~No~~ Gender: Male or ~~Female~~
Your relationship to the victim at the time _Husband / wife_ Age of victim _32_

I attest that the information that I have provided and listed above
is accurate and complete to the best of my knowledge _JB_ so dated _Sept 7, 2012_

2

Revision 2 August 2012

NOBLE CO SHERIFF 0075

## OUT OF STATE CASE INFORMATION:
### (or other INDIANA cases)

Committed date _____ Conviction Date _____ Release Date_____
Conviction State_____ Conviction County_____ Court_____
Cause Number _____ NCIC Code_____
Sentence _____/Served _____

### *VICTIM INFORMATION:*

**Child:** Yes or No  **Elderly:** Yes or No  **Disabled:** Yes or No  **Gender:** Male or Female
Your relationship to the victim at the time _____ Age of victim _____

Charge #1 _____
    Indiana Equivalent _____ Felony Level _____
**Charge #2** _____
    Indiana Equivalent _____ Felony Level _____
**Charge #3** _____
    Indiana Equivalent _____ Felony Level _____
**Charge #4** _____
    Indiana Equivalent _____ Felony Level _____

---

## OUT OF STATE CASE INFORMATION:
### (Or other INDIANA cases)

Committed date _____ Conviction Date _____ Release Date_____
Conviction State_____ Conviction County_____ Court_____
Cause Number _____ NCIC Code_____
Sentence _____/Served _____

### *VICTIM INFORMATION:*

**Child:** Yes or No  **Elderly:** Yes or No  **Disabled:** Yes or No  **Gender:** Male or Female
Your relationship to the victim at the time _____ Age of victim _____

Charge #1 _____
    Indiana Equivalent _____ Felony Level _____
**Charge #2** _____
    Indiana Equivalent _____ Felony Level _____
**Charge #3** _____
    Indiana Equivalent _____ Felony Level _____
**Charge #4** _____
    Indiana Equivalent _____ Felony Level _____

I attest that the information that I have provided and listed above
is accurate and complete to the best of my knowledge _____ so dated _____, _____

Revision 2 August 2012

NOBLE CO SHERIFF 0076

Next of Kin: Name _Robert Brown_    Phone _(260) 854-3786_
Address _1241 Hwy 6 Apt #4_   City _Brimfield_ State _Ind_ Zip _46794_
Relationship _Father_

List addresses of any real estate you own in Indiana:
_N/A_

Are you currently on Parole, Probation, Home Detention, Re-entry, or other program?
_Parole_ **(explain)**
Name of your Parole, Probation Officer, or Supervising Agent _Mr. Hartman_
Telephone # _(260) 484-3048_   Probation County _N/A_

Parole / Probation Start date _9/5/12_
Parole / Probation End date _9/5/14_

---

OFFICE USE ONLY:
Sexually Violent Predator? Yes or (No)    Offender Against Children?   Yes or (No)

Violent Offender?   Yes or (No)    Internet Restrictions?    Yes or (No)
     (IC 35-42-4-12)
Lifetime Offender (non exp)? Yes or (No)   or   Date registration expires: _10 yrs_

---

**ADDITIONAL INFORMATION:**
(Use this section if more space is needed for email addresses, vehicles, employers etc...)

---

I attest that the information that I have provided and listed above
is accurate and complete to the best of my knowledge _IB_ so dated _Sept 7, 2012_

4

Revision 2 August 2012

NOBLE CO SHERIFF 0077

**AS A CONVICTED SEX OR VIOLENT OFFENDER YOU ARE REQUIRED TO DO THE FOLLOWING:**

1. You must provide the following information: Your name, any name or alias you have been known by, date of birth, sex, race, height, weight, hair color, eye color, any scars, marks, or tattoos, Social Security number, driver's license number or state identification card number, vehicle description and vehicle plate number for any vehicle that you own or operate on a regular basis, principal residence address, other address where you spend more than seven (7) nights in a fourteen (14) day period, mailing address if different from your principal residence address, the name and address of each of your employers in Indiana, the name and address of each campus or location where you are enrolled in school in Indiana, any electronic mail address, instant messaging username, electronic chat room username, or social networking web site username that you use or intend to use. (See IC 11-8-8-8)

2. You must register your "principal address" with the Sheriff's Department in the county in which you will be residing. You must also register any other address where you spend more than 7 nights in a 14 day period. This must be done within 7 days of your release from custody. If you are designated a Sexually Violent Predator you must register within 3 days of your release from custody. (See IC 11-8-8-8)

3. "Principal address" means the address where you spend the most time. (See IC 11-8-8-3)

4. If you work, volunteer, attend school, or own real estate in a county different from where you live, you must register IN-PERSON in each county where you own real estate, work, volunteer, or go to school. This must be done within 3 days of arriving in that county or counties. (See IC 11-8-8-7)

5. If you change your principal address, place of employment, or place of schooling, or if you change or obtain a new email address or internet username, you must report IN-PERSON to each Sheriff's Department having jurisdiction over those addresses within 3 days of any change in address, employment, or schooling. (See IC 11-8-8-11)

