IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION
CASE NO. 1:16-cv-00337-WCL-SLC

JEFFREY BROWN,                        )
                                      )
            Plaintiff,                )
                                      )
            -vs-                      )
                                      )
DEPUTY KYLE HARTMAN, DET. SHAUN )
DUNFIN, WANDA TRUELOVE, SHERIFF )
OF NOBLE COUNTY DOUGLAS A. HARP,)
STATE OF INDIANA/INDIANA        )
DEPARTMENT OF CORRECTIONS       )
(seeking perspective injunctive )
relief only), VICKI HALSELL and )
APRIL WILBURN,                  )
                                      )
            Defendants.               )

30(b)(6)DEPOSITION OF BRENT MYERS

        The 30(b)(6)deposition upon oral examination
of BRENT MYERS, a witness produced and sworn before
me, Rhonda J. Hobbs, RPR, Notary Public in and for
the County of Hendricks, State of Indiana, taken on
behalf of the Defendants, at the offices of Office
of the Attorney General, Government Center South -
5th Floor, 302 West Washington Street,
Indianapolis, Marion County, Indiana, on the 16th
day of December, 2019, scheduled to commence at
10:00 a.m., pursuant to the Federal Rules of Civil
Procedure with written notice as to time and place
thereof.

Job No. CS3610902

EXHIBIT
B

**Page 2**

1      A P P E A R A N C E S
2  FOR THE PLAINTIFF(S):
    Jeffrey Brown
3
    Christopher C. Myers
4  CHRISTOPHER C. MYERS & ASSOCIATES
    809 South Calhoun Street
5  Suite 400
    Fort Wayne, IN 46802
6  (Telephonic Appearance)
7
  FOR THE DEFENDANT(S):
8  KYLE HARTMAN, SHAUN DUNAFIN, WANDA
    TRUELOVE and DOUGLAS A. HARP
9
    Robert T. Keen, Jr.
10  BARRETT McNAGNY LLP
    215 East Berry Street
11  Fort Wayne, IN 46802
    rtk@barrettlaw.com
12
13  FOR THE DEFENDANT(S):
    APRIL WILBURN
14
    Adam G. Forrest
15  BOSTON BEVER KLING CROSS & CHIDESTER
    27 North Eighth Street
16  Richmond, IN 47374
    aforrest@bbkcc.com
17
18  FOR THE DEFENDANT(S)
    STATE OF INDIANA/INDIANA DEPARTMENT OF CORRECTION:
19
    Bryan R. Findley
20  OFFICE OF THE ATTORNEY GENERAL
    GOVERNMENT CENTER SOUTH - 5TH FLOOR
21  302 WEST WASHINGTON STREET
    INDIANAPOLIS, IN 46204-2770
22
23
24
25

**Page 3**

1      INDEX OF EXAM
2             Page
3  DIRECT EXAMINATION ..............5
    Questions by Mr. Robert T. Keen, Jr.
4  CROSS-EXAMINATION ...............52
    Questions by Mr. Christopher C. Myers
5  CROSS-EXAMINATION ...............54
    Questions by Mr. Adam G. Forrest
6
7      INDEX OF EXHIBITS
             Page
8  Deposition Exhibits:
9  Exhibit A  - Amended Notice of Rule ......6
    30(b)(6) Deposition
10
  Exhibit B  - Document Titled, "Notification . 10
11    of Sex and Violent Offender
    Registration Responsibilities and
12    Other Duties"
13  Exhibit C  - Document Titled, "Notification . 15
    of Requirement to Register as a
14    Sex or Violent Offender"
15  Exhibit D  - Document Titled, ........17
    "Classification Appeal"
16
  Exhibit E  - Release Authorization, Release . 21
17    Checklist, Memorandum Dated
    8/30/2012, Form from the Fort
18    Wayne Parole District (PD#2),
    Conditional Parole Release
19    Agreement, Letter by M. Zenk to
    Brown, Jeffrey, Notification of
20    Sex and Violent Offender
    Registration Responsibilities and
21    Other Duties, Parole Stipulations
    for Sex Offender, Sex or Violent
22    Offender Registration Form,
    Temporary Leave Agreement for a
23    Committed Offender, Form from the
    New Castle Correctional Facility
24    Classification Department, IDACS
    Form, Request for Bus Voucher,
25    Gateage Worksheet and Offender
    Trust System

**Page 4**

1      INDEX OF EXHIBITS
2             Page
3  Deposition Exhibits:
4
5  Exhibit F  - State of Indiana Sex or .... 40
    Violent Offender Registration
6    Form from Noble County Indiana
7  Exhibit G  - Email String .......... 42
8  Exhibit H  - Investigative Notes Report for . 44
    Jeffrey Scott Brown (364741)
9
  Exhibit I  - Letter Dated March 14, 2016 to . 50
10    Jeffrey S. Brown from Wanda
    Truelove
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Page 5**

1      (Time Noted 10:01 a.m.)

2      BRENT MYERS,

3  having been duly sworn to tell the truth, the whole

4  truth, and nothing but the truth relating to said

5  matter, was examined and testified as follows:

6

7  DIRECT EXAMINATION,

8    QUESTIONS BY MR. ROBERT T. KEEN, JR.:

9  Q  Please state your name.

10  A  It's Brent Myers.

11  Q  Your address?

12  A  Here at work?

13  Q  Your work address is fine.

14  A  Okay. 302 West Washington Street, Suite E-334,

15    Indianapolis, Indiana 46204.

16  Q  Where is it that you work?

17  A  The Indiana Department of Correction.

18  Q  You go by Brent?

19  A  Yes.

20  Q  So do you mind if I call you that?

21  A  Absolutely.

22  Q  I'm Bob Keen. I represent Noble County

23    Defendants in a lawsuit that Jeffrey Brown has

24    filed. We're here today to take your deposition

25    in connection with that case.

2 (Pages 2 - 5)

1    Have you ever given a deposition before?
2  A  I have.
3  Q  So you understand generally the ground rules
4     that -- Rhonda's the court reporter, and she
5     just swore you in?
6  A  Yes.
7  Q  And we're going to be asking you a series of
8     questions.  You need to answer all of those
9     questions with verbal responses so she can take
10    your testimony down accurately.
11 A  Yes.
12 Q  If you don't understand a question that I ask,
13    tell me, and I'll try and ask a clearer
14    question.
15 A  Yes.
16 Q  It's also helpful to Rhonda if we don't talk at
17    the same time.  So if you can be patient and let
18    me finish my entire question before you start
19    your answer, I'll give you that same courtesy.
20 A  Okay.
21    (Deposition Exhibit A marked for
22    identification.)
23 Q  We're here today pursuant to a 30(b)(6)
24    deposition notice, actually an amended notice.
25    I've marked as Defendant's Exhibit A.

1    Have you seen this document before?
2  A  I have.
3  Q  And have you been designated by the Indiana
4     Department of Corrections and the State of
5     Indiana to respond to questions on these various
6     topics?
7  A  Yes, I have.
8  Q  Are there any of the topics that you're not
9     prepared to answer questions concerning?
10 A  I believe I can answer questions for each of the
11    topics.
12 Q  All right.  Before we delve into the substantive
13    questions, maybe a little bit more background
14    about you.
15    What's your job with the Indiana Department
16    of Corrections?
17 A  I'm the Director of Registration and Victim
18    Services.
19 Q  What are your job duties and responsibilities in
20    that regard?
21 A  I receive the Department's efforts with sex and
22    violent offender registration, and I also
23    oversee the Department's efforts with victim
24    notification, victim services, and related types
25    of activities.

1    MR. KEEN:  We can go off the record.
2    (A discussion was held off the record.)
3  Q  Brent, how long have you held that position?
4  A  That position was probably back to 2008, 2009.
5  Q  Okay.  How many employees do you oversee in that
6     position?
7  A  Currently, with both state staff and contractual
8     folks, I believe it is 12.
9  Q  When you say "contractual folks," are you
10    talking about the private prison folks or
11    someone else?
12 A  No.  I'm talking the individuals that are in my
13    division that are from a group called knowledge
14    services that provides temporary support to the
15    state.
16 Q  I see.  What did you do before 2008?
17 A  I was with the Department of Correction, but it
18    was more in a research-oriented position.  Some
19    of that was still related to registration
20    activities, but it was a variety of things as
21    well.
22 Q  Okay.  How long have you been with the Indiana
23    Department of Corrections all together then?
24 A  Since 2005, late 2005.
25 Q  So as the director of registration, what are the

1     job duties and responsibilities of your
2     department day in day out, what do you do?
3  A  We make registration decisions for individuals
4     that are required to register, or that we
5     believe may have an obligation to register.  We
6     work with local sheriff's departments.  We work
7     with other justice professionals, and that could
8     be helping them with their understanding of
9     registration.  It could be making registration
10    decisions for them.  Ultimately, it's just
11    communicating about sex and violent offender
12    registrations here in Indiana.
13 Q  Does your department have the final say in
14    determining who is designated as someone who
15    needs to register under the sex offender's law?
16 A  We do.  We make that determination when
17    information is presented to us.
18 Q  And has that been true since 2008, 2009?
19 A  It has.
20 Q  This particular case involves a plaintiff by the
21    name of Jeffrey Brown who was an inmate with the
22    Indiana Department of Corrections at various
23    times over the last 25 years or so.  And the
24    notice of deposition indicates that there will
25    be questions concerning his particular status

3 (Pages 6 - 9)

1  with the Department of Corrections, and his
2  being designated as someone who needed to
3  register as a sex offender.
4      Have you looked into his particular file in
5  preparation for the deposition today?
6  A  Yes, I have.
7  Q  Were you involved in making the decision -- you
8  personally involved in making decisions, over
9  the last ten years or so, concerning Mr. Brown
10  and whether or not he had to register as a sex
11  offender?
12  A  I do not believe so.
13  Q  It would have been people working under you and
14  your staff; however?
15  A  Yes.
16      (Deposition Exhibit B marked for
17  identification.)
18  Q  I'm going to show you now what's been marked as
19  Defendant's Exhibit B, although that has an A on
20  it from another deposition but this is B.  Can
21  you identify what Exhibit B is?
22  A  This is a document that informs an individual
23  that he has an obligation to register.
24  Q  And this is a document in particular with regard
25  to Jeffrey Brown?

1  A  That is correct.
2  Q  Dated February 19, 2009?
3  A  Correct.
4  Q  And it's titled, "Notification of Sex and
5  Violent Offender Registration Responsibilities
6  and Other Duties;" correct?
7  A  Correct.
8  Q  Is this a form from the Indiana Department of
9  Corrections that existed in February of 2009?
10  A  I believe so, yes.
11  Q  Who completes this particular form within the
12  Indiana Department of Corrections?
13  A  This form I would suspect was likely -- well,
14  this form was filled out by the facility that
15  would have released Mr. Brown.
16  Q  And in this particular circumstance, I believe
17  that facility was the New Castle Correctional
18  Facility?
19  A  I believe so.
20  Q  At the top of the form, there's a list of
21  potential categories of sex offender A through
22  D, and there is -- only the box D is marked.  It
23  says, "How long is the offender required to
24  register," and it's marked for life, do you see
25  that?

