## UNITED STATES DISTICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| JEFFREY BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:16-CV-00337-HAB |
| | ) | |
| DEPUTY KYLE HARTMAN, DET. | ) | |
| SHAUN DUNAFIN, WANDA | ) | |
| TRUELOVE, SHERIFF OF NOBLE | ) | |
| COUNTY DOUGLAS A. HARP, STATE | ) | |
| OF INDIANA / INDIANA DEPARTMENT | ) | |
| OF CORRECTION (seeking prospective | ) | |
| injunctive relief only), VICKI HALSELL | ) | |
| and APRIL WILBURN | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Jeffrey Brown ("Brown") spent 41 months incarcerated for failing to register as a sex offender, when, in fact, he was not required to register at all. He sued a variety of state and county employees and the Sheriff of Noble County under 42 U.S.C. § 1983 claiming they all played a role in his wrongful incarceration and in violating his Fourth and Fourteenth Amendment rights. Additionally, Brown seeks prospective injunctive relief against the State of Indiana and the Indiana Department of Corrections ("IDOC"). The Defendants have all moved for summary judgment. (ECF Nos. 117, 123, 129). Brown tendered his opposition to those motions (ECF No.

135)[1] to which all the Defendants replied (ECF Nos. 138–140). The motions are now ripe for consideration.[2]

## FACTUAL BACKGROUND

As a preliminary matter and for simplicity of the record, it is helpful to identify and classify the various Defendants in this case. Deputy Kyle Hartman ("Deputy Hartman"), Detective Shaun Dunafin ("Det. Dunafin"), and Wanda Truelove ("Truelove"), a clerk in charge of registering sex offenders, are all Noble County Sheriff's office employees sued in their individual capacities (collectively, the County employees"). April Wilburn ("Wilburn") was employed by the State as a Re-Entry Specialist who directed Brown to register as a sex offender upon his release from the Indiana Department of Correction ("IDOC"). [3] Douglas Harp ("Sheriff Harp") is the Sheriff of Noble County and sued in his official capacity. Defendants IDOC and the State of Indiana are collectively referenced herein as "the State" and sued for prospective injunctive relief only.

### A. **Brown's Original Conviction and Subsequent Convictions for Failure to Register**

On August 28, 1996, Brown was charged with committing sexual battery and criminal confinement against a 31-year old female. On December 2, 1996, Brown was convicted of sexual battery and criminal confinement and was sentenced to 20 years at the IDOC. Neither at the time he committed the above offense nor on the date of his conviction for that offense did any state

---

[1] The Court's task of resolving the pending motions was made more difficult by the inadequate briefing from Plaintiff's counsel. Counsel's response to, not one, but three separate motions for summary judgment consisted of seven pages that failed to comply with this Court's local rules or Fed.R.Civ.P. 56. Moreover, while counsel makes a host of what appear to be legal contentions, none of them are supported by any legal authority.

[2] Plaintiff also filed a Motion to Strike the "advice of counsel" argument made by certain Defendants claiming that it was not asserted as an affirmative defense to the allegations in the Second Amended Complaint. (ECF No. 136). This filing was equally deficient. No supporting brief was filed along with it, no legal authority was cited to justify the relief sought and the entirety of the motion consists of four sentences.

[3] On June 24, 2019, this Court granted a Motion to Dismiss filed by Defendant Vicki Halsell and thus, all claims against her have been dismissed from the case. (ECF No. 101).

statute mandate that he register as a sex offender. A later enacted statute, as will be explained *infra*, did, however, mandate registration for the offense for which Brown was charged and convicted.

In 2009, as he neared the end of his sentence, a State correctional employee advised Brown that his pre-release paperwork designated him as a lifetime registrant on the sex offender registry ("the Registry"). (Dep. of Jeffrey Brown, at 14, ECF No. 118-1). He was also advised by former defendant in this suit, IDOC employee Vicki Halsell, that he was required to register as a sex offender.

When he was released from prison in February 2009, Brown returned to Noble County and completed a sex offender registration with the assistance of Truelove. Brown had no discussions with Truelove as to whether he was actually subject to the registration requirements and there is no evidence set forth that Truelove made the decision that Brown was subject to registration requirements. Brown initially registered as instructed. However, between February and June 2009, Brown changed his address and sought an extension from Truelove to complete his registration. Prior to completing his registration, Brown was incarcerated on an unrelated criminal matter.