6. You must have and keep with you a valid driver's license or state issued identification card from your state of residence. (See IC 11-8-8-15)

7. If you live at a temporary residence such as a homeless shelter, a group home, or a halfway house, or if you are homeless you must register IN-PERSON to the sheriff's department at least once every 7 days until you find a permanent residence. (See IC 11-8-8-12)

8. If you are planning on moving to a different Indiana county or to another state you must report IN PERSON to the local sheriff's department AND register with the new Indiana county of residence within 3 days of the address change. If you move to a new state, it is your responsibility to obey the laws of the new state. (See IC 11-8-8-11)

9. You are required to register IN-PERSON at least once per year with the Sheriff's Department in each county where you are required to register. Sexually Violent Predators are required to register IN PERSON every 90 days and they must register for LIFE. There are two types of registration periods, ten-year registration and lifetime registrations. The registration period starts the day you are released from incarceration, or placed in a community transition program, a community corrections program, or placed on parole or probation, whichever occurs last. A person who is required to register as a sex or violent offender in any jurisdiction shall register for the period required by the other jurisdiction or the period described in this section, whichever is longer. (See IC 11-8-8-14 and IC 11-8-8-19)

10. If you are visiting or vacationing in a different location for more than 7 days you should inform the Sheriff's Department in your county of residence AND you must report IN PERSON to the Sheriff's Department in the county which you will be visiting. (See IC 11-8-8-7)

11. The Sheriff's Department is required to personally visit your principal address at least once per year, or once every 90 days if you have been designated a Sexually Violent Predator. (See IC 11-8-8-13)

12. If you are a Sexually Violent Predator you are required to register IN-PERSON at least once every 90 days with the Sheriff's Department in each county where you are required to register. You must register for LIFE. (See IC 11-8-8-14, a Sexually Violent Predator is defined in IC 35-38-1-7.5)

I attest that I understand my duties and obligations as listed above. _B_ so dated _9/7, 12_

Revision 2 August 2012

NOBLE CO SHERIFF 0078

13. If you are a Sexually Violent Predator who will be away from your principal address for more than 72 hours you must inform the Sheriff's Department, IN PERSON, of the following:
(1) That you will be absent from your principal residence for more than seventy-two (72) hours.
(2) The location where you will be located during the absence from your principal residence. The length of time you will be absent from your principal residence. AND; notify the local law enforcement authority in the visited county IN PERSON, of the following:
(1) That you will spend more than seventy-two (72) hours in the county.
(2) The location where you will be located while spending time in the county.
(3) The length of time you will remain in the county.
Upon request of the local law enforcement authority of the visited county, you shall provide the local law enforcement authority with any additional information that will assist the local law enforcement authority in determining your whereabouts during your stay in the county.
(See IC 11-8-8-18)

14. If you are a Sexually Violent Predator or an Offender Against Children, you are prohibited from residing within one thousand (1,000) feet of:
(A) school property; not including property of an institution providing post secondary education;
(B) a youth program center; or
(C) a public park. (See IC 35-42-4-11)

15. If you are a Sexually Violent Predator or an Offender Against Children, you CANNOT establish a residence within one (1) mile of the residence of the victim of your sex offense. (See IC 35-42-4-11)

16. If you are a Sexually Violent Predator or an Offender Against Children you CANNOT work for pay or as a volunteer:
(1) on school property;
(2) at a youth program center; or
(3) at a public park. (See IC 35-42-4-10)

17. You commit a felony if you knowingly or intentionally:
(1) fail to register;
(2) fail to register in every location where you are required to register;
(3) make a material misstatement or omission while registering as a sex or violent offender; or
(4) fail to register in person as required under 11-8-8; or
(5) do not reside at your registered address;

It is not a defense to a prosecution under this section that you were unable to pay the sex or violent offender registration fee or the sex or violent offender address change fee described under IC 36-2-13-5.6.
(See IC 11-8-8-17)

18. You must register for life if:

1. You were convicted of:
a) A sex or violent offense committed when you were 18 years of age or older against a victim who was less than 12 years old at the time of the crime; or
b) A sex or violent offense in which you:
1. Proximately caused serious bodily injury or death to the victim; or
2. Used force or the threat of force against the victim or a member of the victim's family unless the offense is Sexual Battery as a class D Felony; or
3. Rendered the victim unconscious or otherwise incapable of giving voluntary consent.
2. You are found to be a Sexually Violent Predator under I.C. 35-38-1-7.5; or
3. You have been convicted of two or more unrelated offenses under IC 11-8-8-5(a). (See IC 11-8-8-19)

19. If you are a Sexually Violent Predator, Offender Against Children, have been convicted of Possession of Child Pornography, Vicarious Sexual Gratification, Performing Sexual Conduct in the Presence of a Minor, or meet the conditions in IC 35-42-4-12, you CANNOT use any social networking web site, instant messaging, or chat room program; that allows a person who is less than eighteen (18) years of age to access or use the web site or program. (See IC 35-42-4-12)

20. Under Federal law, the Adam Walsh Child Protection and Safety Act of 2006, 18 United States Code 2250, if you travel to another state and fail to register as required, you are also subject to federal prosecution that carries penalties of a fine and/or imprisonment up to 10 years. If you visit, live, work, volunteer, own real estate, or attend school in any other state, it is your responsibility to obey BOTH the federal law and the laws of that state.