1  A  Yes.
2  Q  Who makes that -- who made that determination in
3  February of 2009?
4  A  I can't specifically say what individual or what
5  entity made that decision.  My guess would be
6  that the facility actually made that decision.
7  Q  And explain to us, then, how the procedure
8  worked in 2009.  Was your department responsible
9  for initially making some determination as to
10  whether someone had to register as a sex
11  offender, or was that left up to employees with
12  the particular facility, correctional facility,
13  where the inmate was housed?
14  A  It was inconsistent.  There may have been people
15  that reached out to us and asked us questions
16  about a specific individual.  We may have had
17  more input on other individuals, whereas opposed
18  to individuals who we may have no input on
19  whatsoever.
20  Q  Okay.  Is the procedure in place today different
21  than it was in 2009?
22  A  Yes.
23  Q  How so?
24  A  Today, the procedure in place is we make all the
25  decisions.  We actually provide a document,

1  although not this document, a similar type of a
2  document that we actually send out to staff at
3  each of the facilities where an individual is
4  being released.  So they see our determination
5  information on the document that they would
6  actually then present to the individual to have
7  him or her sign.
8  Q  When did that procedure change?
9  A  Formally, I believe it changed in 2015.
10  Q  Informally?
11  A  Informally, probably in 2014, maybe even late
12  '13.
13  Q  Do you know why that procedure was changed at
14  that time?
15  A  We believed it was inconsistent, that it
16  wasn't -- we weren't getting consistent
17  decisions from facility to facility, and so we
18  wanted to make sure that it was one entity
19  making decisions as opposed to individual
20  facilities making decisions.
21  Q  Does that mean that you found at times that
22  inmates that should not have had to register
23  were being required to register?
24  A  There could have been those situations, but more
25  generally it was just simply that decisions were

4 (Pages 10 - 13)

1 being made by each of our facilities, and we
2 thought it made much more sense to have that
3 centralized with one individual or a group of
4 individuals.
5 Q On this exhibit, Defendant's Exhibit B, about
6 midway down the page, it references current
7 status, and it has boxes checked, parole and
8 probation. Back in 2009, who made those
9 determinations?
10 A The -- can you clarify that question for me?
11 Q Sure. This Exhibit B has this -- these boxes
12 midway down the page that say current status,
13 and there's a number of different boxes and this
14 one was checked parole and probation. I'm
15 trying to figure out if that's something that
16 someone at the New Castle Correctional Facility
17 determined, or were they informed that this is
18 the status of the inmate upon release?
19 A The form would have been filled out, again, by
20 someone at a facility. However, in a particular
21 case of parole or probation, that is really
22 defined under Indiana code. If someone receives
23 a split sentence, then they would have some kind
24 of a probation or a court supervision
25 obligation; whereas, if they don't have that

1 split sentence, they're going to be released to
2 parole.
3 Q So that information was somehow provided
4 apparently to someone with the correctional
5 facility in New Castle where Mr. Brown was
6 housed at the time?
7 A It could have been provided to them, or they
8 simply could have looked at Indiana code, and
9 the individual sentence, and his conviction to
10 make that determination.
11 (Deposition Exhibit C marked for
12 identification.)
13 Q Okay. I'm going to show you another document
14 marked as Defendant's Exhibit C. Can you tell
15 us what Exhibit C is?
16 A This is not, as far as I know, a document from
17 the Department of Correction. What it appears
18 to be is a document that -- or at least it's not
19 a document that I've seen from the Indiana
20 Department of Correction.
21 It appears to be a document -- it's
22 providing some instructions to Mr. Brown upon
23 what he's supposed to do with release from the
24 Department of Correction, it appears.
25 Q It's titled at the top, "Notification of

1 Requirement to Register as a Sex or Violent
2 Offender," do you see that?
3 A I do.
4 Q But you don't know whether this document was
5 generated at the correctional facility or some
6 other place?
7 A I do not.
8 Q This is -- is it a form you don't recognize?
9 A This form is not familiar to me.
10 Q As part of the discovery in this case, we
11 requested all documents with the Department of
12 Corrections that related to Jeffrey Brown, and
13 his registration as a sex offender, his status
14 in that regard. And we received a lot of
15 documents, but I believe the documents that
16 related to his release in 2009, were limited to
17 Exhibit B.
18 Did you do any -- as part of that, any
19 search to determine whether the Department had
20 any other records related to the determination
21 that he register as a sex offender at that time,
22 when he was released in 2009?
23 A I looked at the information that we have, and I
24 did find a copy of Exhibit B.
25 Q Any other related documents in your files that

1 you could locate at that time?
2 A There was a secondary notification, looking very
3 similar to this, from 2012.
4 Q Right. But I was talking about specifically for
5 the 2009.
6 A In the documents that I saw, or the information
7 that I reviewed, no.
8 (Deposition Exhibit D marked for
9 identification.)
10 Q Okay. Let me show you what's marked as
11 Exhibit D. If you could identify Defendant's
12 Exhibit D for us?
13 A This is a classification appeal through our
14 classification division in the Department of
15 Correction.
16 Q And this is -- well, it was initially dated
17 March the 12th of 2012; right?
18 A Well, it's signed -- I mean there's initials or
19 something at the top, and it's March maybe 15th,
20 2012, and there's a date at the bottom that's
21 June 18th, 2012.
22 Q But this is an appeal from Jeffrey Brown
23 regarding his classification as a sex offender;
24 correct?
25 A It appears to be the case, yes.

5 (Pages 14 - 17)

1  Q  And he submitted that -- or at least he signed
2     it on March the 12th, 2012, do you see that?
3  A  Yes.
4  Q  And it looks like it was directed to you; right?
5  A  It does have my name, yes.
6  Q  Tell us how this appeal process worked in 2012?
7     Just sort of walk us through that procedure.
8  A  Well, this is a classification appeal that's
9     handled actually by the classification division
10    of the Department of Correction, which is not
11    the same division as the sex and violent
12    offender registration, and victim services
13    division.
14        So my understanding is a classification
15    appeal would have been submitted, and someone
16    would have looked into this, and made a decision
17    on whether or not the appeal issue, whatever it
18    happened to be, was valid.
19 Q  So even though it was addressed to you, are you
20    saying that you would have forwarded it on to
21    someone else?
22 A  No.  What I'm actually saying is, I may have
23    never even seen a copy of this, because this is
24    a completely different division within the
25    Department of Correction.

1  Q  Do you know how Mr. Brown happened to get your
2     name?
3  A  My name was likely listed on our website, it's
4     probably available in every law library around
5     the state, for the Department of Correction, and
6     he probably got it from that perspective, or may
7     have asked staff.
8  Q  So, as far as you know, not only you but no one
9     else in your department would have actually
10    reviewed this classification appeal?
11 A  I do not recall reviewing this and seeing this,
12    but who actually did, I don't know.
13 Q  The particular appeal that Mr. Brown is making
14    at this time appears that it was his belief that
15    he should not have to register as a sex offender
16    for life, given his conviction; correct?
17 A  If I may, I want to read the paragraph here.
18 Q  Yeah, please do.
19 A  Yes.  So he is alleging that he didn't have to
20    register for life, it was only a 10-year
21    registration obligation.
22 Q  Down at the bottom of Exhibit D there's some
23    writing from someone else, not Mr. Brown, that
24    appears to be a response from his appeal.  Are
25    you able to read that person's writing?

1  A  I can make out some of that.
2  Q  Okay.  Do you know whose signature is at the
3     bottom?
4  A  I do not.
5  Q  It looks like it's a J. French.  Do you know
6     anyone by that name that works with the Indiana
7     Department of Corrections?
8  A  There's an individual that was at -- and may
9     still be at the New Castle Correctional
10    Facility, her name is Jennifer French.
11 Q  And it looks like a title -- it looks like AR
12    next to her name, do you know what that stands
13    for?
14 A  I do not.
15 Q  What was Jennifer French's job at the New Castle
16    Correctional Facility?
17 A  I believe she was a -- maybe a deputy
18    commissioner -- or not a -- I apologize.  She
19    dealt -- deputy superintendent, some of the --
20    that type of label.
21 Q  Does that mean she was an employee of GEO
22    Company that handles that facility?
23 A  I believe so.  She certainly worked for them,
24    and I believe she was an employee of that
25    company.

1  Q  And GEO is G-E-O, in caps.  It looks like she
2     wrote, "Registration is not a function of the
3     facility, so not a classification issue.  You
4     may petition the court," do you see that?
5  A  I do.
6  Q  Do you know what she's talking about there?
7  A  If I had to speculate, I would guess that she's
8     saying the individual could go back to court and
9     challenge his registration requirements, likely
10    under IC11-8-8-22.
11 Q  Okay.  As far as you were able to determine,
12    this appeal of Mr. Brown, after this response
13    was received from Ms. French, never made its way
14    back to your department from there?
15 A  Based on -- yes.  I have no reason to believe
16    that I had this, or I certainly didn't see this
17    when I prepared for the deposition.
18        (Deposition Exhibit E marked for
19        identification.)
20 Q  I'm going to hand you a packet of documents now
21    that I received -- I think they were all
22    received from the Indiana Department of
23    Corrections, and the state of Indiana in
24    response to my request.  So there's a number of
25    different documents I'm going to ask you about,

1 but I think they all relate to Mr. Brown's
2 release in September of 2012. So why don't you
3 take a minute to look through those.
4 A (Witness complies.)
5 Q This is marked as Exhibit E.
6 MR. MYERS: Hey, Bob, this is Chris, so can
7 we come to an understanding that when you get
8 back to Fort Wayne, can I just go ahead and go
9 to your office and get copies of all these
10 exhibits?
11 MR. KEEN: Yes, that will be fine.
12 Q Brent, have you had an opportunity to look at
13 all the packet of documents contained in
14 Defendant's Exhibit E?
15 A Yes, I have.
16 Q Have you seen these documents before?
17 A I have.
18 Q Let's go -- if we could go through maybe each
19 page in the order that they're shown here in
20 Exhibit E. What's -- the first page that says,
21 "Release authorization," what's that?
22 A My understanding of this document -- again these
23 documents do not come from my division. My
24 understanding is this is a document that
25 initiates the release authorization from the

1 Department of Correction, so the individual has
2 approached the end of their sentence and is
3 going to be released.
4 Q It does say, though, at the top right corner,
5 that it's an "Indiana Department of Corrections
6 Sentence Computation and Release" form; correct?
7 A Correct.
8 Q Does that mean that it's a form that is issued
9 by the Indiana Department of Corrections, even
10 though not from your particular department?
11 A Yes. It is a form used by -- in the management
12 and release process for offenders out of DOC.
13 Q And this is for Jeffrey Brown at the New Castle
14 Facility; correct?
15 A That is correct.
16 Q And it's dated December 6th, 2012. And there's
17 a person's name listed, Tonya, I don't know how
18 to pronounce her last name, but it's W-o-i-d-a,
19 Release Specialist 3, do you know who that is?
20 A I do.
21 Q Who is she?
22 A She is an individual that works, I believe still
23 does work, for the Department of Correction in
24 the classification and release division.
25 Q Would that be your division?