While Brown was incarcerated, Det. Dunafin investigated Brown's failure to register. That investigation yielded charges of failure to register to which Brown pled guilty pursuant to a written plea agreement, ("the 2009 Charge"). Brown was represented by counsel at the time he entered his plea. The Noble Circuit Court Judge accepted the plea agreement, entered a judgment of conviction against Brown and sentenced him to six months incarceration. His conviction also constituted a parole violation. The validity of whether Brown was required to register as a sex offender did not come up during these criminal proceedings.

In May 2012, while Brown was still incarcerated on the 2009 Charge, Brown began researching his registry obligations. He wrote Judge Robert Kirsch to inquire whether he had to

register for only ten years rather than for life. (ECF No. 118-1 p. 28). According to Brown, Judge Kirsch wrote him back indicating that he was not required to be a lifetime registrant, only a ten-year registrant. (Brown Dep. at 25).

In September 2012, Brown was incarcerated at the New Castle Correctional Facility and was scheduled to be released once again. Wilburn was an employee at the New Castle Correctional Facility where she was serving a short temporary assignment in the reentry department. Wilburn was tasked with reviewing paperwork with offenders re-entering society, including sexual registry requirements as designated by the State.  Wilburn advised Brown to register as a sex offender with the Sheriff of Noble County, as this was the conclusion of the IDOC. Wilburn did not personally make the decision that Brown was required to register. Rather she assisted Brown in the completion of paperwork and had no further communication with him.

Upon his release, the IDOC faxed documentation to the Noble County Sheriff's Department indicating that Brown was required to register as a sex offender. Upon his release from custody, Brown returned to Noble County and met with Truelove, once again, to complete a sex offender registration form. Again, there was no discussion about whether Brown had to register at all. Instead, the discussion involved whether he had a lifetime requirement or a ten-year term.

On September 1, 2015, Deputy Hartman filed a four count Information in the Noble Circuit Court based on Brown's failure to register, along with an Affidavit of Probable Cause. (ECF Nos. 118-5, 118-6). This Information was approved and signed by the Deputy Prosecuting Attorney. In the Information, Brown was charged with failure to report his change in address, failure to report his use of social media, and two charges of omitting information required on social media accounts ("the 2015 Charge"). The Probable Cause Affidavit also set out Brown's prior 1996 sexual battery conviction and his 2009 conviction for failing to register. Based on Deputy Hartman's, sworn

affidavit, the Noble Circuit Court Judge found probable cause for Brown's arrest and directed the clerk to issue an arrest warrant. Brown received counsel and again pled guilty to failing to register. The Court entered Judgment against Brown and sentenced him to two and a half years imprisonment.

While in prison, Brown began researching and determined that he was not required to register as a sex offender. Brown wrote Det. Dunafin to inform him that he was not required to register. Upon receiving the letter, Det. Dunafin met with Brown and agreed that he was not required to register. On March 7, 2016, Brown sent Det. Dunafin a letter of formal "protest" regarding his incarceration and requested the letter be submitted to Sheriff Harp.

Det. Dunafin then prepared a Supplemental Case Report outlining the chronology of events that led to Brown's sex offender registration charges. (ECF No. 118-11). On March 8, 2016, Brown's attorney filed a Motion to Vacate Conviction and for Dismissal. (ECF No. 118-12). The Motion was unopposed by the Noble County Prosecutor and the Noble Circuit Court issued its order vacating the guilty plea and conviction. (ECF No. 118-13).

**B.  Indiana's Sex Offender Registration laws and the Indiana Supreme Court**

Beginning in 1994 with "Zachary's Law," the Indiana General Assembly ("General Assembly") began requiring individuals convicted of certain sex crimes to register as "sex offenders." *See* Sex Offender Registration Act ("SORA") of March 2, 1994, Pub.L.No. 11-1984, §7 (originally codified as Ind. Code §§ 5-2-12-1, *et seq.*; current version  Ind. Code § 11-8-8-1, *et seq.*).  Initially, the registration and notification provisions applied to only eight crimes. Over the years, the General Assembly greatly expanded the reach of SORA's provisions as well as the time frame under which a person is required to register. Offenders deemed "sexually violent predators" are subject to lifetime registration requirements while other offenders must register for a ten-year

minimum commencing upon their release from imprisonment. In addition, the criminal penalties for failure to register have lengthened as well. The General Assembly delegated administrative authority over SORA to the IDOC. *See* Ind. Code § 11-8-2-12.4.