I attest that I understand my duties and obligations as listed above  JB        so dated  9/7  ,  12

Revision 2 August 2012

6

IC 11-8-8-8

**Required registration information**

Sec. 8. The registration required under this chapter must include the following information:

(1) The sex or violent offender's full name, alias, any name by which the sex or violent offender was previously known, date of birth, sex, race, height, weight, hair color, eye color, any scars, marks, or tattoos, Social Security number, driver's license number or state identification card number, vehicle description and vehicle plate number for any vehicle the sex or violent offender owns or operates on a regular basis, principal residence address, other address where the sex or violent offender spends more than seven (7) nights in a fourteen (14) day period, and mailing address, if different from the sex or violent offender's principal residence address.

(2) A description of the offense for which the sex or violent offender was convicted, the date of conviction, the county of the conviction, the cause number of the conviction, and the sentence imposed, if applicable.

(3) If the person is required to register under section 7(a) (2) or 7(a) (3) of this chapter, the name and address of each of the sex or violent offender's employers in Indiana, the name and address of each campus or location where the sex or violent offender is enrolled in school in Indiana, and the address where the sex or violent offender stays or intends to stay while in Indiana.

(4) A recent photograph of the sex or violent offender.

(5) If the sex or violent offender is a sexually violent predator, that the sex or violent offender is a sexually violent predator.

(6) If the sex or violent offender is required to register for life, that the sex or violent offender is required to register for life.

(7) Any electronic mail address, instant messaging username, electronic chat room username, or social networking web site username that the sex or violent offender uses or intends to use.

(8) Any other information required by the department.

I have read or had read to me the above information. By my signature, I indicate that I have received a copy of this information and that I understand my duties and obligations to register for a period of:

---

(10) (15) (25) years/_____ life.   (OFFICE USE ONLY)   Date Registration Expires: _____

I understand that I have been designated a; (circle appropriate designation or cross out if N/A)

_____ Sexually Violent Predator          _____ Offender Against Children
(Offender Initials)                         (Offender Initials)

_____ Sex / Violent Offender   (circle one)   _____ Internet Restrictions IC 35-42-4-12
(Offender Initials)                         (Offender Initials)

---

Signature of the offender: *Jeff S Brown*   Printed name: *Jeff S. Brown*   Date: *9/7/12*

I hereby certify that the above offender was informed of the obligation to register with local law enforcement as required by IC 11-8-8.

Department Official: *Sheum W*   Title: *Detective*   Date: *9-7-12*

**NEXT REGISTRATION DATE:** *9-7-13*

Right Thumb

I attest that I understand my duties and obligations as listed above *JB* so dated *9/7*, *2012*

7

Revision 2 August 2012

NOBLE CO SHERIFF 0080

March 2, 2016

Dear ~~Offi~~ Detective Dunafin,

When I last spoke to you I asked you if you were the Investigating officer in my case of failure to Register.

You informed me you were Not. Can you please give me the officers Name that conducted the investigation please?

Also isn't it standard procedure to check to see if the offense of the offender is even a Registable offense before issuing a warrant?

Doesn't your office have a copy of the 2013 INDIANA SEX OFFENDER REGISTRY? On page 2 and 3 it list the offenses and the dates if an offense occured before such date that that offender, "Is Not required to Register."

I was Not on Probation or Parole so I did not have any information saying that I did not have to register. I was only going by what you told me on March 20, 2015. Which was Wrong. Now here I am in jail under false pretenses. CAN'T you help make this Wrong Right? I was registering when I Iasn't even required to? Respectfully

Jeff S. Brown

EXHIBIT __H__
WIT: _BROWN_
DATE: _2-20-17_
Kristin J. Nichols, CSR, RPR

NOBLE CO SHERIFF 0039

Dated March 7, 2016

To: Detective Shawn Dunafin
From: Jeffrey S. Brown % N.C.J, F-8
RE: Indiana Sex offender Registry

Dear MR Dunafin,

Here is a copy of my formal Protest. Will you please make sure Sheriff Harp receives it.

CAN You please send me something back in writing showing you received it and plan to make sure Sheriff Harp does as well. I say this because of the time limit that the paper work you gave me spoke of. 30 days for the Sheriff to rule upon. Then if he decide it for some reason then I would have only 7 days to appeal his decission.

I have currently filed something with Judge Kirsch Court as well seeking to get it removed only because the Sheriff is gone until the 15th of March I believe you said and the paper work you gave me says the judge in the county you live has the right to remove it as well and I'm just covering all bases and would like to get it done as soon as possible so hopefully I can get this all off me and I can get out of jail on AN O.R. or atleast a Bond.

Thank You again for your assistance in this Matter.

Sincerely

Jeff S. Brown

EXHIBIT I
WIT: BROWN
DATE: 2-20-17
Kristin J. Nichols, CSR, RPR