1 A No, that is not my division.
2 Q Okay. How is it different from your division?
3 What are their job duties and responsibilities
4 that -- how do they differ from what your
5 department does?
6 A The classification division handles all
7 classification types of issues, sentence
8 computation, earned credit, release types of
9 activities.
10 Q Okay.
11 A And they deal with not only sex offenders, but
12 all offenders from the Department of Correction.
13 Q So a more generalized department, then?
14 A That is correct.
15 Q In the middle of the first page there's -- it's
16 written, handwritten in there, "Lifetime
17 registry," do you see that?
18 A I do.
19 Q Do you know who wrote that?
20 A I would suspect Tonya wrote that, but I do not
21 know.
22 Q And what is your understanding of what that
23 meant?
24 A Other than simply what the words state, I have
25 no understanding other than that simply there's

1 a -- what appears to be a star, an asterisk,
2 where it says "lifetime registry."
3 Q Well, at the time, in September of 2012, were
4 there any kind of other registries besides the
5 sex offender registry that inmates would have to
6 register for when they were released?
7 A No, I believe it would be the sex and violent
8 offender register.
9 Q Does that suggest to you that Tonya made some
10 determination at some point, in September of
11 2012, that Mr. Brown was subject to the lifetime
12 regis -- sex registration requirements?
13 A Whether it was Tonya or somebody else, I would
14 say somebody made that decision, yes.
15 Q Do you know why that wasn't made through your
16 department, as opposed to her department?
17 A Again, I don't know if -- it's a different
18 function of the DOC. However, in 2012, with
19 Mr. Brown, we still would have said he was
20 required to register. We were acting on legal
21 advice that indicated that individuals had to go
22 back to court and get any registration
23 obligations removed by a court, before we would
24 apply those.
25 Q And that legal advice would have been through

7 (Pages 22 - 25)

1    the Indiana Attorney General's office?

2  A  In this case, it was.

3  Q  Was it specific to Mr. Brown, or was this the

4    general advice for all inmates that were, at

5    that time, subject to the lifetime registration

6    requirements?

7  A  It was specific advice as for the implementation

8    Wallace v. State.

9  Q  And explain to us what Wallace v. State was.

10  A  Wallace v. State was a case that came down I

11    believe April 30th, 2009, that questioned

12    whether or not sex and violent offender

13    registration could be enacted retroactively.

14  Q  And what did the court say?

15  A  The court said in -- our understanding was it

16    was an "as applied decision" to Richard Wallace,

17    and the court indicated because of his situation

18    of committing, being convicted of, and

19    completing his sentence, that he was no longer

20    obligated to register, he didn't have notice of

21    that obligation.

22  Q  But the -- it was the attorney's general's

23    advice, following that decision, to your

24    department that that decision only applied to

25    him; correct?

1  A  Yes.

2  Q  And that if -- if any other inmate believed they

3    shouldn't be subject to the lifetime

4    registration requirements, or the requirements

5    to register as a sex offender, that they

6    individually had to seek that determination from

7    a court?

8  A  That is correct.

9  Q  That was -- and that was the policy of the

10    Department of Corrections in 2012?

11  A  It was in 2011, 2012.  At some point it did

12    change, and we currently no longer operate under

13    that.

14  Q  Understood.  And I guess we'll get to that going

15    forward.  But this is -- the first page, this

16    release authorization, this is something that

17    would have been then sent to the New Castle

18    Correctional Facility where Mr. Brown was being

19    housed; right?

20  A  I am not so sure it would have been sent to

21    them.  My understanding -- and, again, this is a

22    different division in DOC, but my understanding

23    is these are documentation -- or documentation

24    that could have been sent, but it also could

25    have been documentation internally, just to make

1    sure all the I's were dotted and T's were

2    crossed.

3  Q  Let's turn to the second page of Exhibit E, and

4    it's entitled "A Release Checklist."  Are you

5    familiar with this form?

6  A  Yes.

7  Q  What's its purpose?

8  A  It's the same type of thing.  It's to assure

9    that all the different steps have been

10    completed, to make sure that we have a good

11    release as a department, for the individual.

12  Q  Okay.  And this is specific to Jeffrey Brown;

13    correct?

14  A  Yes.

15  Q  And it shows date at the top of September 8th,

16    2012, and then at the bottom it says September 5

17    of 2012, do you know why the dates don't match?

18  A  My guess -- I do not know definitively, but my

19    guess is -- again, this is a checklist to make

20    sure that all the steps have been completed, and

21    my guess is that it was initiated on

22    September 7th, and completed on -- well, I guess

23    that would have been backwards in time.  So I'm

24    not sure why there is a difference.

25  Q  Okay.  Is this a --

1      MR. MYERS:  Bob, EPRD at the top, Estimated

2    Parole Release Date.

3      MR. KEEN:  Oh, okay.  Thank you.

4      MR. FINDLEY:  So it's not --

5      MR. KEEN:  I get it.

6  Q  That's the date he was expected to be released

7    that I -- okay.

8  A  Yes, that is correct.

9  Q  That makes sense.

10    This checklist does indicate that Mr. Brown

11    was subject to the sex registration

12    requirements; correct?

13  A  It does have that checkmark, or that -- yes,

14    indicator.

15  Q  And at the bottom it has April Wilburn as

16    signing, and we know, from prior discovery in

17    this case, that she worked at the New Castle

18    Correctional Facility, is that your

19    understanding as well?

20  A  I believe so.

21  Q  Above it is a signature of a superintendent, do

22    you recognize that person's signature?

23  A  I believe that is a designee, and I believe that

24    name is Sarah Young.

25  Q  Does she work for GEO at the New Castle

1 Correctional Facility, or with the Indiana
2 Department of Corrections here?
3 A I believe she worked for GEO, and I don't
4 believe she works for either at this point.
5 Q All right. So the third page of Exhibit E says
6 "New Castle Correctional Facility Memorandum,"
7 and it does have an S. Young there, so that
8 seems to be consistent with the prior page;
9 correct?
10 A Yes.
11 Q All right. At the bottom it has an Indiana
12 Department of Corrections staff completing form
13 dated August 30 of 2012, do you know who signed
14 that?
15 A I do not. And, actually, the initial indicator
16 for the labeling of that is IDACS, so that's
17 Indiana Data Communication System Staff.
18 Q All right. Do we know what the purpose of going
19 through IDACS would be at that point?
20 A Before any individual is released from the
21 Department, we're looking for warrants,
22 detainers, holds, those types of activities.
23 Q All right. So that's why it shows clear,
24 meaning there weren't any active warrants for
25 Mr. Brown's arrest at that time?

1 A That would appear to be correct with us.
2 Q All right. The next page has "Fort Wayne Parole
3 District Information" there, is that simply to
4 notify Mr. Brown where he needs to report
5 pursuant to his parole?
6 A I believe so.
7 Q The next page, "Conditional Parole Release
8 Agreement," and, again, that has to do with his
9 parole requirements; correct?
10 A That is correct.
11 Q And that's signed by April Wilburn as well, on
12 September 5, 2012; right?
13 A That is correct.
14 Q All right. The next page is a GEO Group form.
15 Again, that has to do with his being notified of
16 his probation requirements; correct?
17 A That appears to be the case, yes.
18 Q Then the next form after -- the next page after
19 that is the "Notification of Sex and Violent
20 Offender Registration Responsibilities and Other
21 Duties." That's similar to what we saw with
22 Exhibit B; correct?
23 A That is correct.
24 Q And this is a form you did mention that you saw
25 before, when you prepared for the deposition;

1 right?
2 A That is correct.
3 Q Now, at the top of this particular form it
4 has -- in the Boxes A through D, it's checked
5 off that Mr. Brown has to register under 11-8-8,
6 and it's a lifetime requirement, do you see
7 that?
8 A Yes.
9 Q And then it has the rest of this information
10 signed at the bottom by April Wilburn. Is it
11 your understanding that all of the information
12 on this page would have been completed by
13 Ms. Wilburn as well?
14 A This form would have been filled out by
15 Ms. Wilburn, yes.
16 Q And do you know how she would have received
17 information that says that Mr. Brown had to
18 register as a sex offender for life?
19 A I do not know definitively. It could have been
20 that she made that decision on her own. It
21 could be that she reached out for information.
22 I do not know.
23 Q But it is true that back in September of 2012,
24 it was still a policy or position of the Indiana
25 Department of Corrections that this sex

1 registration requirement did apply to Mr. Brown?
2 A I believe, that's correct.
3 Q All right. So whatever information she got from
4 whatever source at that time, would have been in
5 compliance and in keeping with the standards and
6 the policy of the Indiana Department of
7 Corrections that placed that?
8 A I believe that is correct.
9 Q All right. It looks like the next three pages
10 have to do with Ms. Wilburn going over the
11 requirements for parole for sex offenders, and
12 making sure he reviewed all of those things;
13 correct?
14 A That is correct.
15 Q Then the -- so the third page, which actually is
16 Bates stamped State 137, has her signature at
17 the bottom, has Mr. Brown's signature at the
18 bottom, but it also has somebody else's
19 signature above theirs. It says, "Signature of
20 member of the Indiana Parole Board," do you see
21 that?
22 A I do.
23 Q Do you know that person's name that signed that?
24 A I believe it's Valerie Parker.
25 Q And it looks like it was signed on July 23rd of

1    2012; correct?
2  A  It's July 23rd, 2000 and something.
3  Q  Okay. What was Ms. Parker's position with the
4    Indiana Parole Board at that time, in 2012?
5  A  She was actually an appointed member of the
6    Indiana Parole Board.
7  Q  And in that capacity, what were her job duties
8    and responsibilities?
9  A  To my understanding, she made determinations in
10    partnership with her colleagues, to determine
11    parole stipulations and whether or not there
12    were violations and so forth with offenders that
13    were on parole.
14  Q  So would that board have been responsible for
15    determining that, as part of Mr. Brown's parole,
16    that he be subject to the sex registration
17    requirements?
18  A  If they enforced a stipulation that required sex
19    and violent offender registration, it would have
20    been their obligation to implement that
21    stipulation.
22  Q  So is it your understanding that Ms. Parker, in
23    conjunction with her work with the other members
24    of the board, would have come up with all the
25    requirements for Mr. Brown's parole, then, in

1    September of 2012, that are reflected in these
2    prior pages, because it says 1 through 25?
3  A  My understanding, by her signature, she's
4    acknowledging for the board that they support
5    those stipulations for that individual.
6  Q  Okay.
7  A  For Mr. Brown.
8  Q  All right. And that they're so notifying the
9    individual correctional facility of that as
10    well?
11  A  How that works between the facility and the
12    parole board, I do not know, but it certainly
13    indicates that the board acknowledged those
14    obligations.
15  Q  The next page of Exhibit E is entitled "Sex or
16    Violent Offender Registration form." This is an
17    Indiana Department of Corrections form as well;
18    right?
19  A  I believe this is actually a copy of a
20    registration form out of the registration tool,
21    so the offender watch application.
22  Q  What's the difference?
23  A  The offender watch application is the tool that
24    DOC and local sheriffs use to register sex and
25    violent offenders.