Relevant here, are two SORA expansions/amendments undertaken by the General Assembly. Effective July 1, 1996, the crime of sexual battery required a defendant to register if the victim of that crime was under the age of 18. A year later, on July 1, 1997, the Indiana legislature further extended that provision, requiring registration for convictions of sexual battery involving a victim of any age. Brown's offense and conviction occurred in the intervening 12 months between these two amendments.

In 2009, the Indiana Supreme Court decided two cases impacting Brown's claims here. In *Wallace v. State*, 905 N.E.2d 371 (Ind. 2009), the court held that SORA violated Indiana's Ex Post Facto Clause because it imposed a punitive burden as applied to an offender who committed his crime—and even served his sentence—before *any* registration requirement existed. *Wallace,* 905 N.E.2d at 384. That same day the court also decided *Jensen v. State,* 905 N.E.2d 384 (Ind. 2009) and determined that an amendment to SORA, which lengthened the mandatory registration period for sexually violent predators from ten years to life, did not violate the Ex Post Facto Clause.

### C.  IDOC's Interpretation of *Wallace* and *Jensen*

Brent Myers is the Director of the IDOC's Registration and Victim Services. (Dep. Brent Myers at 7, ECF Nos. 118-2 and 125-3). As part of his job duties and responsibilities, Myers oversees the IDOC's efforts with regard to SORA registration, victim notification and victim services. Specifically, Myers explained:

> "We make registration decisions for individuals that are required to register, or that we believe may have an obligation to register. We work with local sheriff's departments. We work with other justice professionals, and that could be helping

them with their understanding of registration. It could be making registration decisions for them. Ultimately, it's just communicating about sex and violent offender registrations here in Indiana."

(Myers Dep. at 9). His department has the "final say" in determining who is designated as someone who needs to register under SORA. (*Id.*). Myers was not directly involved in the decisions as to Brown's requirement to register; however, he acknowledges that his staff would have been responsible for these decisions. (*Id.* at 10). The IDOC did not expect local sheriff's departments to conduct an independent investigation into an offender's obligation to register. (Myers Dep. at 38).

In 2011-2012, Myers' office was operating under advice it had received from the Indiana Attorney General's ("IAG") office regarding implementation of the decision in *Wallace v. State*. According to Myers, his office was advised by the IAG that its position was that the *Wallace* decision was specific to Richard Wallace because of his situation and if any other inmate believed they should not be subject to the requirements that inmate had to seek a determination from a court. (Myers Dep. at 25–26). Thus, at the time Brown was released in 2012, Myers office was under the directive from the IAG's office that *Wallace* was an "as applied" decision and Brown remained under an obligation to register. According to Myers, it was not until March 2016 that the IDOC conceded that the registration requirements did not apply to Brown. (*Id.* at 52).

Following the decision in *Wallace*, new legal advice, and other legal decisions, the Indiana Department of Correction created an administrative review process and proactively began removing individuals from the requirement to register as a sex offender without a court order. (Myers Dep. at 118).

## DISCUSSION

"Section 1983 creates a 'species of tort liability,' " *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976)), against any person who,

under color of state law, "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution," 42 U.S.C. § 1983. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons ... against unreasonable ... seizures.' " *Manuel*, 137 S. Ct. at 917 (quoting U.S. Const. amend. IV). "'A person is seized' whenever officials 'restrain[ ] his freedom of movement' such that he is 'not free to leave.' " *Manuel*, 137 S. Ct. at 917 (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). The Fourth Amendment protects not only against "an initial arrest without probable cause," but also any "continued detention in its absence." *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018) (citing *Manuel*, 137 S. Ct. at 918-19), *overruled on other grounds by Lewis v. City of Chi.*, 914 F.3d 472, 475 (7th Cir. 2019). !

Brown asserts claims for false arrest, false imprisonment, and malicious prosecution against the various defendants, all of which he claims implicate the Fourth Amendment.  It is to these claims, the Court now turns.

### a.  Individual Capacity Claims against the County Defendants

Brown asserts that Deputy Hartman, Det. Dunafin and Truelove all violated his Fourth Amendment rights by either directing him to register as a sex offender contrary to law or causing his wrongful arrests in 2009 and 2015 for failing to register. Neither the briefing or the factual recitation of the parties is clear on the exact claims Brown is making individually against each of the County Defendants. Instead, he appears to lump all three individual defendants together to assert that in their various roles together they deprived him of his Fourth Amendment liberty.