1  Q  Okay. And this has Mr. Brown's signature, as
2    well as April's signature at the bottom as well?
3  A  That is correct.
4  Q  The next page apparently just has to do with the
5    release information for Mr. Brown, and his
6    obligations; right?
7  A  Yes.
8  Q  It looks like the next page has to do with
9    transportation of Mr. Brown from the facility;
10    right?
11  A  Yes.
12  Q  Do you know what the next page is?
13  A  This appears to be a printout of IDACS or NCIC
14    information.
15  Q  So this was the search they did to make sure he
16    was clear of warrants?
17  A  That appears to be the case.
18  Q  All right. The next page has to do with the bus
19    voucher to get back from -- to Noble County;
20    correct?
21  A  Correct.
22  Q  And the next page has to do with getting money
23    for his bus fair and return of his commissary;
24    right?
25  A  Looks to be correct.

1  Q  All right. And what's the last page have to do
2    with?
3  A  This appears to be screen printouts showing the
4    offender trust account, which would relate back
5    to the previous document and the money that was
6    provided to him.
7  Q  Is it your understanding, Brent, that when an
8    individual is designated as someone who has to
9    register as a sex offender upon release from a
10    correctional facility, that they have to report
11    to the county sheriff where they're going to
12    reside as part of that registration requirement?
13  A  That is correct.
14  Q  And that this paperwork is forwarded to that
15    particular sheriff's department office so they
16    know that someone's coming for that purpose?
17  A  Can you clarify which paperwork?
18  Q  So is there some paperwork, then, that comes
19    from the Department of Corrections to the local
20    sheriff's department to notify the sheriff that
21    someone is going to register as a
22    sex offender to their particular county
23    facility?
24  A  There is, but that process has changed quite a
25    bit over the years as well.

10 (Pages 34 - 37)

1 Q Back in 2012, what was the procedure for that?
2 A There would have been certain documents that
3    would have been faxed to the local sheriff's
4    department indicating that an offender had a
5    registration obligation.
6 Q Okay. And then it was up to the sheriff's
7    department to do the paperwork, and gather the
8    information necessary for the person to comply
9    with that registration requirement?
10 A That is correct.
11 Q Back in 2012, was there any expectation by the
12    Indiana Department of Corrections that there
13    would be any kind of independent investigation
14    and evaluation, by the local sheriff's
15    department, to confirm or verify that the
16    individual was actually legally required to
17    register as a sex offender?
18 A Can you repeat that question?
19 Q Sure. Was there an expectation on the Indiana
20    Department of Corrections -- of the Indiana
21    Department of Corrections, in 2012, that the
22    local sheriff's department would be required to
23    do some sort of independent investigation to
24    verify that a particular inmate who had been --
25    or a particular individual that had been

1    designated as someone who had to register as a
2    sex offender, that that was actually true?
3 A There wasn't an expectation but, at the same
4    time, local sheriff's departments did do that.
5 Q What do you mean?
6 A There were local sheriff's department that took
7    the information that was provided to them, and
8    before they would actually register an
9    individual, they would actually review all the
10    documentation, collect their own individual
11    documentation, and make decisions themselves.
12 Q Okay. Was that something that the Indiana
13    Department of Corrections expected each of the
14    sheriff's department to do, or something that
15    they just chose to do on their own, some of
16    them?
17 A We did not expect, they chose to do it on their
18    own.
19 Q All right. Once the individual then like
20    Mr. Brown would come to the Noble County
21    Sheriff's Department and they sign up all the
22    paperwork for him at the sheriff's department,
23    was there a procedure, back in 2012, where any
24    of that paperwork would then come back to the
25    Department of Correction showing that he

1    complied with the registration requirements?
2 A No. The only confirmation we would have had,
3    would have been to look in the actual offender
4    watch application.
5 Q Mr. Brown was incarcerated then after 2012, for
6    a period of time, and released again in 2015.
7    Did you find any particular paperwork related to
8    his release from the Indiana Department of
9    Corrections in 2015?
10 A The information I reviewed I did not, but I
11    don't -- if I remember correctly, he was
12    actually released from DOC in 2012, and he was
13    on parole from roughly 2012 to 2015, and I
14    believe he was discharged at that time, if I
15    remember correctly.
16    (Deposition Exhibit F marked for
17    identification.)
18 Q Let me show you this, I guess. Let me show you
19    what's marked as Exhibit F. This is a packet of
20    documents from Noble County, so you may or may
21    not have seen it before, but if you'd take a
22    look at it.
23 A (Witness complies.)
24 Q Have you seen the documents -- this packet of
25    documents as Exhibit F?

1 A Yes.
2 Q And what is it?
3 A This appears to be a registration form
4    that -- my guess is that maybe Mr. Brown may
5    have completed himself, or someone did on his
6    behalf, at the local sheriff's department, in
7    this case the Noble County Sheriff's Department.
8 Q And it looks like on the last page it has a date
9    of May the 20th of 2015, do you see that?
10 A That is correct.
11 Q And it says next registration date May 20th of
12    2016. So is it your understanding that this
13    form would just reflect that there's an annual
14    reregistration requirement?
15 A Based on that date, yes. There should be some
16    other information in this document that would
17    reflect that as well, but it appears he was told
18    he needed to report within one year for his next
19    registration date.
20 Q I see. So as part of the sex registration
21    requirements under the statute, you have -- if
22    an inmate is subject to that particular
23    registration requirement, it's -- an annual
24    update kind of thing has to be done?
25 A Yes. Individuals have a couple of different

1  models. You can be required to report every 90
2  days, if you fall under certain statuses. In
3  this particular case, he was required to report
4  once per year to the local sheriff, and they
5  would have had to validate his address once per
6  year as well.
7        (Deposition Exhibit G marked for
8  identification.)
9  Q  Okay. Let me show you what's marked as
10  Exhibit G. Now, this is a two-page document
11  that actually came from the Noble County
12  Sheriff's Department, but it references
13  communications with the Indiana Department of
14  Corrections. Do you know what this is?
15  A  Yes.
16  Q  What is this?
17  A  This is a communication between Laura
18  Kloimwieder and Shawn Dunafin about Mr. Brown's
19  registration obligations?
20  Q  Who is Laura?
21  A  Laura Kloimwieder was an individual that was on
22  contract with the Department during this time up
23  and through sometime, I believe, in 2016, and
24  she would make registration determinations. She
25  was actually a licensed attorney here in Indiana

1  as well.
2  Q  Did she work in your department?
3  A  She did.
4  Q  And this email exchange is dated, what, March
5  3rd from -- March the 3rd, and March the
6  8th, it looks like?
7  A  That is correct.
8  Q  Shawn Dunafin was an officer with the Noble
9  County Sheriff's Department at that time; is
10  that your understanding?
11  A  That is my understanding.
12  Q  And what information was Laura providing at that
13  point to Officer Dunafin?
14  A  The Noble County Sheriff's Department had
15  reached out to us and asked us to make a
16  determination on Mr. Brown, and Laura happened
17  to be that individual that made that
18  determination.
19  Q  In this email exchange, it says that she's
20  providing two notices, do you know what she's
21  talking about?
22  A  Yes. Those are the two registration notices we
23  discussed earlier.
24  Q  Okay. The one from 2009, and the one from 2012?
25  A  That is correct.

1        (Deposition Exhibit H marked for
2  identification.)
3  Q  This is Exhibit H. This also came from the
4  Noble County Sheriff's Department as two pages.
5  It's titled at the top, "Investigative Notes,
6  report for Jeffrey Scott Brown." Have you seen
7  this before?
8  A  I have.
9  Q  And this also apparently is from Laura?
10  A  There is an entry by Laura on here but the other
11  entries are not by Laura, they're from either
12  from the system or individuals.
13  Q  All right.
14  A  And if I could ask a clarification point?
15  Q  Yeah, I think -- it's the same page. It looks
16  like I copied twice.
17  A  Okay, that answered my question.
18  Q  So it's really just the same -- Exhibit H is two
19  pages of the same thing. My apologies. My
20  secretary must have -- I will blame my secretary
21  for that. She's not here to defend herself.
22        So looking at the first of the same two
23  pages, there's an investigative note dated March
24  14 of 2016, from Laura, do you see that?
25  A  Yes.

1  Q  Is this something that just goes in your
2  internal computer system?
3  A  No, this is actually a screen shot or a copy of
4  a document from the offender watch application
5  that's used for sex and violent offender
6  registration.
7  Q  And what is that offender watch, what does --
8  where does that go?
9  A  It's a shared system between DOC and local
10  sheriffs. So this is just simply a document
11  that is ordered -- better yet, it's a tracking
12  listing that's connected to Mr. Brown.
13  Q  Okay. So if a local law enforcement agency
14  would stop a particular individual, could they
15  look this up and determine whether or not
16  they're required to register?
17  A  It would depend on the department. Some
18  departments may have access, they're -- street
19  officers may have access to the registries,
20  others likely do not.
21  Q  All right. So what is it that Laura is noting
22  at the top of this Exhibit H?
23  A  She's noting that a review was completed, and it
24  was found that the individual in this case,
25  Jeffrey Brown, did not have an obligation to

12 (Pages 42 - 45)

1    register.
2  Q  Okay. Do you know why she conducted that review
3       in March of 2016?
4  A  Yes. It's the previous exhibit, Shawn Dunafin
5       had reached out to our office to request the
6       review.
7  Q  And do you know on what basis she determined
8       that Mr. Brown was not required to register as a
9       sex offender?
10 A  His two crimes that could be sex or
11      violent offender related, which were criminal
12      confinement and sexual battery. Criminal
13      confinement was committed against an adult, and
14      sexual battery was also committed against an
15      adult, and that offense was added to the
16      registration listing after he committed that
17      crime. So, therefore, it was not noticed.
18 Q  And does that go back to the court decision that
19      we discussed previously?
20 A  It does.
21 Q  And you said at some point that the policy of
22      the Department of Corrections changed in regard
23      to whether or not the registration requirement
24      would -- necessitated some kind of individual
25      application to a court; do you remember that

1       discussion we had?
2  A  Yes.
3  Q  And can you explain what changed, how the policy
4       changed, and we'll talk about when?
5  A  Sure. So when the case Wallace v. State
6       initially came down, there was a lot of
7       confusion on how to implement that decision, and
8       we were provided advice that it was an "as
9       applied decision," and so it applied to Richard
10      Wallace at that time.
11          We were advised by the AG's office that
12      when we were making our determinations, that
13      offenders actually had to go back to court and
14      get an order specific to them to be removed from
15      the registry.
16          At some later point, and I don't have
17      specific dates, we actually changed that
18      process, based on some advice from our own
19      internal counsel, and we started proactively
20      looking at individuals to see when their crimes
21      were committed and whether or not they were on
22      notice for those crimes.
23          And as a result of that, we would
24      proactively indicate either they didn't have an
25      obligation to register or they no longer had an

1       obligation to register.
2  Q  Do you know when that changed, that policy
3       changed?
4  A  I do not know.
5  Q  And when you say the department would start
6       looking at individual offenders or inmates, did
7       you have some sort of list of individuals that
8       fall into that -- that had been a gray area that
9       you looked at?
10 A  List of individuals? No.
11 Q  So how was it that you looked at it, your
12      department looked at it, to see whether or not
13      someone who had previously been notified they
14      had to register as a sex offender, that they no
15      longer had to do so?
16 A  When either an individual was getting out of the
17      Department of Correction, or if a request came
18      to us, or if there happened to be litigation, so
19      we would look -- and probably examples as well,
20      but we would look at cases and individuals at
21      that time, and we would make a determination
22      based on our understanding at that point; when
23      the individual committed their crime, what case
24      law was in place at that time, what Indiana code
25      was in place, and we would make that decision.