 The County Defendants assert that Brown's sole claim for false arrest arises from the 2015 Charge, presumably against Deputy Hartman, who swore the probable cause affidavit and perhaps

Truelove because she directed him to register when he was released in 2012.[4] From the factual recitation, the Court is unable to ascertain Det. Dunafin's role in Brown's alleged constitutional deprivation related to the 2015 Charge as it appears that he was not personally involved with securing the arrest warrant or in Brown's arrest. Rather, the factual record suggests Det. Dunafin initiated a prompt investigation of Brown's assertion that he was not required to register, facilitated Brown's release, and aided him in having his criminal conviction vacated.

Nevertheless, the Defendants assert that there was no Fourth Amendment violation and, even if there was, qualified immunity shields them from liability. The crux of their argument is that at the time of his arrest on the 2015 Charge, there was a valid warrant approved by a Deputy Prosecuting Attorney and signed by a judicial officer that established probable cause for Brown's arrest.

The Court's consideration of probable cause and qualified immunity go hand in hand. "Whether police officers had probable cause to arrest a suspect and whether they are entitled to qualified immunity for the arrest are closely related questions, although qualified immunity provides the officers with an 'additional layer of protection against civil liability' if a reviewing

---

[4] The Defendants assert that because Brown was already in custody on a different violation when he was held on the 2009 Charge, he was not deprived of his liberty and thus, no claim lies. "It is well-settled that a plaintiff does not have a claim for false arrest under § 1983 if the plaintiff was already in custody on other charges at the time of his or her arrest because the plaintiff has not suffered the requisite 'deprivation of liberty.'" *Bristol v. Queens Cty.*, No. CV095544JFBAKT, 2018 WL 5077166, at *13 (E.D.N.Y. Mar. 30, 2018), *report and recommendation adopted*, No. 09CV5544JMAAKT, 2018 WL 4328828 (E.D.N.Y. Sept. 11, 2018) (citing *Walker v. Sankhi*, 494 Fed. App'x. 140, 143 (2d Cir. 2012)); *Jose L. Figueroa v. Town of North Haven*, No. 17-00650, 2017 WL 6045421, at *5 (D. Conn. Dec. 6, 2017) ("Case law is clear that if, at the time of his or her arrest and prosecution, a plaintiff is already in custody or incarcerated on other criminal charges, he or she cannot state a claim for false arrest or malicious prosecution under section 1983 because there is no deprivation of his or her liberty interest.").

Brown does not respond to this argument at all nor does he address in his cursory seven page response many of the other arguments raised by the Defendants. That said, it is not the Court's obligation to scour the record in search of legal theories or to present Brown's case for him.  Thus, the Court shall only address the circumstances surrounding the 2015 Charge.

court finds that they did not have probable cause." *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001) (quoting *Hughes v. Meyer,* 880 F.2d 967, 970 (7th Cir.1989). !!

!'Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).  For this reason, "a person arrested pursuant to a facially valid warrant cannot prevail in a § 1983 suit for false arrest." *Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir. 1992).

Here, there is no question that Brown was arrested pursuant to a facially valid warrant. Deputy Hartman submitted the facts as he knew them – Brown was under a registration order, Brown violated that order, and failing to register is a crime under Indiana law – to a judicial officer to obtain the arrest warrant. It is undisputed that Deputy Hartman did not independently make the determination as to whether Brown was required to register. Rather, he merely investigated the fact that Brown had not registered, provided those facts in a sworn affidavit and received a judicial determination of probable cause to make the arrest. No one at the county level was charged with making the determination of whether Brown was required to register. Rather, the undisputed facts show that the IDOC made the registration determination, as required by Indiana statute, and the IDOC communicated its determination to the Noble County Sheriff's department, which was then tasked with enforcing the registration determination.

That said, an important exception to the general rule immunizing officers from liability based on a valid warrant exists if a reasonably well-trained officer should have known the testimony or affidavits provided in support of the warrant would have failed to establish probable cause, so that he should not have applied for the warrant in the first place. *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 742 (7th Cir. 2003) (citing *Malley v. Briggs*, 475 U.S. 335, 345

(1986)). "[A]n officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989).