1  Q  Prior to March of 2016, did the Department of
2       Corrections have some sort of database in its
3       system that actually listed each person who was
4       subject to the sex registration requirements?
5  A  Yes.
6  Q  And then was that broken down in a way that you
7       could look at that database and determine
8       whether or not the requirement for registration
9       was based upon convictions that occurred before
10      the law was changed?
11 A  No.
12 Q  So in order to do that, you had to go back into
13      the record of each individual inmate?
14 A  Absolutely.
15 Q  And as I understand your testimony, that was
16      only done when inmates were then being released
17      at a particular time from prison; right?
18 A  That is part of it.
19 Q  Or if someone requested that there be an
20      investigation; correct?
21 A  Yes.
22 Q  Or if some litigation prompted it?
23 A  Yes.
24 Q  Any other reasons there would be some
25      investigation to determine whether the

13 (Pages 46 - 49)

1    registration requirements were -- should be in
2    place?
3    A   Outside of those three, it could have just
4    simply been that we just stumbled across the
5    record, and conducted a review ourselves.
6    Q   All right.
7        (Deposition Exhibit I marked for
8    identification.)
9    Q   If you look at Exhibit I. Have you seen this
10   document before?
11   A   I do not believe so.
12   Q   It appears simply to be a notification from
13   Wanda Truelove, who works and worked for the
14   Noble County Sheriff's Department, to Mr. Brown,
15   that he had been removed from the registration
16   requirements pursuant to the determination of
17   the Indiana Department of Corrections, do you
18   see that?
19   A   Yes.
20   Q   Okay. So is it your understanding, Brent, that
21   the reason that the determination -- the reason
22   that there wasn't a prior determination before
23   March of 2016, that -- of whether or not
24   Mr. Brown was required to register as a sex
25   offender, was simply because he didn't fall into

1    one of those three categories you just
2    described?
3    A   Yes. We were, in addition, given advice that we
4    didn't have to go back and look at all the
5    individuals that potentially could fall under a
6    previous court decision, and so we did it going
7    forward when individuals either brought the
8    issue to us, or there was litigation, or it
9    would be a new release, something to indicate
10   that a review should be done.
11   Q   That was other legal advice you're describing
12   that you received?
13   A   Yes.
14   Q   So based upon your review of Jeffrey Brown's
15   individual case, and the decisions that were
16   made in 2009 and 2012, that he had to register
17   as a sex offender, that those determinations in
18   2009 and 2012 were correct in keeping with what
19   was then the policy that the Indiana Department
20   of Corrections had in place?
21   A   Correct.
22   Q   So it wasn't as if it was a mistake of the
23   procedures, or the application of the procedures
24   on those two dates, those were proper
25   determinations as far as your department

1    believed should be applied to him?
2    A   Yes.
3    Q   And from 2012 until 2016, the only reason he
4    continued to remain under the registration
5    requirements was because his case never came up
6    for review; is that fair?
7    A   Correct.
8    Q   Okay. And before March of 2016, the Indiana
9    Department of Corrections never notified anyone
10   with the Noble County Sheriff's Department that
11   those registration requirements no longer
12   applied to Mr. Brown?
13   A   Not to my understanding.
14       MR. KEEN: Brent, those are all the
15   questions I have for you today. Thank you so
16   much.
17       MR. FINDLEY: Chris, you want to go next?
18       MR. MYERS: Yeah, I have a couple of
19   questions.
20
21   CROSS-EXAMINATION,
22       QUESTIONS BY MR. CHRISTOPHER C. MYERS:
23   Q   So, Mr. Myers, did you ever make a determination
24   that the state or the IDOC's belief that
25   Mr. Brown had to register -- did you ever make

1    the determination that that belief was improper?
2    A   I don't think I understand what you mean by
3    improper.
4    Q   Improper in this context would mean that the
5    state's belief, at least in the end, was
6    determined to be a wrong belief, that is that
7    even back in 2012, Mr. Brown should not have had
8    to register as a sex offender for life?
9    A   Based on the advice we received, no. I still
10   believe that's correct.
11   Q   So you think that he correctly had to register
12   back in 2012?
13   A   Based on the advice that we received from
14   counsel, that was our approach. And at this
15   point I don't see why there would be any
16   difference to that. Certainly, Wallace v. State
17   came down before that date, but the advice we
18   received was it was an "as applied decision,"
19   and I don't think that has changed.
20   Q   Okay. So I think you've answered my question,
21   that is that the Wallace v. State decision was
22   made prior to 2012; correct?
23   A   That is correct.
24   Q   All right. And so the law was out there,
25   depending upon how you wanted to review it and

14 (Pages 50 - 53)

1 apply it. In the end, it was the Wallace v.
2 State decision, as applied to Mr. Brown,
3 basically caused the state to believe that he
4 did not have to register as a sex offender;
5 correct?
6 A We certainly made the decision with that case in
7 mind. But ultimately, the decision resulted
8 from new legal advice to us, that we should
9 proactively review cases, and it's all tied in
10 with another case called Shepherd v. IDOC, where
11 we created an administrative review process.
12 So as a result of the administrative review
13 process, Wallace, and new advice, at some point,
14 you know, in that period of time, we received
15 advice to proactively go ahead and remove
16 individuals and not wait for a court order to do
17 that.
18 MR. MYERS: I have no further questions.
19
20 CROSS-EXAMINATION,
21 QUESTIONS BY MR. ADAM G. FORREST:
22 Q My name is Adam Forrest. I represent
23 April Wilburn in these proceedings. Based on
24 the information that you just provided to us
25 about the IDOC's position as to how Wallace

1 applied to offenders like Mr. Brown, do you
2 think Ms. Wilburn had any authority to act in a
3 manner other than she did, as evidenced by these
4 documents?
5 A I think what she did was consistent with the
6 Department of Corrections' approach at that
7 time.
8 MR. FORREST: Thank you, that's the only
9 question I have. Bob?
10 MR. MYERS: Nothing further from me.
11 MR. FINDLEY: I'm good.
12 MR. KEEN: Chris, anything else?
13 MR. MYERS: Nothing.
14 MR. KEEN: I think we're done. I will make
15 sure you have a copy of the exhibits in a couple
16 days when I get back in the office.
17 MR. MYERS: Thank you.
18 MR. KEEN: Thanks so much, I'm going to
19 hang up then.
20 (Time Noted 11:03 a.m.)
21 AND FURTHER THE DEPONENT SAITH NOT.
22
23
24
25
_____
BRENT MYERS

1 STATE OF INDIANA        )
                         ) SS:
2 COUNTY OF HENDRICKS      )
3      I, Rhonda J. Hobbs, RPR, a Notary
4 Public in and for the County of Hendricks, State
5 of Indiana at large, do hereby certify that
6 BRENT MYERS, the deponent herein, was by me
7 first duly sworn to tell the truth, the whole
8 truth, and nothing but the truth in the
9 aforementioned matter;
10      That the foregoing deposition was
11 taken on behalf of the Defendants, at the
12 offices of Office of the Attorney General,
13 Government Center South - 5th Floor, 302 West
14 Washington Street, Indianapolis, Marion County,
15 Indiana, on the 16th day of December, 2019,
16 commencing at the hour of 10:01 a.m., pursuant
17 to the Indiana Rules of Trial Procedure;
18      That said deposition was taken down
19 stenographically and transcribed under my
20 direction, and that the typewritten transcript
21 is a true record of the testimony given by the
22 said deponent; and thereafter presented to said
23 deponent for his/her signature;
24      That the parties were represented by
25 their counsel as aforementioned.

1      I do further certify that I am a
2 disinterested person in this cause of action;
3 that I am not a relative or attorney of either
4 party, or otherwise interested in the event of
5 this action, and am not in the employ of the
6 attorneys for any party.
7      IN WITNESS WHEREOF, I have hereunto
8 set my hand and affixed my notarial seal this
9 9th day of January, 2020.
10
11
12 Rhonda Hobbs
   N O T A R Y   P U B L I C
13
14
15 My Commission Expires:
   August 24, 2025
16 County of Residence:
   Hendricks
17
18
19
20
21
22
23
24
25

15 (Pages 54 - 57)

1  Bryan R. Findley, Esq.
2  bryan.findley@atg.in.gov
3        January 9, 2020
4  RE:  Brown, Jeffrey v. Hartman, Kyle et al.
5  12/16/2019, Brent Myers (#3610902)
6     The above-referenced transcript is available for
7  review.
8     Within the applicable timeframe, the witness should
9  read the testimony to verify its accuracy. If there are
10  any changes, the witness should note those with the
11  reason, on the attached Errata Sheet.
12     The witness should sign the Acknowledgment of
13  Deponent and Errata and return to the deposing attorney.
14  Copies should be sent to all counsel, and to Veritext at
15  erratas-cs@veritext.com
16
17  Return completed errata within 30 days from
18  receipt of testimony.
19   If the witness fails to do so within the time
20  allotted, the transcript may be used as if signed.
21
22        Yours,
23        Veritext Legal Solutions
24
25

1  Brown, Jeffrey v. Hartman, Kyle et al.
2  Brent Myers (#3610902)
3        ACKNOWLEDGEMENT OF DEPONENT
4     I, Brent Myers, do hereby declare that I
5  have read the foregoing transcript, I have made any
6  corrections, additions, or changes I deemed necessary as
7  noted above to be appended hereto, and that the same is
8  a true, correct and complete transcript of the testimony
9  given by me.
10
11  _____    _____
12  Brent Myers            Date
13  *If notary is required
14     SUBSCRIBED AND SWORN TO BEFORE ME THIS
15  _____ DAY OF _____, 20___.
16
17
18     _____
19  NOTARY PUBLIC
20
21
22
23
24
25

1  Brown, Jeffrey v. Hartman, Kyle et al.
2  Brent Myers (#3610902)
3     E R R A T A  S H E E T
4  PAGE_____ LINE_____ CHANGE_____
5  _____
6  REASON_____
7  PAGE_____ LINE_____ CHANGE_____
8  _____
9  REASON_____
10  PAGE_____ LINE_____ CHANGE_____
11  _____
12  REASON_____
13  PAGE_____ LINE_____ CHANGE_____
14  _____
15  REASON_____
16  PAGE_____ LINE_____ CHANGE_____
17  _____
18  REASON_____
19  PAGE_____ LINE_____ CHANGE_____
20  _____
21  REASON_____
22
23  _____    _____
24  Brent Myers            Date
25




# RELEASE AUTHORIZATION

State Form

Indiana Department of Correction
Sentence Computation and Release

| Offender Name | DOC# | EPRD | Facility |
|---|---|---|---|
| JEFFREY S. BROWN | #956175 | *9-8-2012 | *NCF |

| Name of Authorizing Release Specialist | Date Final Review Completed |
|---|---|
| TONYA WOIDA, RELEASE SPECIALIST 3 | * 9-6-2012 |