Unfortunately for Brown, the record is barren of any evidence from which the Court could conclude that Deputy Hartman either *knew* Brown was not required to register or otherwise falsified statements to the court in his probable cause affidavit. Ultimately the Defendants acknowledge that Brown was never required to register, and thus, the premise for the warrant was invalid; however, at the time of the events, Deputy Hartman did not have this knowledge.

Moreover, at a minimum, Deputy Hartman is entitled to qualified immunity because a reasonable officer in his situation could have believed that he had probable cause to arrest Brown. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, —— U.S. ——, 138 S.Ct. 1148, 1152, 200 L.Ed.2d 449 (2018) (per curiam) (quoting *White v. Pauly*, —— U.S. ——, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (per curiam)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). In determining whether an official is entitled to qualified immunity, courts examine (1) whether "the official violated a statutory or constitutional right," and (2) whether "the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735.

"Although qualified immunity is a defense to a § 1983 suit, the burden of meeting the elements of this two-part test rests on the plaintiff." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). To overcome a defense of qualified immunity, the plaintiff must point to "'a clearly

analogous case establishing a right to be free from the specific conduct at issue'" or show "that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)).

Brown attempts to meet his burden by citing to the Indiana Supreme Court's 2009 decision in *Wallace* which, he contends, is an analogous case to his and demonstrates his clearly established right not to be subject to ex post facto laws. There, the Indiana Supreme Court determined that applying SORA laws enacted after the defendant's commission, conviction, and service of his sentence violated the Indiana Constitution. Brown further argues that law enforcement officers are "presumed to know the law" and "it was not reasonable for the Defendants to believe that Brown had to register given the clear language and meaning of *Wallace*." (ECF No. 135 at 4)

A right is "clearly established" if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, ––– U.S. ––– –, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658 (2012) (internal quotation marks omitted)). In this case, the record points in only one direction and that is that while *Wallace* did ultimately effect a change in the law that removed any registration obligation for Brown, it was not sufficiently clear at either the time Truelove advised Brown to register in 2012 or when Brown was arrested on the 2015 Charge.

Indeed, the record demonstrates that *everyone* that made contact with Brown's case misunderstood the full import of *Wallace* in 2012 and 2015. The IDOC, under legal guidance from the IAG, concluded that absent a judicial determination otherwise, Brown was required to register despite the holding in *Wallace*. The IDOC then determined Brown was subject to a registration requirement, advised Brown, and alerted the Noble County Sheriff of Brown's

requirement. In turn, this led to Deputy Hartman's reasonable determination that Brown violated his registration requirement, causing him to seek an arrest warrant. The Deputy Prosecuting Attorney signed the Information and the issuing judge further determined that probable cause existed for issuance of a warrant. In other words, it was reasonable—even if mistaken—for the county officials, including Deputy Hartman, to believe that there was probable cause to arrest Brown on the registration violation.

As for the objective reasonableness of the county officials' conduct, a neutral judge's issuance of a warrant is "the clearest indication that the officers acted in an objectively reasonable manner or ... in 'objective good faith.'" *Messerschmidt v. Millender,* ——U.S. ——, 132 S.Ct. 1235, 1245, 182 L.Ed.2d 47 (2012) (quoting *United States v. Leon,* 468 U.S. 897, 922–23 (1984)). But "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Id.*

Here, there is even more. While the existence of judicially determined probable cause, is not by itself determinative, whether legal guidance was sought aids in the assessment of the objective reasonableness of the Defendants' actions.[5] Certainly, officers will attain some reasonable level of proficiency in understanding state laws during the ordinary course of their profession, but qualified immunity does not require a non-legally trained officer to know the

---

[5] Brown moves to strike the evidence that the Deputy Prosecuting Attorney approved Deputy Hartman's affirmation in the Information claiming that it was not pled as an affirmative defense and prejudices the Plaintiff. This argument is problematic for two reasons. First, it should be no surprise to Plaintiff that the Deputy Prosecuting Attorney approved the Information because the signature itself appears on the Information. Thus, Plaintiff's failure to conduct discovery on this issue is not due to any surprise revelation by the Defendants. Second, the Defendants did properly plead qualified immunity and whether the Defendants received advice from trained lawyers is relevant to the determination of whether they acted objectively reasonable. *See Burritt v. Ditlefsen,* 807 F.3d 239, 251 (7th Cir. 2015) ("Further bolstering Ditlefsen's qualified immunity is the fact that she consulted with the Polk County District Attorney and her supervisor before arresting Burrit."); *Kijonka v. Seitzinger,* 363 F.3d 645. 648 (7th Cir. 2004)("Consulting a prosecutor may not give an officer absolute immunity from being sued for false arrest, but it goes far to establish qualified immunity." (internal citations omitted). Accordingly, Brown's Motion to Strike (ECF No. 136) is DENIED.

precise ins-and-outs of every state law on record. This would defeat one of the purposes of qualified immunity, which is to prevent the threat of personal liability from inhibiting officers in the exercise of their duties. *See Messerschmidt,* 132 S.Ct. at 1244 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." (internal quotation marks omitted)).