**Comments**

*

IK LIFETIME REGISTRY

| Parole District (If Applicable) | County of Probation (If Applicable) | CTP (If Applicable) | TOT Authority (If Applicable) |
|---|---|---|---|
| *PD2 | *N/A | *N/A | *N/A |

| Actual date the Offender is Released from the Facility |
|---|
| *9-6-2012 |

| Signature | Date Authorized |
|---|---|
| *Woida* | * 9-6-2012 |

Exhibit No.: E
Deponent: BM
Date/RPR: 12-16-14
CONNOR REPORTING



# RELEASE CHECKLIST
Indiana Department of Correction

| OFFENDER NAME | DOC # | EPRD |
|---|---|---|
| Brown, Jeffrey | 956175 | 9/8/12 |

| | |
|---|---|
| TYPE OF RELEASE | ☒ Parole ☐ Probation ☐ Dual Supervision ☐ Discharge ☐ CTP |
| PAROLE PLACEMENT APPROVED | ☒ YES ☐ NO ☐ N/A  DATE: 7-19-12 |
| PAROLE DISTRICT (If Applicable) | ☐ N/A ☒ PAROLE DISTRICT: PD #2 |
| REPORTING INSTRUCTIONS | ☒ COMPLETED ☐ NOT COMPLETED |
| PROBATION PLACEMENT ENTERED | ☐ YES ☐ NO ☒ N/A |
| PROBATION COUNTY (If Applicable) | ☒ N/A ☐ COUNTY OF SUPERVISION: |
| TOT WANTING AUTHORITY | ☐ YES ☒ NO  IF YES, NAME OF AUTHORITY: |
| FINAL DISCHARGE COMPLETED | ☐ YES ☒ NO |
| V/N NOTIFICATIONS COMPLETE | ☐ YES ☐ NO ☒ N/A |
| SEX OFFENDER | ☒ YES ☐ NO |
| VIOLENT OFFENDER | ☐ YES ☒ NO |
| SEX/VIOLENT OFFENDER PAPERS | ☒ COMPLETED ☐ NOT COMPLETED ☐ N/A |
| IN REGISTRY (If Sex/Violent Offender) | ☒ YES ☐ NO ☐ N/A |
| IDACS CHECK COMPLETED BY | Print Name of Person Completing IDACS Check  Heady |
| RESULTS OF IDACS CHECK | ☒ CLEAR ☐ NOT CLEAR |
| RESOLUTION OF IDACS HITS | N/A |
| WARRANTS/DETAINERS | ☒ RESOLVED ☐ NOT RESOLVED |
| LIST ANY UNRESOLVED WARRANTS/DETAINERS | N/A |
| ADDITIONAL COMMENTS | |

## APPROVAL

| | Date |
|---|---|
| Signature of Superintendent/Designee  *S. Mims* | 9/25/12 |
| Signature of Master Location Officer  *April Wilburn    Heady* | 9-5-12 |

State 000129

New Castle Correctional Facility

Memorandum

To:       IDAC's

From:     S. Young

Date:     8/30/2012

RE:       IDAC's Check

PLEASE COMPLETE THIS FORM AND RETURN AS SOON AS POSSIBLE.

Offender Name: Brown, Jeffrey    DOC#: 956175    PRD: 09 08 2012

DOB: 04 10 1964    SSN: _____

WARRANTS/DETAINERS/IDAC'S REVIEWED/CLEARED:

| | CLEAR | NOT CLEAR |
|---|---|---|
| IDAC'S Reviewed | | |
| IDAC'S Clear | ✓ | |

IDAC's Staff Completing Form: _____    Date: 8/30/12

# FORT WAYNE PAROLE DISTRICT
## (PD#2)

BROWN, Jeffrey    956175

**ADDRESS:**
Robert Brown
1241 E. Hwy 6
Brimfield, IN 46794

**REPORTING INSTRUCTIONS:**

Within 24hrs of release subject is to contact SPA HARTMAN at 260-341-9978 (cell).

Fort Wayne Parole Office #2
3111 Coliseum Blvd
Fort Wayne, IN 46805
260-484-3048

_____
Offender Signature

_____
9-5-12
Date

Central Office
Parole Office
Packet
Offender

State 000131



# CONDITIONAL PAROLE RELEASE AGREEMENT
State Form 23R

## CONDITIONAL PAROLE REGULATIONS

I do hereby agree to abide by the following terms and conditions of parole as established by the Department of Correction and promulgated by the Indiana Parole Board pursuant to IC 11-9-1-2; IC 11-13-3-4; IC 35-50-6-1.

1. **INITIAL REPORTING** - Upon my release from the institution I agree to proceed directly to the program approved by the division of parole and report to my assigned supervising officer in accordance with the written instructions provided for me at the time of my release.

2. **EMPLOYMENT AND RESIDENCE** - I will make every effort to remain gainfully employed and I understand that I must obtain written permission from my supervising officer prior to changing my employment or residence.

3. **TRAVEL** - a) I understand that out-of-state travel will require written permission from the Division of Parole and be in accordance with the provisions of the Interstate Compact Agreement. Permission for such travel may be obtained after consultation with and receiving written permission from my supervising officer.
   b) I agree to consult with my supervising officer if personal needs or employment require frequent or prolonged periods beyond the parole district or area to which I am released.

4. **OWNING, LEASING, AND OPERATING MOTOR VEHICLES**
   a) I will obtain from my supervising officer written permission from the Division before applying for or renewing a license to operate a motor vehicle.
   b) I agree to consult with my supervising officer and receive his written permission prior to purchasing or leasing a motor vehicle. Permission to own, lease, or operate a motor vehicle is granted with the understanding that I shall comply with all state laws, local ordinances, and regulations of the Bureau of Motor Vehicles pertaining to ownership, financial responsibility, and the operation of motor vehicles.

5. **ABUSE OF ALCOHOL OR CONTROLLED SUBSTANCE** - I understand that the following is a violation of my parole:
   a) Being intoxicated, or
   b) Using, possessing, or trafficking illegally in a controlled substance. Abuse of alcohol or drugs is not a defense for violation of the parole release agreement.

6. **VISITING JAILS OR CORRECTIONAL INSTITUTIONS** - Visiting jails, city lock-ups, or state or federal correctional facilities is permitted only after first obtaining written permission of the parole's supervising officer and of the chief administrative officer of the jail, city lock-up, or state or federal correctional facility to be visited. Such visits shall be limited to visiting those who are blood relatives or spouses, unless the supervising officer determines otherwise on a showing by me of a compelling reason.

7. **CRIMINAL CONDUCT** - I will not engage in conduct prohibited by federal or state law or local ordinance.

8. **FIREARMS AND DANGEROUS WEAPONS** - I understand that carrying, dealing in, or possessing firearms, explosive devices or deadly weapons is a violation of my parole release agreement.

9. **HOME VISITATION AND SEARCH** -
   a) I will allow my supervising officer or other authorized officials of the Department of Correction to visit my residence and place of employment at any reasonable time.
   b) I understand that I am legally in the custody of the Department of Correction and that my person and residence or property under my control may be subject to reasonable search by my supervising officer or authorized official of the Department of Correction if the officer or official has reasonable cause to believe that the parolee is violating or is in imminent danger of violating a condition to remaining on parole.

10. **COMMUNICATION AND SPECIAL INSTRUCTIONS** - I agree to report to my supervising officer as instructed and to respond to any and all communications from any authorized employee of the Department of Correction. I will abide by any special conditions imposed by the Indiana Parole Board which have been reduced to writing and included as a condition of my parole.

## SPECIAL CONDITIONS

I understand that any acts of omissions in violation of the terms and conditions of my parole will subject me to being taken into immediate custody by the Indiana Parole Board and initiation of proceedings for revocation of my parole.

I hereby certify that the above statement of parole rules, regulations and conditions of parole has been read and explained to me by the following institutional Agent or Parole Officer, *April Wilburn* , and I agree and consent to these rules and regulations as evidenced by my signature this ___5___ day of __September__ , 20 _12_ .

| CONDITIONAL PAROLE AUTHORIZATION | | |
|---|---|---|
| Name *Brown, Jeffrey* | Number *956175* | Institution *NC6* |
| Witnessed: Institutional Agent or Parole Officer *April Wilburn* | Signature of Offender *Jeff Brown* | |
| Released by Parole Board pursuant to IC 11-13-3-3; IC 35-50-6-1 per | | |
| Chairman's Signature | Date Signed | Release Date |
| Released Per IC 35-50-6-1 | | |
| Institutional Agent *April Wilburn* | Date Signed *9-5-12* | Maximum Expiration of Sentence Date *8-28-16* |

DISTRIBUTION : White - Institution, Canary - Central Office, Pink - Parole Officer, Goldenrod - Parolee



**The GEO Group, Inc.**
New Castle Correctional Facility
1000 Van Nuys Rd, P.O. Box E
New Castle, IN 47362
Main Tel: 765 593 0111
Main Fax: 765-593-6770
www.thegeogroupinc.com

NAME:     BROWN, Jeffrey
DOC#:     956175
CAUSE#:   57C01 9405 CF 022

On July 26, 1995, you were sentenced by the Noble County Circuit Court on the above cause number. You were sentenced to 6 years with 3 years suspended. You will be supervised by the Noble County Probation Department.

You are to report, in person, the next working day, to the Noble County Probation Department after your release from the New Castle Correctional Facility. Your release date from the New Castle Correctional Facility is Thursday, Sept 6, 2012.

Stacey Beam
Chief Probation Officer
Noble County Probation
101 North Orange, Street, Room 100
Albion, IN 46701-1049
260-636-3116

Sincerely,

M. Zenk, Superintendent
New Castle GEO Correctional Facility

I acknowledge receipt of this letter and understand these reporting instructions.

_____
Offender's Signature

9-5-12
_____
Date

_____
Witnessed by:

cc:    Chief Probation Officer
      Central Office
      Packet
      Offender

# Notification of Sex and Violent Offender Registration Responsibilities and Other Duties

State Form 46656 (R11 / 7-08)

*This agency is requesting the disclosure of your Social Security Number in accordance with IC 11-8-8. Disclosure is mandatory; this record cannot be processed without it.