This is not to say that officers are relieved from the responsibility of understanding the laws they are charged with enforcing. But in this case, it is enough that the legal determination as to registration was made by the IDOC with guidance from the IAG, not by any of the County Defendants. There is no evidence that any of the County Defendants were aware that Brown was not required to register and persisted in arresting and prosecuting him. Moreover, the 2015 Charge was approved by the Deputy Prosecuting Attorney. And, it is again worth emphasizing that a host of jurists misapplied the SORA laws. Not only did the IAG erroneously interpret *Wallace* but a deputy prosecuting attorney approved the filing of the Information, a judicial officer authorized an arrest warrant, Brown's defense counsel for the 2015 Charge failed to raise the issue in his criminal proceeding, and the prosecuting attorney accepted a guilty plea to a crime that Brown didn't commit. Under these circumstances, the Court concludes as a matter of law that the Defendants did not violate clearly established law in 2012 (when Truelove advised Brown to register) or in 2015 (when he was arrested for failing to register). The County Defendants are therefore, entitled to qualified immunity and their Motion for Summary Judgment is GRANTED.

### b.  Official Capacity Claims Against Sheriff Harp

Brown has also sued Sheriff Harp in his official capacity. Claims alleged against Sheriff Harp in his official capacity are the same as naming Noble County as a defendant.  *See Sipe v.*

14

*Decatur Cty. Sheriff*, No. 1:12-cv-1064-SEB-TAB, 2013 WL 4763550, at *1 (S.D. Ind. Sept. 4, 2013) ("A claim against a person in his or her 'official capacity' is an alternative way of asserting a claim against a governmental entity …."). It is well established that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). Rather, under *Monell*, a constitutional deprivation may be attributable to a municipality only "when execution of a government's policy or custom … inflicts the injury." *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008) (quotation marks and citation omitted). A plaintiff can show that a constitutional violation resulted from the execution of a municipal policy or custom in the following three ways: "(1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (quoting *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004)).

The Court need not expend much effort on this claim as Brown has proffered no facts showing any custom or policy of Noble County or the Sheriff's Department caused his injury. Rather,  Brown simply states, without any factual designation or citation to the record whatsoever, that "the individual actors acting at the behest of the Sheriff did so because they were improperly trained, failing to take in to consideration the Indiana Supreme Court case of *Wallace* and its teachings." (ECF No. 135 at 5). Absent any evidence to support such a statement, Brown's claim against Sheriff Harp and Noble County fails. *See Hughes v. City of Chi.,* 673 F.Supp.2d 641, 651 (N.D.Ill. 2009)("[T]o survive summary judgment, Plaintiffs must set forth specific facts showing that there is a genuine issue of material fact regarding the existence of such a policy, custom, or

usage."). Accordingly, summary judgment is GRANTED on the official capacity claim against Sheriff Harp.

### c. Claim against Wilburn

Next, Brown asserts that Wilburn participated in his malicious prosecution by wrongfully directing him to register when he was released from the IDOC in 2012.[6]  To state a viable federal malicious prosecution claim, a plaintiff must "alleg[e] a violation of a particular constitutional right, such as the right to be free from unlawful seizures under the Fourth Amendment, or the right to a fair trial under the Due Process Clause." *Welton v. Anderson*, 770 F.3d 670, 673 (7th Cir. 2014), *reh'g denied* (citing *Serino v. Hensley*, 735 F.3d 588, 592 (7th Cir. 2013)). Because the federal malicious prosecution claim fills a void in state law, it borrows the elements of the state law claim. *Katz-Krank v. Hasket*, 843 F.3d 641, 649 (7th Cir. 2016). Under Indiana law, the elements of a malicious prosecution claim are that the defendant (1) instituted or caused to be instituted an action against the plaintiff, (2) with malice and (3) without probable cause, and (4) the action terminated in plaintiff's favor. *Id.* (quoting *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). !!