**Full Name of Offender** *(first, middle, last, and suffix)*

Jeffrey S. Brown

| | Please check one item in each row | | |
|---|---|---|---|
| | | Yes | No |
| A | Is the offender required to register under IC 11-8-8? | ☑ | ☐ |
| | | Yes | No |
| B | Is the offender a sexually violent predator under IC 35-38-1-7.5 | ☐ | ☑ |
| | | Yes / No / NA |
| C | Is the offender an offender against children under IC 35-42-4-11? | ☐ ☐ ☐ |
| | | 10 Years / Life / Other |
| D | How long is the offender required to register under IC 11-8-8? | ☐ ☑ ☐ |

| DOC Number (if applicable) 956175 | Did the offender successfully complete the Indiana Department of Correction's Sex and Violent Offender Registration Course? | Yes ☐ | Enter Date Completed |
|---|---|---|---|

| Social Security Number | Date of Birth 4/10/64 | FBI Number 920 119 PA6 |
|---|---|---|

| Cause # 43D01 9608 CF 227 | IC Code (or out-of-state code) 35-42-4-8 | Felony Level FD6 |
|---|---|---|

| Current Status | Parole ☑ | Probation ☑ | CC/CTP ☐ | Discharged ☐ | Other ☐ |
|---|---|---|---|---|---|

| Release Date (walkout date) 9/6/12 | Next Registration Date 72 Hours |
|---|---|

## Registered Address

| Residence Robert Brown | Street Address 1241 E. Hwy 6 | City Brimfield | State IN | Zip Code 46794 |
|---|---|---|---|---|
| Work | Street Address | City | State | Zip Code |
| School | Street Address | City | State | Zip Code |

I have read or have had read to me the information contained in "Sex and Violent Offender Registration Responsibilities and Other Duties". By my signature, I acknowledge that I have received a copy of this information and that I understand my registration duties and obligations under IC 11-8-8, IC 35-42-4, and other corresponding Indiana Statutes.

| Signature of offender *Jeff* | Printed name of offender | DOC number | Date (month, day, year) |
|---|---|---|---|

I hereby certify that the above offender was orally informed and provided a copy of the information contained in "Sex and Violent Offender Registration Responsibilities and Other Duties".

| Signature of witness *Wilburn* | Printed name of witness April Wilburn | Title Re-entry Spec | Date (month, day, year) 9-5-12 |
|---|---|---|---|

State 000134



**PAROLE STIPULATIONS FOR SEX OFFENDERS**
State Form 49106 (R / 7-07)
INDIANA PAROLE BOARD

| Name of offender | Department of Correction number |
|---|---|
| Brown, Jeffrey | 956175   NCF |

**DEFINITIONS:**
- Child or children is / are any person or persons under the age of eighteen (18) years.
- Contact means face-to-face, telephonic, correspondence, computer, or indirect contact via third parties.

| STIPULATIONS | OFFENDER INITIALS |
|---|---|
| 1. You shall enroll in, actively participate in and successfully complete an approved sex offender treatment program. You must maintain steady progress toward all treatment goals and may not change treatment providers without prior approval of your parole agent. Prompt payment of any fees is your responsibility. | JB |
| 2. You shall sign any waiver of confidentiality, release of information, or any other documents required to permit your parole agent and/or behavioral management or treatment providers to examine any and all records, to collaboratively share and discuss your behavioral management conditions, treatment progress, and parole stipulation needs as a team. This permission may extend to: (1) sharing your relapse prevention plan and treatment progress with your significant others and/or your victim and victim's therapist as directed by your parole agent or treatment provider(s), and (2) sharing of your modus operandi behaviors with law enforcement personnel. | JB |
| 3. You shall be required to inform all persons living at the same residence of current and previous sex related convictions prior to establishing residency, as verified by your parole agent. You shall notify your parole agent of any change in home situations or marital status within twenty-four (24) hours. You shall have only one residence and one mailing address at a time. | JB |
| 4. You shall not touch, photograph (still or moving), correspond with (via letter or e-mail), and/or engage in "small talk" or unnecessary conversation with any child, including your own, either directly or via third party, or attempt to do any of the preceding without written approval in advance by your parole agent in consultation with your treatment provider. You must never be in any vehicle or any residence with any child, including your own, even if other adult(s) is/are present, without written approval in advance by your parole agent in consultation with your treatment provider. You must report any inadvertent contact with children to your parole agent within twenty-four (24) hours of contact. | JB |
| 5. You must not reside, visit or be within one thousand (1,000) feet of public parks with playgrounds, pools, rides, and/or nature trails; schools, day care centers, public swimming pools, public beaches, theaters, or any other place where children can reasonably be expected to congregate. | JB |
| 6. You shall have no contact with your victim or victim's family, unless prior approval is granted by your parole agent and treatment provider, and only under special supervised conditions. | JB |
| 7. You shall comply with any medical or mental health treatment or assessment, and any other behavioral management stipulations as required by your parole agent. You will only participate in behavioral management programs approved by your parole agent. You will not miss any appointments for psychotherapy, counseling, or community service obligations without the prior approval of your parole agent or treatment providers. You will not discontinue taking any prescribed medication without the approval of your prescribing physician and you must notify your parole agent and treatment provider within three (3) working days of discontinuing the medication. | JB |
| 8. You shall not possess or view any material that is obscene, which for the purposes of this stipulation, is what the average person, applying contemporary community standards, finds that the dominant theme of the material, taken as a whole, appeals to a morbid, degrading, and unhealthy interest in sex; depicts or describes, in a patently offensive way, sexual conduct; and taken a whole, lacks serious literary, artistic, political, or scientific value. You shall not visit strip joints, adult bookstores, peep shows, bars where topless or exotic dancers perform, or businesses which sell sexual devices or aids. You shall not possess personal contact materials (for example, magazines, or papers) that contain information about persons who are desiring to have personal relationships of any kind with others, nor will you place any ads that are sexual in content or respond by computer, telephone, or internet web sites, to any sexually solicitous ads. | JB |

State 000135

| STIPULATIONS *(continued)* | OFFENDER INITIALS |
|---|---|
| 9. You shall not use any computer with access to any "online computer service" at any location *(including place of employment)* without the prior approval of your parole agent. This includes any Internet service provider, bulletin board system, e-mail system or any other public or private computer network. | JB |
| 10. You shall allow your parole agent and/or computer service representative to conduct periodic, unannounced examination of your computer(s) equipment which may include retrieval and copying of all files from your computer(s) and any internal or external peripherals to ensure compliance with your stipulations. This may require removal of such equipment for the purpose of conducting a more thorough inspection. Your parole agent may have installed on your computer(s), at your expense, any hardware or software systems to monitor your computer usage. | JB |
| 11. You shall not possess or use alcohol or any illegal controlled substance at any time. | JB |
| 12. You shall not frequent or be present at any establishment whose main business purpose is the selling, distribution, serving or drinking of alcoholic beverages or illegal controlled substances. | JB |
| 13. You shall submit to a substance abuse evaluation and follow all recommendations. | JB |
| 14. You shall submit to breath *(e.g. alco-sensor)*, urine, blood, saliva and/or DNA testing as ordered by your parole agent. | JB |
| 15. You shall refrain from "cruising" activity, frequenting areas where potential victims can be encountered. | JB |
| 16. You shall not hitchhike or pick up hitchhikers. You shall not travel alone *(including but not limited to; driving, walking, bicycling, etc.)* after dark. | JB |
| 17. You shall not stay overnight with any adult and/or establish an intimate and/or sexual relationship with any adult without prior approval by your parole agent and treatment clinician. You must also report whether the person you are having a relationship with has children under the age of eighteen (18) and/or if children under the age of eighteen (18) reside in the person's home. | JB |
| 18. You shall not use your employment as a means to acquire new victims. Your parole agency may contact your employer at any time. You will not work in certain occupations that involve being in the private residences of others, such as, but not limited to: door-to-door sales, soliciting, or delivery. Your parole agent must first approve any employment that you do engage in. | JB |
| 19. You shall not possess any items on your person, in your vehicle, in your place of residence, or as a part of your personal effects which attract children or that may be used to coerce children to engage in inappropriate or illegal sexual activities. You will not attempt to persuade, whether by words or actions or both, a child to enter a vehicle, structure, or enclosed area, or to otherwise relocate. | JB |
| 20. You shall not join or be associated with any group which promotes activities involving children under eighteen (18) years of age, such as, but not limited to: church or religious youth groups, Boy Scouts, Girl Scouts, Cub Scouts, Brownies, YMCA, YWCA, youth sports teams, public parks, etc. | JB |
| 21. You shall actively participate in offense specific mental health treatment program(s) approved and ordered by your parole agent at your own expense. You will contact the approved/designated provider within seven (7) days of release to parole to schedule an appointment unless an appointment was already scheduled prior to release on parole. Treatment is considered a behavioral management requirement of your parole and may include plethysmograph or polygraph testing or similar assessment/management tools. Termination from treatment or non-compliance with other required behavioral management requirements will be considered a violation of your parole release agreement. Subsequent treatment referrals, if any, will be at the direction of your parole agent. Should you request and be permitted to change treatment providers, stricter stipulations may be applied. | JB |
| 22. You shall participate in and complete periodic polygraph testing at the direction of your parole agent or any other behavioral management professionals who are providing treatment or assisting your parole agent in monitoring your compliance with your parole rules and special stipulations. | JB |

State 000136

| STIPULATIONS *(continued)* | OFFENDER INITIALS |
|---|---|
| 23. You shall be under intensive supervision for ninety (90) days and shall report to your parole agent on a weekly basis *(or as frequently as instructed by your parole agent)*. Thereafter, you shall report as frequently as instructed. | JB |
| 24. You shall register with local law enforcement authorities as a sex offender within seventy-two (72) hours of being released to parole supervision, or as instructed by your parole agent. | JB |
| 25. You shall agree to permit the installation, maintenance and operation of any electronic monitoring equipment in both your home and on your body. | JB |
| The following additional and specific stipulations are also in effect and apply to your parole: | JB |
| 26. | |
| 27. | |
| 28. | |

I HEREBY IMPOSE THE FOLLOWING STIPULATIONS LISTED ABOVE:  ___  1-25

Signature of member of the Indiana Parole Board _____    Date *(month, day, year)* _____

I HAVE READ OR HAVE HAD READ TO ME THE ABOVE PAROLE STIPULATIONS AND AGREE TO ABIDE BY THEM CONSISTENTLY AND WITHOUT EXCEPTION. I UNDERSTAND THAT IF I REFUSE TO SIGN AT THE SPACE PROVIDED BELOW, THE STIPULATIONS ABOVE WOULD STILL APPLY TO MY PAROLE.

Signature of offender _Jeff Brown_       Date *(month, day, year)* 9-5-12

Signature of witness _____       Date *(month, day, year)* 9-5-12

WAIVER OF EXTRADITION: I hereby waive extradition to the state of Indiana from any jurisdiction in or outside the United States where I may be found and I also agree that I will not contest any effort to return me to the state of Indiana.

Signature of offender _Jeff Brown_       Date *(month, day, year)* 9-5-12

Signature of witness _____       Date *(month, day, year)* 9-5-12

State 000137

State of Indiana
# Sex or Violent Offender Registration Form
### Revision 1 / June 2010

IC 11-8-8-8

Required registration information

Sec. 8. The registration required under this chapter must include the following information:

(1) The sex or violent offender's full name, alias, any name by which the sex or violent offender was previously known, date of birth, sex, race, height, weight, hair color, eye color, any scars, marks, or tattoos, Social Security number, driver's license number or state identification card number, vehicle description and vehicle plate number for any vehicle the sex or violent offender owns or operates on a regular basis, principal residence address, other address where the sex or violent offender spends more than seven (7) nights in a fourteen (14) day period, and mailing address, if different from the sex or violent offender's principal residence address.

(2) A description of the offense for which the sex or violent offender was convicted, the date of conviction, the county of the conviction, the cause number of the conviction, and the sentence imposed, if applicable.

(3) If the person is required to register under section 7(a) (2) or 7(a) (3) of this chapter, the name and address of each of the sex or violent offender's employers in Indiana, the name and address of each campus or location where the sex or violent offender is enrolled in school in Indiana, and the address where the sex or violent offender stays or intends to stay while in Indiana.

(4) A recent photograph of the sex or violent offender.

(5) If the sex or violent offender is a sexually violent predator, that the sex or violent offender is a sexually violent predator.

(6) If the sex or violent offender is required to register for life, that the sex or violent offender is required to register for life.

(7) Any electronic mail address, instant messaging username, electronic chat room username, or social networking web site username that the sex or violent offender uses or intends to use.

(8) Any other information required by the department.

I have read or had read to me the above information. By my signature, I indicate that I have received a copy of this information and that I understand my duties and obligations to register for a period of:

(10)  (15)  (25) years  ___  life  ___        [OFFICE USE ONLY]        Date Registration Expires:  NONE

I understand that I have been designated as: (circle appropriate designation or cross out) (N/A)

_____ Sexually Violent Predator
(Offender initials)

_____ Offender Against Children
(Offender initials)

_____ Violent Offender
(Offender initials)

_____ Internet Restrictions IC 35-42-4-12
(Offender initials)

Signature of the offender: _Jeff Brown_     Printed name: _Jeff Brown_     Date: _9-5-12_

I hereby certify that the above offender was informed of the obligation to register with local law enforcement as required by IC 11-8-8.

Department official: _April Wilburn_     Title: _Re-entry Spec_     Date: _9-5-12_

**Right Thumb**

## NEXT REGISTRATION DATE:

I attest that I understand my duties and obligations as listed above _____ so dated _____._____

State 000138



## TEMPORARY LEAVE AGREEMENT FOR A COMMITTED OFFENDER
State Form 8522 (R3 / 1-12)
DEPARTMENT OF CORRECTION

| Name of Offender | Identification number | Facility / Institution |
|---|---|---|
| Brown, Jeffrey | 956175 | NCCF |

### AUTHORIZATION

This shall serve to identify the above named offender as being lawfully within the limits of Temporary Leave for a Committed Offender (I.C. 11-10-9-2) and serve as authorization for temporary leave and to order his/her return as specified below.

Purpose of temporary leave
*Release*

| Destination | | Date leave to begin (month, day, year) |
|---|---|---|
| | | 9/6/12 |

| Place to which offender is to return | Time due to return | | Date due to return (month, day, year) |
|---|---|---|---|
| Temp leave stips to be followed until | 12:01 | ☒ AM ☐ PM | 9-8-12 |

### CONDITIONS

1. I will directly and promptly proceed to and return from my designated location by the approved method of transportation and route.
2. I will remain within the prescribed geographical limits and I am not permitted to leave the State of Indiana without written authorization.
3. I will return to the institution immediately and without delay if the reason for which I was released on temporary leave ceases prior to the end of the scheduled time for termination thereof.
4. I will not use, possess or secure alcoholic beverages or any other drug or intoxicant except as prescribed by a licensed physician.
5. I will abide by all institutional regulations governing the temporary leave program as well as all federal, state or municipal laws or ordinances. I am aware that violation of this shall subject me to all penalties prescribed by law or administrative action as deemed appropriate by the institution from which temporary leave was granted.
6. I will make no contact, either personal, by telephone or otherwise with any individual on behalf of another offender.
7. Should I need advice or assistance while on temporary leave, I will telephone my institution of confinement or center, the local parole officer, the Department of Correction, the local sheriff or police department.
8. Should I be involved in an accident or other situation which might prevent my return from leave within the time limits specified above, I will immediately or as soon as possible call my institution of confinement or center or the Department of Correction, and then will turn myself over to the local parole officer, sheriff or police department.
9. I will not purchase any item on credit or enter into any contract to purchase without the advance written approval of the institution head.
10. I will not operate any motor vehicle while on temporary leave.
11. I will use public transportation while on temporary leave, or such transportation as is approved in advance by the institution head.
12. Upon returning to my institution of confinement from a temporary leave, I will not retain any personal property obtained while on leave.
13. I will carry such identification as is provided by the institution of my confinement on my person at all times while on temporary leave.
14. I will not change or deviate from the approved plan for my temporary leave without the advance written approval of the institution head.
15. I will keep this authorization in my possession at all times.
16. Other conditions *(specify)*:

### AGREEMENT

I understand that if I should fail to remain within the limits of the above-authorization, or fail to return by the prescribed time, such will be deemed an escape from detention (I.C. 35-44-3-5) and shall be punishable as prescribed by state law.

I agree to the conditions of temporary leave which appear above, and acknowledge that the conditions have been read and/or explained to me by the official whose name and signature appears below.

| Signature of offender | Date (month, day, year) |
|---|---|
| Jeff Brown | 9-5-12 |

| Signature of witness | Date (month, day, year) |
|---|---|
| April Wilburn | 9-5-12 |

| Name of witness (print / type) | Title of witness |
|---|---|
| April Wilburn | Re-entry Specialist |

### SIGNATURE OF APPROVAL

| Signature of head of facility / institution or designee | Title | Date signed (month, day, year) |
|---|---|---|
| | | |

**DISTRIBUTION:** Original - Institution packet; Copy - Offender

State 000139

9/6

To:  Offender  **BROWN, JEFFREY**

DOC# **956175**

Housing  **B4 301**

From:

Date:  **07 30 2012**

9/6

RE:  TRANSPORT UPON RELEASE

Please indicate below how you plan to leave upon your release.

☐ Family/Friend is picking me up from Facility
☒ NCF is to transport me

Please indicate if you need the facility to provide you with clothing upon your release what sizes you need:

Shirt: **3X**        Pants: **38/34**        Shoes: **N/A**

## Please complete this form and return to CLASSIFICATION Reentry Specialist in Classification within 48 hours.

H. Wayne Voacke

Office use only:

Placement status: ✓ Approved  ___ Pending        DOC Assist: ___ Yes  ✓ No

Bus Station: ✓ Yes  ___ No     TOT: ___ Yes  ✓ No   County: _____

Address: _____  City: _____  Zip Code: _____

County: _____

Printed By: SHEADY from: DCFCNWCS

Received Time:          Aug 30, 2012 10:26:59      Source ORI:          DCINTER00
Summary:                QW: NAM=BROWN,JEFFERY DOB=19640410
^View Message Details

IPR.DCINTER00
07:27 08/30/2012 30391
07:27 08/30/2012 07953 IN049065C
*MRI0730827
TXT
RECORD NOT FOUND

Original Query Data
Name:BROWN,JEFFERY
DOB:1964-04-10
MRI 730834 IN: NLI1 10774 AT 30AUG2012 10:26:59
OUT: DCFCNWCS 117 AT 30AUG2012 10:26:59

---

Received Time:          Aug 30, 2012 10:26:57      Source ORI:          INNCIC000
Summary:                QW: NAM=BROWN,JEFFERY DOB=19640410
^View Message Details

1L01037I,MRI0730827
IN049065C
NO NCIC WANT
NO NCIC WANT NAM/BROWN,JEFFERY DOB/19640410 RAC/W SEX/M ENS/Y
***MESSAGE KEY QWA SEARCHES ALL NCIC PERSONS FILES WITHOUT LIMITATIONS.

MRI 730829 IN: NCIC 19405 AT 30AUG2012 10:26:57
OUT: DCFCNWCS 116 AT 30AUG2012 10:26:57

---

Received Time:          Aug 30, 2012 10:26:57      Source ORI:          INHFSN000
Summary:                QW: NAM=BROWN,JEFFERY DOB=19640410
^View Message Details
IDACS REPLY
IN049065C

NAM/BROWN,JEFFERY.DOB/19640410.SEX/M.RAC/W.           IND/Y.RSH/Y.


**** NO IDACS RECORD FOUND FOR INQUIRY ABOVE ****

MRI 730828 IN: IDACS 21956 AT 30AUG2012 10:26:57
OUT: DCFCNWCS 115 AT 30AUG2012 10:26:57

State 000141

**REQUEST FOR BUS VOUCHER**

NAME OF PASSENGER: Jeffrey Brown

DOC#: 956175

DATE OF TRAVEL: 9-6-12

DEPARTURE: HCF Indpls

DESTINATION: Fort Wayne

State 000142



## GATEAGE WORKSHEET
State Form 46753 (7-09)

B4 106

Date  6/22/2012

| Name of Offender | DOC number | Projected release date |
|---|---|---|
| JEFFREY BROWN | 956175 | 9/08/2012 |

*If you are being released on court orders, or to wanting authorities you will not receive Gateage.*

| As of *(Date)*  6/22/2012 | | |
|---|---|---|
| | Amount of Funds on Deposit Outside of Facility | $ 0.00 |
| | Offenders Trust Fund Balance | $ 62.52 |
| | Total of Funds Available to the Offender | $ 62.52 |

If the total of funds available to the offender is greater than Fifty dollars ($ 50.00), no Gateage funds will be provided to the offender upon release.

If the total of funds available to the offender is less than Fifty dollars ($ 50.00), the difference will be determined at this point.

| As of *(Date)*  6/22/2012 | | |
|---|---|---|
| | Release Funds *(Base amount not to be changed)* | $ 50.00 |
| | Less the funds available to the offender | $62.52 |
| | Equals the amount of Gateage that will be provided | $ 50.00 |

Should the funds available to you change in any way, the amount of Gateage will not change. When you are released on or before the projected release

date of  9/08/20122  you will receive Gateage in the amount of $  50.00

| Prepared by *(Name and position)* | |
|---|---|
| Received by *(Name and DOC number)* | Jeff S. Brown   956175 |

**DISTRIBUTION:** Facility Packet:  Offender:  Release Coordinator

State 000143

TFMIACCT                          OFFENDER TRUST SYSTEM          06/22/12  13:55:24
LOC: NCF                          DISPLAY PRIMARY ACCOUNT                  USER: NCF599

ACCOUNT NUMBER:  956175           ACCOUNT STATUS: AC  ACTIVE
                                  LAST STATUS DATE: 12 / 07 / 2011
OFFENDER NAME - LAST: BROWN           FIRST: JEFFREY           MI: S

DATE RECEIVED     : 12 / 07 / 2011    RECEIVED FROM   : IYC
AVL BAL PREV LOC  :          0.00     (NOTE: THIS AMT IS SUBJECT TO CHANGE)
DATE TRANSFERRED  : 00 / 00 / 0000    TRANSFERRED TO  :
PROJECTED RELEASE: 12 / 14 / 2012
HOUSING DATE      : 12 / 15 / 2011
EMPLOYER:                             HOUSING UNIT    : B   DORM/BLDG/CE
                                      PAY FREQUENCY:        COUNSELOR:
COMMISSARY RESTRICTIONS:
    BEGINNING DATE: 00 / 00 / 0000    PRIMARY ACCT BAL :        9.51
    ENDING DATE   : 00 / 00 / 0000    HOLD BALANCE     :        0.00
                                      HOLD RELEASE BAL :        0.00
    BIRTH DATE    : 04 / 10 / 1964    AVAILABLE BALANCE:        9.51
    RE-ENTRY ACCT PARTICIPANT: Y      PENDING BALANCE  :        0.00
                                      RE-ENTRY ACCT BAL:       53.01
                                      DATE LAST TRANS: 20120620 TXN CODE: SAVD
ACCOUNT RECORD FOUND. ENTER NEXT SELECTION
  PF2=>GET ACCOUNT   PF5=>NEXT ACCOUNT   PF6=>PREV ACCOUNT   PF9 =>CLEAR SCREEN
  PF3=>GET NAME      PF8=>NEXT NAME      PF7=>PREV NAME      PF10=>EXIT TO MENU
4-©              1 Sess-1   10.1.23.59              TCP03234        4/19

State 000144