Applying these elements to the record before the Court, Wilburn is clearly entitled to summary judgment.  Brown has articulated no facts from which a reasonable jury could conclude

---

[6] This Court has previously dismissed from this action, Vicki Halsell, who operated in the same capacity as Wilburn, but in 2009. (ECF No. 101). In that Opinion and Order, the Court determined that Brown's Second Amended Complaint failed to state a claim for malicious prosecution against Halsell. In reaching that conclusion, the Court noted that Halsell's directive that Brown register in 2009 was a "mistake of law" occurring prior to the Indiana Supreme Court's decision in *Wallace* and that nothing in the Second Amended Complaint "plausibly suggests that Halsell's directive was borne out of personal animosity toward Plaintiff, or that she did not properly investigate the requirements of the law at the time she directed Plaintiff to register." (ECF No. 101 at 5–6). The Court further concluded that Halsell had no authority to initiate proceedings against Brown for failing to register and malicious prosecution claims must allege more than an arrest and detention without probable cause.

that Wilburn either "instituted or caused to be instituted" an action against him with malice. There is no evidence that Wilburn was the decisionmaker with respect to whether Brown had to register, no evidence that she caused any criminal proceeding to be filed against Brown, and absolutely no evidence of personal animosity or other evidence of malice. Rather the undisputed facts are that Wilburn acted in an administrative capacity providing the sex registration information to Brown. She had no interaction with Brown upon his release and did not participate in the criminal proceedings instituted against Brown. Wilburn's Motion for Summary Judgment is GRANTED. !

### d.  Injunctive Relief Against the State

Finally, Brown has sued the IDOC and the State of Indiana for prospective injunctive relief. Although both the State of Indiana and the Indiana Department of Correction are immune from suits for monetary damages under the Eleventh Amendment, s*ee Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) and *Alabama v. Pugh,* 438 U.S. 781 (1978), under *Ex parte Young*, 209 U.S. 123, 159-60 (1908), a plaintiff may file "suit[ ] against state officials seeking prospective equitable relief for on-going violations of federal law...." *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997). *See also Indiana Protection and Advocacy Ser-vices v. Indiana Family and Social Services Admin.*, 603 F.3d 365, 370-72 (7th Cir. 2010) (discussing exceptions to the Eleventh Amendment's bar against actions in federal court against state officials acting in their official capacities); *Gautreaux v. Romney*, 448 F.3d 731, 735 (7th Cir. 1971) (holding that the doctrine of sovereign immunity "does not bar a suit such as this which is challenging alleged unconstitutional and unauthorized conduct by a federal officer").

However, to invoke this doctrine, the Plaintiff must name specific parties as defendants in their official capacity. The proper defendants are those who bear "'legal responsibility for the flaws [plaintiffs] perceive in the system' and not one[s] from whom they 'could not ask anything ... that

17

could conceivably help their cause.'" *Sweeney v. Daniels,* No. 2:12–cv81–PPS/PRC, 2013 WL 209047, *3 (N.D.Ind. Jan. 17, 2013) (quoting *Hearne v. Bd. of Educ.,* 185 F.3d 770, 777 (7th Cir.1999)). Brown has not done so here.  He names only the State of Indiana and the IDOC and not any state officials charged with implementing or decision-making under SORA.[7]

Moreover, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1051 (7th Cir. 2013). As the record reflects, on March 8, 2016, the Noble County Circuit judge vacated Brown's conviction for failing to register as a sex offender and dismissed the action. Thus, Brown is not presently suffering an ongoing violation because he is not under any obligation to register as a sex offender and is not incarcerated for failing to register. As a result, Brown's claim for injunctive relief against the IDOC and the State of Indiana is barred by the Eleventh Amendment and does not fit within the narrow exception carved out by *Ex parte Young*. The State Defendants' Motion for Summary Judgment is GRANTED.

## CONCLUSION

Based on the foregoing, the Defendants' Motions for Summary Judgment (ECF Nos. 117, 123, and 129) are all GRANTED. The Plaintiff's Motion to Strike (ECF No. 136) is DENIED. The Clerk is directed to enter judgment in favor of the Defendants and against Plaintiff.

---

[7] Part of the rationale for requiring state officials to be named is that § 1983 requires suit against a "person." "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Michigan Dep't of State Police*, 491 U.S. 58, at 71 n.10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). !!

SO Ordered August 26, 2020

s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT